

# SEALED

Office of the United States Attorney
District of Nevada
501 Las Vegas Boulevard South,
Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

NICHOLAS A. TRUTANICH
United States Attorney
NICHOLAS D. DICKINSON
Assistant United States Attorney
United States Attorney's Office
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6175; Fax: (702) 388-6787
Nicholas.Dickinson@usdoj.gov

TIMOTHY FINLEY
DANIEL ZYTNICK
Trial Attorneys
U.S. Department of Justice
Consumer Protection Branch
PO Box 386
Washington, DC 20044
Tel: (202) 307-0050; Fax: (202) 514-8742
Timothy.T.Finley@usdoj.gov
Daniel.E.Zytnick@usdoj.gov

Attorneys for Plaintiff
United States of America

```
            FILED         RECEIVED
            ENTERED       SERVED ON
                    COUNSEL/PARTIES OF RECORD

                    NOV 1 2 2019

              CLERK US DISTRICT COURT
                  DISTRICT OF NEVADA
       BY:                              DEPUTY
```

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff<br><br>      v.<br><br>MARIO CASTRO,<br>JOSE SALUD CASTRO,<br>SALVADOR CASTRO,<br>MIGUEL CASTRO,<br>JOSE LUIS MENDEZ, and<br>ANDREA BURROW,<br><br>              Defendants. | **SEALED<br>CRIMINAL INDICTMENT**<br><br>2:19-cr-295<br><br>**VIOLATIONS:**<br><br>Conspiracy (18 U.S.C. § 1349)<br><br>Mail Fraud (18 U.S.C. § 1341)<br><br>False Statement (18 U.S.C. § 1001) |

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment:

### INTRODUCTORY ALLEGATIONS

1.  Defendants **MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, JOSE LUIS MENDEZ,** and **ANDREA BURROW**, together with others, engaged in a direct-mail scheme that sent fraudulent prize-notification mailings to millions of consumers across the United States. The mailings contained false statements that led victims to believe they would receive a large cash prize if they paid a fee of between $20 and $30. None of the victims who mailed a fee in response to the mailings ever received a large cash prize. The scheme caused over $10 million in losses to victims, many of whom were elderly and vulnerable.

2.  Defendant **MARIO CASTRO**, who resided in Clark County, Nevada, operated a number of printing and mailing businesses that produced fraudulent prize-notification mailings for the scheme. He was one of the partners behind the scheme and received a share of the profits. To conceal his involvement as a partner, he used straw owners to form corporations and open corporate bank accounts that were used to carry out the scheme. The straw owners were people whose identities were used to hide who was really behind the scheme – the straw owners had no meaningful involvement in the businesses they supposedly owned. **MARIO CASTRO** was the brother of **JOSE SALUD CASTRO, SALVADOR CASTRO,** and **MIGUEL CASTRO**.

3.  Defendant **JOSE SALUD CASTRO**, who resided in Clark County, Nevada, worked at his brothers' businesses and helped with the printing and mailing of fraudulent prize-notification mailings for the scheme. He was one of the partners behind the scheme and received a share of the profits. To conceal his involvement, he first used a false identity and then recruited straw owners to form corporations and open corporate bank accounts that were used to carry out the scheme.

4.      Defendant **SALVADOR CASTRO,** who resided in Clark County, Nevada, worked at his brothers' businesses and helped with the printing and mailing of fraudulent prize-notification mailings for the scheme. He was one of the partners behind the scheme and received a share of the profits. Using his own name, he formed corporations and opened corporate bank accounts that were used to carry out the scheme.

5.      Defendant **MIGUEL CASTRO,** who resided in Clark County, Nevada, operated a printing and mailing business that produced fraudulent prize-notification mailings for the scheme. He also performed bookkeeping services for the companies that were used to carry out the scheme. He was one of the partners behind the scheme and received a share of the profits. In order to conceal his involvement as a partner, he used the name of a straw owner on the corporate filing for a company that was used to carry out the scheme.

