1

2                          UNITED STATES DISTRICT COURT

3                                DISTRICT OF NEVADA

4                                      * * *

5    UNITED STATES OF AMERICA,                    Case No. 2:19-cr-00295-GMN-NJK

6                              Plaintiff,          **ORDER**

7              v.

8    MARIO CASTRO,

9                              Defendant.

10

11          Pending before the Court is Defendant Mario Castro's emergency motion for

12   reconsideration of detention order.  Docket No. 106.  The Court has considered Defendant's

13   motion and exhibits, the United States' response, and Defendant's reply.  Docket Nos. 106, 107,

14   108, 113, 115.  For the reasons stated below, the Court DENIES Defendant's motion.  Docket No.

15   106.

16   **I.      BACKGROUND AND PROCEDURAL HISTORY**

17          On November 12, 2019, a grand jury sitting in Las Vegas, Nevada issued an indictment

18   charging Defendant with conspiracy to commit mail fraud, in violation of Title 18, United States

19   Code, Section 1349; and mail fraud, in violation of Title 18, United States Code, Section 1341.

20   Docket No. 1.  On November 13, 2019, Defendant made his initial appearance before this Court.

21   Docket No. 17.  The Court appointed counsel to represent Defendant and, after counsel for the

22   United States and for Defendant said they were ready to proceed, the Court held a detention

23   hearing.  *Id.*

24          After hearing the representations of counsel, the Court ordered Defendant detained, as a

25   risk of nonappearance, pending trial.  *Id.*  The Court found:

26
              The Court finds that the defendant has dual citizenship with the
27            United States and Mexico.  The defendant was raised in Mexico and
              has extensive family in Mexico.  The defendant has traveled to
28            Mexico extensively.  If convicted, the defendant is facing, on the

low end of the guideline range, approximately seventeen years in custody. The defendant has a history of ignoring cease and desist orders from the Postal Service, changing the names of his businesses, and continuing on with his illegal conduct. The defendant has been identified as one of the two leaders of the alleged conspiracy. The government submits that this defendant, as part of the activities alleged in the Indictment, came into large amounts of cash that have not been accounted for. When a target letter was given to the defendant in February of 2019, the defendant fled to Mexico prior to Indictment. As a result, the Court finds that there are no conditions or combination of conditions that the Court could fashion at this time to reasonably assure the defendant's future appearance in Court. Accordingly, the defendant is ORDERED DETAINED pending trial.

Docket No. 52 at 3.

On November 27, 2019, Defendant filed a motion for review of the undersigned's order of detention. Docket No. 54. After considering Defendant's motion, the United States' response, and Defendant's reply, Docket Nos. 54, 57, 58, United States District Judge Gloria M. Navarro denied Defendant's motion. Docket No. 59. Judge Navarro found that the United States proved by a preponderance of the evidence that "Defendant poses a flight risk and that no condition or combination of conditions will reasonably assure his appearance." *Id*. at 7. Judge Navarro therefore found that Defendant was correctly ordered detained pending trial. *Id*.

On June 25, 2020, Defendant filed the instant motion for reconsideration of the order detaining him pending trial.[1] Docket No. 106. Defendant submits that, since December 2019, circumstances have changed in a manner that warrants reopening his detention hearing. *Id*. at 4. Specifically, Defendant submits, a declaration provided by his former attorney combined with information extracted from his cellphone demonstrate that he did not flee to Mexico in response to the United States' investigation of him. *Id*. Further, Defendant submits that the discovery produced thus far demonstrates that he "ceased his printing activities once told not to do so by government officials and did not flagrantly ignore seven cease and desist letters." *Id*. Instead, Defendant submits, an email cited in the complaint indicates that he operated a legitimate printing

---

[1] Although Defendant labels his motion a motion for reconsideration of the Court's detention order, he cites to the statute for reopening the detention hearing. Docket No. 106 at 9. *See also* 18 U.S.C. § 1942(f)(2). The Court, therefore, analyzes Defendant's motion as a request to reopen his detention hearing.

