## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>v.<br><br>MARIO CASTRO,<br><br>             Defendant. | Case No.: 2:19-cr-00295-GMN-NJK<br><br>**REPORT AND RECOMMENDATION**<br>[Docket No. 255] |

This matter was referred to the undersigned Magistrate Judge on Defendant Mario Castro's motion to suppress statements. Docket No. 255. The Court has considered Defendant's motion, the United States' response, and Defendant's reply. Docket Nos. 255, 269, 274.

**I.    BACKGROUND**

On February 26, 2018, United States Postal Inspection Service Inspectors executed a validly-issued search warrant on Defendant's residence. Docket Nos. 255 at 2; 269 at 3. After agents knocked and announced their presence, Defendant answered the door to the residence and, therefore, agents did not use force to gain entry. Docket Nos. 255 at 2, 5; 256, Exh. A at 00:41-00:54; 269 at 3. At least five agents were present at the execution of the search warrant, all of whom carried holstered weapons. Docket Nos. 255 at 5; 269 at 3. *See also* Docket No. 256 at Exhs. A, B. Upon entering the house, agents briefly restrained Defendant while a safety check was conducted. Docket Nos. 255 at 6-7; 269 at 3. *See also* Docket No. 256, Exh. A. at 00:46. Once the safety check was completed, agents released Defendant. *Id.*

At approximately 8:30 a.m., United States Postal Inspectors Daryl Greenberg and Travis Smoot began interviewing Defendant. Docket No. 255-1 at 2.[1] The interview lasted for

---

[1] The briefing submits that no video or audio recording of the interview was made. *See, e.g.*, Docket No. 255 at 8. The contents of the interview were solely recorded in a memorandum of interview created the same day the interview occurred. Docket No. 255-1. The Court draws its facts from the memorandum of interview and the video clips showing the circumstances of the interview, upon which both parties rely in their briefing. While Defendant notes that the

1

approximately three hours and occurred in the sunroom of Defendant's house while the other agents executed the search warrant. *Id.* at 2, 6. Defendant was seated at the outer chair of a round table in the sunroom with his back facing the entrance of the room. Docket No. 256, Exh. B. at 1:22-1:28. Inspectors Greenberg and Smoot were also seated at the table and no other people were in the room. *Id.* Defendant's wife was in a different room in the house and voluntarily left the house during Defendant's interview. Docket Nos. 255 at 6-9; 269 at 11. *See also*, Docket No. 256, Exh. D at 00:18-00:21.

Before the interview began, Inspectors Greenberg and Smoot told Defendant that "the interview was voluntary and that he did not have to answer any questions." *Id.* at 2. The Inspectors further told Defendant that he could leave the house or stop answering questions at any time. *Id.* The Inspectors also told Defendant to tell them if he was confused or did not want to answer questions and warned him not to give false or misleading information because he was talking to federal law enforcement. *Id.* Defendant was not given *Miranda* warnings at any time during this interview. *See id.* at 2-6.

Throughout the interview, Inspectors Greenberg and Smoot asked Defendant questions about his background, his business operations, his bank accounts, and his relationships with other members of the alleged fraud scheme underlying the charges in the instant case. *Id.* Defendant did not ask to end the interview at any time. *Id.* Defendant did ask for a break to use the restroom and a bottle of water, both of which he was given. *Id.* at 2. Following the interview, Defendant was not arrested and remained in his residence when all federal agents left after executing the search warrant. Docket No. 255-1 at 6.

On November 12, 2019, a grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, and twelve counts of mail fraud, in violation of 18 U.S.C. § 1341. Docket No. 1. After the indictment was issued, Defendant was arrested and appeared in court for his initial appearance

---

memorandum was created by the officers interviewing him, Docket No. 274 at 5, he has made no showing to cast a doubt on its credibility to the Court.

on November 13, 2019.  Docket Nos. 17, 32.  Defendant now asks the Court to suppress all statements he made during his interview with law enforcement.  Docket No. 255.

## II. ANALYSIS

### A. Evidentiary Hearing

The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist.  *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (*citing United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972).