6.      Defendant **JOSE LUIS MENDEZ,** who resided in Clark County, Nevada, was married to a relative of **JOSE SALUD CASTRO**. He worked at the Castros' businesses and helped with the printing and mailing of fraudulent prize-notification mailings for the scheme. He was one of the partners behind the scheme and received a share of the profits. Using his own name, he formed corporations and opened corporate bank accounts that were used to carry out the scheme.

7.      Defendant **ANDREA BURROW,** who resided in Clark County, opened victim return mail, sorted cash and other payments sent by victims, and deposited victim payments at a bank. Each time a victim sent money, **BURROW** entered that victim's personal information into a database that the scheme used to target the same victims again with repeated fraudulent prize-notification mailings. **BURROW** was paid by her co-conspirators for these services.

## COUNT 1
## Conspiracy to Commit Mail Fraud
## 18 U.S.C. § 1349

8. Paragraphs 1-7 of this Indictment are hereby realleged and incorporated herein by reference.

9. Beginning in or around March 2010 and continuing through on or about February 2018, in the District of Nevada and elsewhere, defendants

**MARIO CASTRO,
JOSE SALUD CASTRO,
SALVADOR CASTRO,
MIGUEL CASTRO,
JOSE LUIS MENDEZ, and
ANDREA BURROW**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, to cause to be delivered by commercial interstate carrier a matter or thing, in violation of 18 U.S.C. § 1341.

### The Object of the Conspiracy

10. The object of the conspiracy was for defendants MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, JOSE LUIS MENDEZ, and ANDREA BURROW, and other co-conspirators to enrich themselves by causing victims to send payments in response to materially misleading prize notifications and distributing those payments to themselves and others.

### The Manner and Means of the Conspiracy

*The Fraudulent Prize-Notification Mailings*

11. Defendants MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, JOSE LUIS MENDEZ, and ANDREA BURROW, together with others, sent and caused to be sent a variety of fraudulent prize-notification

4

mailings. Most looked like official notices and had titles such as "IMMEDIATE RESPONSE – LAST CHANCE VOUCHER," "CASH CLAIM," "YOU ARE OFFICIALLY SWORN TO SECRECY ABSOLUTELY CONFIDENTIAL," and "OFFICIAL AWARDS NOTIFICATION." The mailings appeared to be sent by corporate organizations with names like Imperial Award Services, Assets Unlimited, Pacific Disbursement Reporting, Special Money Managers, Price Awards, and Money Securities. The mailings purported to be signed by individuals with official titles such as "Director of Disbursements," "President," or "Comptroller." These individuals did not exist.

12. The mailings led victims to believe that they were receiving an urgent notice that they had won a large cash prize. For example, a mailing from Imperial Award Services falsely stated that the recipient's name had been drawn for "confirmed prizes" of "over $3,341,006.00." A mailer from Montgomery Marketing, Inc. LLC falsely claimed that $1,239,745.00 in "PENDING MONIES" had been "SLATED AND EARMARKED FOR" the named recipient. The mailer further stated, "THIS IS THE REAL THING . . . I **FIRMLY URGE YOU** to read this because this is the **REAL ONE.** We hope that we will help you to have your life **SHOWERED** with funds if the contest winner requirements are **REALIZED** and for which you are **EMINENTLY QUALIFIED!**" The mailings often stated that recipients were "confirmed," "verified," "guaranteed," or "approved." In some mailings, the fictional sender would claim to be excited to inform the recipients about their good fortune.

13. The mailings appeared personalized, when in fact they were form letters. They frequently included unique identification numbers or claim numbers. Others contained what appeared to be handwritten notes from the sender congratulating the recipient. Others falsely stated that the sender had tried to call the recipients or that the fictional sender was personally awaiting the recipients' responses: "I will PERSONALLY be on the lookout for the letter from you, and I will RUSH IT THROUGH ALL THE RED TAPE."

14. To receive the award, the mailings instructed recipients to return a small fee, generally between $20 and $30, along with a response card. The mailings contained a return envelope addressed to one of several mail boxes in states outside of the State of Nevada rented by defendants.