1    business and that Patricia Kern operated the fraudulent business.  *Id*. At 4-5.

2         Defendant submits that his memorandum of interview demonstrates that he can comply

3    with court orders.  *Id*. at 5.  Specifically, Defendant submits, on February 28, 2018, he wanted to

4    talk to investigators and answer questions.  *Id*. at 6.  Defendant submits that he spoke with

5    investigators for nearly four hours and voluntarily gave them passwords to his bank accounts and

6    cell phone.  *Id*.  At the end of the interview, Defendant submits, investigators served him with a

7    temporary restraining order.  *Id*.  Defendant submits that the indictment alleges that the conspiracy

8    ended in February 2018; therefore, he complied with the restraining order, demonstrating that he

9    will comply with court orders.  *Id*.

10        Defendant further submits that his attorney, Don Chairez, advised him after he received the

11   target letter that he could travel to Mexico for business purposes.  *Id*.  Therefore, Defendant

12   submits, he traveled to Mexico in early 2019 on the advice of counsel "for the sole purpose of

13   establishing an irrigation business."  *Id*. at 7.  Defendant relies upon messages and emails to

14   demonstrate that he traveled for business purposes and that he ultimately abandoned the irrigation

15   venture.  *Id*. at 7-8.  Defendant submits that he returned to the United States in April 2019 and

16   contacted Inspector Bouchie in July 2019 to inform the inspector that he was in Las Vegas.  *Id*. at

17   8.  Defendant further submits that he traveled to Mexico for one week in September 2019 and

18   purchased a round-trip ticket.  *Id*.  Defendant further submits that he did not have the financial

19   means to relocate to Mexico.  *Id*.  Defendant asks the Court to reopen his detention hearing in light

20   of what he says is new information "as well as the ongoing COVID-19 pandemic.  *Id*. at 9.

21        In response, the United States submits that Defendant failed to submit new material

22   information sufficient to reopen his detention hearing.  Docket No. 113 at 2.  Specifically, the

23   United States submits that the information Defendant now provides about his trip to Mexico is not

24   new information to Defendant and, in any event, does not ring true.  *Id*. at 2.  The United States

25   submits that Defendant's cell phone records demonstrate that he had no plan to return to the United

26   States when he left for Mexico shortly after receiving the target letter and that, when he did return,

27   he purchased his return ticket two days prior to his flight.  *Id*.  Further, the United States notes,

28   Defendant did not claim that his trip to Mexico was a pre-planned business trip at his initial

1  appearance, i*d*. at 5, or in his subsequent motion to review this Court's detention order, *id*. at 6.

2  *See also* Docket No. 54 at 5 (Defendant's motion for review of detention order, stating that he

3  "voluntarily returned from a *personal* visit to Mexico…") (emphasis added).

4        The United States further submits that the filings in a separate civil injunction case is not

5  new information.  Docket No. 113 at 8.  The case was filed in February 2018 and closed in

6  November 2018, one year prior to the detention hearing in this case, the United States submits.  *Id*.

7  Further, the United States submits that the civil case did not implicate defendant because he was

8  not a defendant in that case, but that the indictment in the instant case does implicate him and

9  demonstrate that he failed to comply with cease and desist letters.  *Id*. at 9.  The United States also

10 submits that Defendant's effort to speak with a postal inspector in July 2019 and the items found

11 in his home during a search are not new information.  *Id*.  The United States submits that, while

12 the emergence of COVID-19 is new, it does not impact Defendant's risk of flight.  *Id*.  Further, the

13 United States submits that, even if Defendant had submitted new information, none of it

14 undermines the prior decisions to detain him.  *Id*. at 9-11.