"A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one.  Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required."  *Howell*, 231 F.3d at 621 (*citing Harris*, 914 F.2d at 933).  The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.  *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979).  In the instant case, Defendant requested an evidentiary hearing; however, both parties relied upon the same memorandum of interview and video footage in presenting the facts.  The Court concludes that no contested issues of fact exist that require an evidentiary hearing in this matter, and the Court will therefore decide the motion on the moving and responsive papers, including the exhibits submitted with the papers.

### B. Motion to Suppress

Defendant asks the Court to suppress any statements he made to law enforcement during his interview on February 21, 2018.  Docket No. 255.  Defendant submits that he should have been provided with *Miranda* warnings prior to his interview with law enforcement because his interview constituted custodial interrogation.  *Id.* at 2.  Defendant submits that he was in custody because he was interviewed in a police-dominated atmosphere, he was restrained during one portion of the interaction with law enforcement, and he was separated from his wife.  *Id.* at 4-9.  Defendant

further submits that he was subjected to interrogation because he was asked invasive questions about his personal life, was confronted with evidence of guilt related to the underlying charges in this case, and was asked for the passcodes to both his phone and his bank accounts. *Id.* at 9-10. Defendant asks the Court to suppress all the statements he made in this interview as he was not given *Miranda* warnings. *Id.* at 10.

In response, the United States submits that no Fifth Amendment violation occurred because Defendant was not in custody and voluntarily agreed to be interviewed by law enforcement. Docket No. 269. The United States submits that Defendant was not under arrest at the time of the interview, was interviewed in the sunroom of his house, only two agents were in the room during the interview, agents gave him breaks and allowed him to go to the restroom, Defendant agreed to be interviewed, and was told he was free to end the interview at any time. *Id.* at 8-12.

In reply, Defendant submits that he was interviewed in a police-dominated atmosphere, as one of the agents talking with him had a holstered weapon, Defendant was restrained at one point, he was isolated from his wife and, even if he was told he could leave, the information was given in a context that did not make him feel like he could apprise himself of the option. Docket No. 274.

Law enforcement officers who question individuals in their custody must first afford them certain procedural rights. The most salient of these rights are the so-called "*Miranda* warnings" – prior to questioning, an officer must tell a suspect "that he has the right to remain silent and also the right to the presence of an attorney." *Robertson v. Pichon*, 849 F.3d 1173, 1183 (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). These warnings are designed to protect a person's Fifth Amendment privilege against compelled self-incrimination. The Supreme Court has reasoned that the privilege is protected when a person is adequately and effectively advised of his rights. *See id.*; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "In order to combat [the pressures inherent in custodial interrogation] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights." *United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006) (quoting *Miranda*, 384 U.S. at 467).

*Miranda* warnings are only required when the person being questioned is subjected to custodial interrogation. *United States v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). The Court examines the totality of the circumstances when determining whether an individual was in custody. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The test is whether "a reasonable innocent person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave." *United States v. Bassignani*, 575 F.3d 879, 883-84 (9th Cir. 2009) (quoting *United States v. Booth*, 669 F.2d 121, 1235 (9th Cir. 1981)). This requires the Court to assess the objective circumstances of the interrogation. *Stansbury v. California*, 511 U.S. 318, 323 (1994). The subjective views of either the suspect or the interrogating officer is not relevant to the custody determination. *Id.* The Ninth Circuit has identified five factors relevant to the custody determination: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002).

*Miranda* warnings function both to reduce the risk that an involuntary or coerced statement will be admitted at trial and to implement the Fifth Amendment's self-incrimination clause. *Williams*, 435 F.3d at 1151. Thus, if a suspect in custody does not receive an adequate warning effectively apprising him of his rights before he incriminates himself, his statements may not be admitted as evidence against him. *Id.* at 1152. In determining whether a suspect was in custody, "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

Interrogation under *Miranda* consists of any words or actions on the part of law enforcement officers that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Williams*, 842 F.3d 1143, 1146-47 (9th Cir. 2016). Generally, questions about routine background biological information such as identity or age do not constitute interrogation. *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006)

(citing *United States v. Perez*, 776 F.2d 799 (9th Cir. 1985)). *See also Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Whether words or actions are likely to elicit an incriminating response is determined primarily by looking to the perceptions of the suspect being questioned. *Id.* at 600-01 (citing *Illinois v. Perkins*, 496 U.S. 292 (1990)). However, the Court can consider "any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion" to determine what the police should have known when acting or speaking. *Rhode Island v. Innis*, 446 U.S. 291, 302 n. 8 (1980).