15. The mailings contained disclosures stating that those who responded would receive a "compendium" or report listing publicly-available sweepstakes they could enter. The disclosures did not correct the false statements and misrepresentations described above.

### *The Direct-Mail Operation*

16. Defendants MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, JOSE LUIS MENDEZ, and ANDREA BURROW, together with others, sent millions of fraudulent prize-notification mailings during the conspiracy. MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, and JOSE LUIS MENDEZ worked at the family printing and mailing businesses, where they printed, folded, and inserted the mailings into envelopes, then put them in the mail. MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, and JOSE LUIS MENDEZ, together with other co-conspirators known to the Grand Jury, were partners in the scheme, with each of them receiving a share of the profits from one or more of the scheme's mailing campaigns.

17. Using the return envelopes contained in the mailings, victims sent their payments to mailboxes located in Arkansas, Florida, New York, and other states outside of Nevada. From these mailboxes, defendants MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, JOSE LUIS MENDEZ, and ANDREA BURROW, together with others, caused the victim mail to be forwarded to addresses in Nevada. From these locations in Nevada, the mail would be delivered to BURROW, who opened the victim responses and sorted them at her house.

18. Victim response mail often contained cash sent by victims. BURROW delivered most of this cash to P.K., a co-conspirator whose identity is known to the Grand

Jury. P.K. distributed the cash to herself, defendants **MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, JOSE LUIS MENDEZ,** and other co-conspirators whose identities are known to the Grand Jury.

19. Victim response mail also contained checks written by victims to the various company names that were printed on the prize-notification mailings. **BURROW** deposited these checks into more than ten separate bank accounts opened in the names of these companies and controlled by P.K. for the benefit of the scheme. P.K. distributed the money from these bank accounts to herself, the defendants, and others.

20. Next, **BURROW** scanned the bar code at the bottom of each paying victim's response slip, causing information about that victim to be uploaded into a database maintained by the scheme. Defendants **MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, JOSE LUIS MENDEZ,** and **BURROW**, together with others, used the database to target the same victims repeatedly with more prize-notification mailings.

*Concealment Efforts*

21. Defendants **MARIO CASTRO, JOSE SALUD CASTRO, SALVADOR CASTRO, MIGUEL CASTRO, JOSE LUIS MENDEZ,** and ANDREA BURROW sought to conceal their illegal activity from law enforcement. Two members of the conspiracy, P.K. and E.D., whose identities are known to the Grand Jury, were ordered by the United States Postal Service to stop sending fraudulent mail. On at least seven occasions, the United States Postal Service ordered one or more of the scheme's mailing companies to stop sending fraudulent mail. Defendants responded to these law enforcement actions by using new mailings with different names and resuming their fraud.

22. In order to conceal their involvement, defendants **MARIO CASTRO, JOSE SALUD CASTRO,** and **MIGUEL CASTRO,** together with others, created more than twelve shell companies with names that matched the fictitious organizations that supposedly sent the mailings. To hide their control of the shell companies, defendants

7

MARIO CASTRO, JOSE SALUD CASTRO, and MIGUEL CASTRO, together with others, recruited straw owners to act as the owners of the shell companies. Defendants MARIO CASTRO, JOSE SALUD CASTRO, and MIGUEL CASTRO, together with others, used the straw owners to open bank accounts in the names of the shell companies. To further conceal their involvement, defendants MARIO CASTRO, JOSE SALUD CASTRO, and MIGUEL CASTRO, used the identities of the straw owners to rent the mailboxes that received victim mail.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2-13
### Mail Fraud
### 18 U.S.C. § 1341

23. Paragraphs 1-22 of this Indictment are hereby realleged and incorporated herein by reference.

24. Beginning in or around March 2010 and continuing through on or about February 2018, in the District of Nevada and elsewhere, defendants

MARIO CASTRO,
JOSE SALUD CASTRO,
SALVADOR CASTRO,
MIGUEL CASTRO,
JOSE LUIS MENDEZ, and
ANDREA BURROW,

together with others known and unknown to the Grand Jury, did devise and intend to devise and participate in a scheme and artifice to defraud for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, as set forth above, and, for the purpose of executing such scheme and artifice, and attempting to do so, did knowingly cause to be delivered by commercial interstate carrier any matter and thing according to the direction thereon, as follows:

8

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| 2 | June 2016 | Check from victim J.M. shipped by commercial interstate carrier to Nevada |
| 3 | June 2016 | Check from victim J.M. shipped by commercial interstate carrier to Nevada |
| 4 | July 2016 | Check from victim J.P. shipped by commercial interstate carrier to Nevada |
| 5 | January 2017 | Check from victim L.R. shipped by commercial interstate carrier to Nevada |
| 6 | March 2017 | Check from victim C.S. shipped by commercial interstate carrier to Nevada |
| 7 | June 2017 | Check from victim B.L.S. shipped by commercial interstate carrier to Nevada |
| 8 | June 2017 | Check from victim L.R. shipped by commercial interstate carrier to Nevada |
| 9 | July 2017 | Check from victim B.L.S. shipped by commercial interstate carrier to Nevada |
| 10 | August 2017 | Check from victim J.G. shipped by commercial interstate carrier to Nevada |
| 11 | September 2017 | Check from victim J.P. shipped by commercial interstate carrier to Nevada |
| 12 | October 2017 | Check from victim C.S. shipped by commercial interstate carrier to Nevada |
| 13 | November 2017 | Check from victim J.G. shipped by commercial interstate carrier to Nevada |

All in violation of Title 18, United States Code, Section 1341.

## COUNT 14
**False Statement**
**18 U.S.C. § 1001**

25. Paragraphs 1-22 of this Indictment are hereby realleged and incorporated herein by reference.

26. On or about February 21, 2018,

**SALVADOR CASTRO**

defendant herein, did knowingly and willfully make a false, fictitious, and fraudulent material statement to United States Postal Inspectors conducting an investigation into fraudulent prize-notification mailings, in a matter within the jurisdiction of the United States Postal Service, an agency of the United States, when he stated that he did not know

9

P.K., whose identity is known to the Grand Jury, when in truth and in fact he knew that P.K. was his business partner who repeatedly gave him cash and other payments.

All in violation of Title 18, United States Code, Section 1001.

## FORFEITURE ALLEGATION
Mail Fraud and Conspiracy to Commit Mail Fraud

1. The allegations contained in Counts 1-13 of this Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c).

2. Upon conviction of any of the felony offenses charged in Counts 1-13 of this Criminal Indictment,

**MARIO CASTRO,
JOSE SALUD CASTRO,
SALVADOR CASTRO,
MIGUEL CASTRO,
JOSE LUIS MENDEZ, and
ANDREA BURROW**

defendants herein, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1341, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or 18 U.S.C. § 1349, conspiracy to commit such offense:

1. $106,150;
2. $20,400.32;
3. $34,364;
4. $40,010;
5. $50,126.59;
6. $4,998;
7. $10,908;
8. $15,278;

9. $6,975;

10. $4,644;

11. $3,101;

12. $1,824;

13. $13,146;

14. $1,785;

15. $14,439;

16. $9,887;

17. $8,253;

18. $138;

19. $12,464.03;

20. $18,950; and

21. an in personam criminal forfeiture money judgment including, but not limited to, at least an amount to be calculated pursuant to the forfeiture statute in this forfeiture allegation and Fed. R. Crim. P. 32.2(b)(2)(C)

(all of which constitutes property).

3.  If any of the property being subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants for the property listed above.

11

All pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. §§ 1341 and 1349; and 21 U.S.C. § 853(p).

**DATED:** this 12th day of November, 2019

**A TRUE BILL:**

/S/
FOREPERSON OF THE GRAND JURY

GUSTAV W. EYLER
Director
Consumer Protection Branch
U.S. Department of Justice

NICHOLAS A. TRUTANICH
United States Attorney

Nicholas D. Dickinson
Assistant United States Attorney

Timothy Finley, Trial Attorney
Daniel Zytnick, Trial Attorney
Consumer Protection Branch
U.S. Department of Justice