15       The United States further submits that COVID-19 does not provide a basis for temporary

16 release in the instant case.  *Id*. at 12.  The United States submits that Defendant is "well below" 65

17 years of age and has been diagnosed with renal hypertension and type 2 diabetes without

18 complications.  *Id*. at 13.  The United States submits that, since Defendant can control his diabetes

19 and hypertension with medication, the conditions alone do not constitute a sufficient basis to grant

20 him temporary release.  *Id*.  Additionally, the United States submits that the Nevada Southern

21 Detention Center ("NSDC"), where Defendant is currently housed, "has a track record of

22 effectively protecting detainees against COVID-19 and preventing a few isolated cases from

23 becoming outbreaks."  *Id*.  The United States cites to specific policies and protocols put in place

24 at NSDC to protect detainees.  *Id*. at 13-15.  Finally, the United States submits that Defendant has

25 failed to demonstrate that his risk is great of contracting COVID-19 is greater at NSDC than it

26 would be at his daughter's house, where he proposes to live with his wife and daughter.  *Id*. at 15.

27 Therefore, the United States asks the Court to deny Defendant's motion.  *Id*. at 16.

28

1    In reply, Defendant submits that the "facts and information" surrounding his business trip

2    in Mexico "were developed long after" the original detention hearing in the case after counsel

3    learned that Defendant used a cell phone that had not been seized at the time of his arrest.  Docket

4    No. 115 at 1-2.  Defendant further submits that examination of the phone's contents revealed

5    emails and messages that supported his argument that his Mexico trip was a business trip.  *Id*. at

6    2.  Additionally, Defendant submits that the information regarding Mr. Chairez's advice that he

7    could travel to Mexico was unverified until Mr. Chairez signed his declaration.  *Id*.

8    Defendant further submits that he had no access to the cease and desist orders referenced

9    by the United States at the original detention hearing and, therefore, could not refute the argument

10   that he ignored the orders.  *Id*. at 3.  Defendant submits that, if he had attempted to refute the

11   United States' argument prior to receiving the discovery in May 2020, the United States would

12   have claimed his argument was unsupported by evidence.  *Id*.  Defendant submits that the cease

13   and desist orders produced in discovery were directed to Patti Kern and her associates and that

14   most of the orders predate the alleged beginning of the conspiracy in the instant case.  *Id*. at 4-5.

15   Defendant further submits that Patti Kern refutes the United States' contention that Defendant

16   failed to comply with cease and desist orders and that that United States' argument is "tenuous at

17   best."  *Id*. at 5-6.

18   Defendant submits that Patti Kern is cooperating with the United States and therefore "has

19   every incentive to deflect responsibility away from herself."  *Id*. at 6.  Nonetheless, Defendant

20   submits, Kern's information – disclosed in discovery on June 5, 2020 - demonstrates that he is not

21   the leader of the conspiracy.  *Id*. at 6-7.

22   Finally, Defendant submits that over ten cases of COVID-19 have been confirmed at

23   NSDC.  Id. at 8.  While Defendant concedes that his housing unit is not currently affected, he

24   submits that, without proper precautions, "it will only be a matter of time before the outbreak

25   spreads to his housing unit."  *Id*.  Defendant submits that, if released into the community, he "could

26   take all necessary precautions to protect himself from COVID-19 rather than relying on other

27   detainee[s] and NSDC staff to protect him from contracting COVID-19."  *Id*.

28   . . . .

## II.    ANALYSIS

### A.  Reopen Detention Hearing

"A person lawfully committed to pretrial detention has not been adjudged guilty of any crime.  He had only a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish,* 441 U.S. 520, 536-37 (1979) (internal quotations omitted).  The Court may detain someone on a federal offense to ensure his presence at trial and may subject him to the restrictions and conditions of detention so long as those conditions do not constitute punishment or otherwise amount to a constitutional violation. *Id.*

The Bail Reform Act of 1984 mandates that every person charged with a federal offense be given a detention hearing. 18 U.S.C. § 3142(a).  If the Court finds the defendant poses a danger to public safety or a flight risk, the Court may order the defendant detained pending trial. 18 U.S.C. § 3142(f).