When the interview occurs at an interviewee's home, the Ninth Circuit has established that the Court must also assess whether a "police-dominated atmosphere" existed at the time of the interview. *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008). The Court must consider four factors in making this determination: (1) the number of law enforcement personnel and whether they were armed; (2) whether the person being questioned was restrained at any point, either by physical force or threats; (3) whether the person was isolated from others; and (4) whether the person being interviewed was informed that he was free to leave or terminate the interview, as well as the context in which those statements were made. *Id.* at 1084.

Here, the Court finds that, under the *Craighead* factors, a police-dominated atmosphere did not exist at the time of Defendant's interview. A small number of agents were present throughout the house and only two were talking with Defendant or present in the room when he was interviewed. He was not interviewed in a locked room or one where an exit was blocked. *See Craighead*, 539 F.3d at 1086. While Defendant was briefly restrained during the initial entry into the house while agents made sure the house was safe, he was unrestrained for most of the time the agents were in the house and for the entire time he was interviewed. The video evidence presented to the Court shows Defendant unrestrained in a seating arrangement that gave him easy access to move away from the officers or leave the interaction. No weapons of any kind were pointed at Defendant at any point during his interactions with police. While Defendant was interviewed on his own, agents clearly told him that the interview was voluntary and that he could stop talking at any time. Nothing provided to the Court suggests that these statements were made in a context that undermined the information conveyed to Defendant. Further, asking Defendant for passcodes

and discussing relevant evidence do not, of themselves, constitute a police-dominated atmosphere. Weighing all these factors, the Court finds that the environment in which Defendant was interviewed was not a police-dominated environment requiring a finding that this interaction was custodial.

Additionally, the Court finds that, under the *Kim* factors, Defendant was not in custody when he was interviewed. Defendant was not under arrest at the time of the interview. While he was briefly restrained when the entry team arrived at his house, Defendant was sitting comfortably and unrestrained in his own home for the duration of his interview. Defendant was seated on the outside of a table facing the corner of the sunroom for the duration of his interview, not trapped in the corner of the room. *See* Docket No. 256, Exh. B at 1:22-1:28. While officers were executing a search warrant at the house throughout his interview, the Court has already found that the environment was not a police-dominated atmosphere. The videos depict an environment that was calm and quiet, and that occurred in a room that was empty apart from Defendant and the two agents interviewing him.

Further, while Defendant was confronted with evidence of guilt during the interview and the interview lasted three hours, no indication has been presented to the Court that Defendant felt that he had no choice whether to talk to the agents or that agents pressured him to confess. Further, agents did not use inappropriate force or coercion to detain Defendant or require him to participate in the interview. In fact, both parties represent that agents simply asked Defendant if he would be willing to talk with them. The agents told Defendant that he was not required to speak with them and that he could stop the interview at any time, and Defendant then chose to answer the agents' questions for three hours. Defendant further chose to remain at the house after the interview was finished and to answer follow up questions. *See* Docket No. 255-1 at 6. The Court finds that a reasonable person, under these circumstances, would feel free to leave the interaction and, therefore, the Court finds that Defendant was not in custody.[2]

---

[2] As the Court has found that Defendant was not in custody for this interview, the Court need not determine whether the questions asked of him constituted interrogation.

7

Based on the totality of the circumstances, the Court finds that Defendant was not subjected to custodial interrogation when he was interviewed by law enforcement on February 21, 2018, and, therefore, that *Miranda* warnings were not required. The Court further finds that Defendant consented to the interview and that the statements he made were voluntary.

### III. RECOMMENDATION

Based on the foregoing and good cause appearing therefore, **IT IS RECOMMENDED** that Defendant's motion to suppress statements, Docket No. 255, be **DENIED.**

IT IS SO ORDERED.

DATED: March 18, 2022.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

### NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).