Title 18, United States Code, Section 3142(f) states, in relevant part, that a detention hearing may be reopened "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  Courts interpret this provision strictly. *United States v. Bararia*, 2013 U.S. Dist. LEXIS 67820, *9 (D.Nev. 2013).  The rule "requires that the movant, whether prosecutor or defendant, establish: (1) that information now exists that was not known to the movant at the time of the initial detention hearing, and (2) the new information is material to release conditions regarding flight or dangerousness."  *Id*. at *10.

The Court in *United States v. Flores*, 856 F.Supp. 1400 (E.D. Cal. 1994), discussed the rationale for the rule.  "There are very few proceedings in federal practice which encourage a party to be less than diligent in bringing forth all material evidence the first time a hearing is held . . . [a] rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations.  Judicial efficiency is not served by such a practice."  *Flores*, 856 F.Supp. at 1406.

1    Defendant, and not his counsel, is the movant referenced in Title 18, United States Code,

2    Section 3142(f). *See United States v. Joseph*, 2012 U.S. Dist. LEXIS 112800, *9 (D.Vt. 2012)

3    (discussion regarding what information was known to defendant at prior detention hearing in

4    determining whether his detention hearing should be reopened). *See also United States v. Ward*,

5    235 F.Supp.2d 1183, 1185 (N.D.Okl. 2002) (in denying a motion to reopen the issue of pretrial

6    detention, magistrate judge observed that "the proffered information about Defendant's

7    background, ties to the community and employment history were all known" at the time of the

8    detention hearing); *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991) (affirming refusal

9    to reopen detention hearing for evidence from people who know Defendant since the information

10   was available to Defendant at the time of the original detention hearing); *United States v. Hare*,

11   873 F.2d 796 (5th Cir. 1989) (testimony from Defendant's family and friends not new information

12   to reopen detention hearing). *See also United States v. Martin*, 2015 WL 3464937, at *2 (N.D.

13   Cal. May 29, 2015) ("The test for whether proffered information is new information previously

14   unknown to the defendant is whether the information was unknown at the time of the hearing, not

15   whether a witness's willingness to testify was unknown to the movant"); *United States v. Bowens*,

16   2007 WL 2220501, *3 (D.Az. July 31, 2007) ("The time for presenting letters ... was at the time

17   of the [original detention hearing] ...").

18    Information regarding his trip to Mexico was known to Defendant at the time of the

19   detention hearing, as was any advice regarding that trip given to him by his prior attorney.

20   Therefore, the Court finds that the information that Defendant's Mexico trip was a pre-planned

21   business trip does not constitute new information sufficient to reopen his detention hearing.[2]

22   Similarly, at the time of his detention hearing, Defendant was aware of whether he had been served

23   with cease and desist orders and whether he complied with those orders. Defendant's attorney

24   submits that he waited until certain items were disclosed in discovery prior to making an argument;

25   however, that fact fails to demonstrate that the information is new to Defendant.

26   _____

27    [2] As the Court finds that this information does not constitute new information, the Court need not address the discrepancy between Defendant's prior representation to United States District Judge Gloria M. Navarro that his trip to Mexico was a personal trip and his current

28   representation that it was a business trip. Suffice to say, the Court finds such discrepancy troubling.

1    Accordingly, the Court finds that none of the information Defendant submits in his motion

2    constitutes information that was unknown to the movant at the time of the detention hearing.

3    Therefore, the Court need not reach the question of materiality and the Court denies Defendant's

4    request to reopen his detention hearing.

5    **B.  Temporary Release**

6    Title 18, United States Code, Section 3142(i) allows a judicial officer to "permit the

7    temporary release of the person, in the custody of a United States marshal or another appropriate

8    person, to the extent that the judicial officer determines such release to be necessary for preparation

9    of the person's defense or for another compelling reason."  Courts have used this provision

10   "sparingly to permit a defendant's release where, for example, he is suffering from a terminal

11   illness or serious injuries."  *United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. Mar.

12   20, 2020) (citations omitted). A defendant bears the burden of establishing circumstances

13   warranting temporary release under § 3142(i).  *United States v. Clark,* 2020 WL 1446895, at *2

14   (D. Kan. Mar. 25, 2020); *see also United States v. Buswell,* 2013 WL 210899, at *5 (W.D. La. Jan.

15   18, 2013) (collecting cases).

16   Most courts addressing a motion for temporary release under § 3142(i) have done so in the

17   context of evaluating the necessity of the defendant assisting with preparing his or her defense.

18   *Clark,* 2020 WL 1446895, at *2; *see, e.g., United States v. Cecerle,* 2014 WL 31674, at *4 (D.

19   Nev. Jan. 3, 2014); *United States v. Dupree,* 833 F.Supp. 2d 241, 247 (E.D.N.Y. 2011); *United*

20   *States v. Jeffries,* 2011 WL 182867, at *4 (E.D.Tenn. Jan. 20, 2011); *United States v. Hazelwood,*

21   2011 WL 680178, at *3 (N.D. Ohio Feb. 16, 2011).  Courts considering whether pretrial release is

22   "necessary under § 3142(i) have considered:  (1) time and opportunity the defendant has to prepare

23   for the trial and to participate in his defense; (2) the complexity of the case and volume of

24   information; and (3) expense and inconvenience associated with preparing while incarcerated.

25   *Cecerle,* 2014 WL 31674, at *4.

26   Relatively little guidance exists about what qualifies as a "compelling reason" for

27   temporary release § 3142(i).  Some courts have considered a defendant's serious medical condition

28   compelling.  *See, e.g., United States v. Rebollo-Andino,* 312 Fed.App'x 346, 348 (1st Cir. 2009)

- 8 -

1    (noting that defendant could seek temporary release under § 3142 for medical reasons).  Courts

2    typically grant relief under § 3142(i) only "sparingly to permit a defendant's release where, for

3    example, he is suffering from a terminal illness or serious injuries."  *United States v. Hamilton,*

4    2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see e.g., United States v. Scarpa,* 815 F.Supp.

5    88 (E.D.N.Y. 1993) (permitting the defendant's release under the 24-hour guard of the U.S.

6    Marshal Service at his own expense because of traumatic gunshot injury and terminal AIDS

7    diagnosis and correctional authorities could no longer manage his medical conditions); *United*

8    *States v. Cordero Caraballo,* 185 F.Supp. 2d 143, 144-47 (D.P.R. 2002) (ordering release of

9    defendant who sustained multiple gunshot wounds, was partially paralyzed, could not walk, lost

10    some arm function, who required the supervision of 4-5 contracted security guards on a daily basis,

11    where Bureau of Prisons could not provide required medical care).

12    The Court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the

13    extremely serious health risks it presents, particularly within the jail and prison setting.  However,

14    in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely

15    on generalized COVID-19 fears and speculation.  *Clark,* 2020 WL 1446895, at *3.  Instead, the

16    court must make an individualized determination as to whether COVID-19 concerns present such

17    a compelling reason in a particular case that temporary release is necessary.  *Id.*  The Court will

18    evaluate the four following factors: (1) the original grounds for Defendant's pretrial detention; (2)

19    the specificity of Defendant's stated COVID-19 concerns; (3) the extent to which the proposed

20    release plan is tailored to mitigate or exacerbate other COVID-19 risks to Defendant; and (4) the

21    likelihood that Defendant's proposed release would increase COVID-19 risks to others.  *Id.*  The

22    Court will not necessarily weigh these factors equally but will consider them in their entirety to

23    determine whether a "compelling reason" exists such that temporary release is necessary in the

24    instant case.  *Id.*; § 3142(i).

25    **1.    *The Original Grounds for the Defendant's Pretrial Detention***

26    The Court first considers the original grounds for Defendant's pretrial detention.  *Clark*

27    2020 WL 1446895, at *3.; *see also Hamilton,* 2020 WL 1323036, at *1-2 (first considering the

28    rebuttable presumption under § 3142(e) before considering whether the COVID-19 pandemic

1    warranted temporary release under § 3142(i)); *Bararia,* 2013 WL 1907782, at *1-2 (considering

2    the circumstances leading to the defendant's revocation of pretrial release); *Buswell,* 2013 WL

3    210899, at *5 (observing that "the facts surrounding the underlying reasons for the defendant's

4    detention are relevant to the [§ 3142(i)] analysis").  A defendant seeking temporary release under

5    § 3142(i) has already been subject to a Court determination that his pretrial detention was

6    warranted on the grounds that no condition or combination of conditions would reasonably assure

7    he is not a flight risk and/or not a danger to the community.  *Clark,* 2020 WL at 1446895, at *3.

8    Accordingly, the Court takes into consideration whether Defendant has presented such compelling

9    reasons that effectively override or at least sufficiently counterbalance the findings that originally

10   justified the pretrial detention order.  *Id.*

11          In the instant case, the Court held a full detention hearing, at which Defendant was able to

12   make all arguments in support of his request for release.  Docket No. 17.  After hearing the

13   arguments from Defendant and the United States, the Court found that Defendant is a risk of

14   nonappearance such that no condition or combination of conditions can be fashioned for release.

15   *Id*.  Specifically, the Court found that Defendant has dual citizenship with the United States and

16   Mexico, that he was raised in Mexico, and that he has extensive family in Mexico.  Docket No. 52

17   at 3.  The Court found that, if convicted, Defendant faces approximately seventeen years in custody

18   at the low end of the guideline range.  *Id*.  The Court further found that Defendant "has a history

19   of ignoring cease and desist orders from the Postal Service, changing the names of his businesses,

20   and continuing on with his illegal conduct."  *Id*.  Additionally, the Court found that Defendant has

21   been identified as one of the two leaders of the alleged conspiracy and that, as part of the activities

22   alleged in the indictment, Defendant has come into large amounts of cash that have not been

23   accounted for.  *Id*.  Finally, the Court found that, when a target letter was given to Defendant in

24   February 2019, Defendant fled to Mexico.  *Id*.

25          In reviewing the record, the parties' briefing, and the Pretrial Services report, the Court

26   finds that the original grounds for detention were strong.  *See United States v. Dodd*, 2020 WL

27   1547419, at *3 (D. Minn. Apr. 1, 2020).  *See also United States v. Chambers*, 2020 WL 1530746,

28   at *1 (S.D.N.Y. March 31, 2020) (Defendant is "far too great a danger to the community to justify

1    his release").

2                **2.        *The Specificity of the Defendant's Stated COVID-19 Concerns***

3            The court next turns to Defendant's stated COVID-19 concerns. *Clark,* 2020 WL at

4    1446895, at \*4.  Defendant, who is 47 years old, raises the concern that he has been diagnosed

5    with type 2 diabetes and hypertension, making him more susceptible to serious illness.  Docket

6    No.   106    at    15.     *See    also*   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

7    precautions/people-with-medical-conditions.html (last visited July 22, 2020) (people with type 2

8    diabetes are at increased risk of severe illness from COVID-19 and people with hypertension might

9    be at increased risk for severe illness from COVID-19).  As the United States notes, however,

10   Defendant's diabetes and hypertension are controlled with medication.  Docket No. 113 at 13.

11           This  Court  has  previously  found  that  NSDC  is  taking  reasonable  recommended

12   precautions, including medical staff screening new inmates for COVID-19 symptoms and risk of

13   exposure, isolating those deemed to be high risk, and promoting other recommended hygiene

14   habits.  Further, among other precautions, NSDC is sanitizing all areas within the facility multiple

15   times per day; all guards are wearing a pouch containing hand sanitizer; CDC COVID-19 guidance

16   posters are posted throughout the facility; each inmate is given his/her own personal bar of soap,

17   which will be replaced if the inmate loses or uses it; a TeleDoc-type system is in place to allow

18   medical staff to conduct face-to-face video discussions with inmates; all cells in the facility can be

19   transitioned into negative pressure cells; and the facility has set up a CDC high risk dorm, which

20   is spacious and allows for spacing between occupied bunks. *See United States v. Boatwright*, \_\_\_\_

21   F.Supp.3d \_\_\_\_\_, 2020 WL 1639855, at \*6 (D.Nev. April 2, 2020).

22           The information provided by the United States Marshal Service to the Court as well as to

23   the United States and the Federal Public Defender is that there are currently six positive cases of

24   COVID-19 in NSDC.  Of those six, five are ICE detainees, who are held separately from this

25   Court's detainees, and one is a detainee of this Court.  The Court again finds that NSDC is taking

26   reasonable  recommended  precautions  in  preventing  COVID-19  cases  and  in  preventing  an

27   outbreak. *See United States v. Canada*, 2020 WL 2449344 (S.D. Ga. May 12, 2020) (denying

28   diabetic   inmate's   motion   for   compassionate   release   based   on   COVID-19   concerns,

1  notwithstanding his "greater risk" of experiencing serious complications should he contract the

2  virus, because the inmate's federal facility "only has one active case of COVID-19 in its inmate

3  population").

4           **3.    *The Extent to Which the Proposed Release Plan is Tailored to Mitigate or***

5                   ***Exacerbate the Defendant's Overall COVID-19 Risks***

6           The Bail Reform Act allows for temporary release only if the Court determines such release

7  is "necessary" for a compelling reason.  18 U.S.C. § 3142(i).  In the context of COVID-19, this

8  means the proposed temporary release plan should be tailored to mitigate Defendant's overall

9  COVID-19 risks, not exacerbate them.  *Clark,* 2020 WL at 1446895, at *6.  Thus, the Court

10  evaluates the extent to which Defendant's proposed release plan is tailored to mitigate or

11  exacerbate the Defendant's overall COVID-19 risks.  *Id.*

12          Defendant's proposed release plan consists solely of the following:

13                  If released, Mr. Castro would reside with his daughter Caren. Caren
                    owns her home and has a living area set aside for Mr. Castro. Mr.
14                  Castro would have access to his own bathroom and Caren would
                    provide him his own food and toiletries until Mr. Castro cleared a
15                  14-day quarantine. After his quarantine, Mr. Castro would share the
                    living area with his wife. Caren is willing to let her father live with
16                  her during the pendency of this case. Mr. Castro is willing to abide
                    by any condition of location monitoring the Court should impose.
17

18  Docket No. 106 at 17.

19          Defendant's plan does not address all – or even any - aspects of public health officials'

20  recommendations and does not address other risk factors that would arise if Defendant were

21  released from custody.  *Clark,* 2020 WL at 1446895, at *6.  Defendant has not set forth a record

22  establishing that, if he were to contract COVID-19, NSDC is unprepared to contain the virus or

23  care for those who may become infected.  To the contrary, the Court is convinced that NSDC has

24  established a comprehensive plan to manage the facility during the pandemic.  The record is void

25  of information suggesting NSDC would be unable to render appropriate medical treatment to

26  Defendant if he became ill.

27          Further, Defendant does not address the extent to which his risks could be exacerbated if

28  the Court releases him to live with his daughter, as he proposes.  *See* Docket No. 106.  Defendant

1   offers no evidence to explain how the proposed living situation mitigates the risk of infection.  For

2   example, Defendant fails to explain who else has or will live in or frequent the home or identify

3   any screening practice or concrete COVID-19 precautions taken there.  Defendant therefore offers

4   nothing more than mere speculation that home detention would be less risky than detention at

5   NSDC, which has screening practices and other reasonable COVID-19 precautions in place.

6        Defendant also fails to address the issue of the rising number of cases of COVID-19 and

7   the lack of hospital resources in the Las Vegas community.  Defendant does not address the

8   capacity of Las Vegas' health care system to provide him with adequate treatment if he were to

9   contract the virus.  In contrast, if Defendant remains at NSDC, he has access to medical care should

10   he become ill.  NSDC has ample motivation to prevent further outbreak and to contain and manage

11   it for the well-being of all involved.

12        **4.**       ***The Likelihood that Defendant's Proposed Release Plan Would Increase***

13                      ***COVID-19 Risks to Others***

14        In considering temporary release under § 3142(i) based on circumstances related to

15   COVID-19, it is also appropriate for the Court to consider the likelihood the defendant's proposed

16   release plan would increase COVID-19 risks to others, particularly if the defendant is likely to

17   violate conditions of release, as Defendant has in the past.  *See Clark,* 2020 WL at 1446895, at \*7.

18   A defendant who is unable to comply with conditions of release poses potential risks to law

19   enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities

20   and counties, Pretrial Services officers who come into contact with Defendant for supervision, and

21   others if Defendant is taken back into custody.  *Id.*

22        In this case, the Court finds that these considerations do not support release.  This Court

23   originally detained Defendant because it found that he was a risk of nonappearance.  Docket No.

24   52. Given the considerations discussed previously, the Court believes Defendant will likely violate

25   any conditions of release it may impose if it were to issue a temporary release order.

26        As another Court recently observed, "[w]hile the location monitoring that [defendant]

27   proposed may offer useful information about where he is, it provides little useful information about

28   what he is doing."  *United States v. Martin,* 2020 WL 1274857, at \*4 (D.Md March 17, 2020).

1    This Court has found that Defendant continued his activities even after receiving cease and desist

2    orders and has no reason to believe he would discontinue such activities now.  Further, supervising

3    a high-risk offender out in the community would place Pretrial Services officers at a heightened

4    risk of contracting the virus.  "[L]ocation monitoring is not a limitless resource, nor is its

5    installation and monitoring by the United States Pretrial Services officers without risk to those

6    personnel (who must be trained and certified to install location monitoring) given current

7    recommendations regarding implementation of social distancing." *Id.*

8    **III.    CONCLUSION**

9      Defendant has not demonstrated that the information he presents regarding his trip to

10   Mexico and the cease and desist orders is information that is new to him since the detention

11   hearing.  As a result, Defendant has failed to make a showing sufficient to reopen his detention

12   hearing.

13      Additionally, Defendant has not established compelling reasons sufficient to persuade the

14   Court that temporary release is necessary.  None of the factors that the Court must consider weighs

15   in Defendant's favor.  Although the Court takes Defendant's arguments regarding his health

16   seriously, the Court finds that NSDC has worked hard and taken precautions to minimize the risk

17   of outbreak in the facility and that Defendant has failed to demonstrate that his proposed release

18   plan would alleviate his overall COVID-19 risks.  The Court further finds that Defendant's

19   proposed release plan would place Pretrial Services officers at risk in supervising him and, when

20   the temporary release ends, law enforcement officers and the facility would be placed at risk in re-

21   apprehending Defendant after he has had ample opportunity for contamination.  Therefore,

22   Defendant has failed to demonstrate a compelling reason that temporary release is necessary.

23      Accordingly, Defendant's motion to reconsider detention is **DENIED**.  Docket No. 106.

24      **IT IS SO ORDERED.**

25      **DATED**:  July 22, 2020.

26

27                          _____
                             NANCY J. KOPPE

28                          UNITED STATES MAGISTRATE JUDGE