UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:19-cr-00295-GMN-NJK |
| vs. ) | |
| ) | **ORDER** |
| MARIO CASTRO, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is the Motion to Suppress, (ECF No. 255), filed by Defendant Mario Castro ("Defendant"). The Government filed a Response, (ECF No. 269), to which Defendant filed a Reply, (ECF No. 274).

Also pending before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Nancy J. Koppe, (ECF No. 311), counseling that the Court deny Defendant's Motion to Suppress, (ECF No. 255). Defendant timely filed an Objection, (ECF No. 370), and the Government filed a Response, (ECF No. 385).

For the reasons discussed below, Defendant's Motion to Suppress is **DENIED**, and the R&R is **ACCEPTED and ADOPTED in full**.

I. <u>BACKGROUND</u>

On November 12, 2019, a grand jury issued an Indictment charging Defendant with one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, twelve counts of mail fraud, in violation of 18 U.S.C. § 1341, and a related forfeiture allegation. (*See* Indictment 4:1–9:16, 10:4–12:2, ECF No. 1). Defendant moves to suppress all statements he made during an interview with law enforcement, arguing that the Government required providing *Miranda* warnings prior to the interview. (*See generally* Mot. Suppress, ECF No. 255). Magistrate Judge

Koppe provides a detailed review of the facts and procedural history of this matter in the R&R. (*See* R&R 1:14–3:2, ECF No. 311). (*See also* Obj. 2:3–23, ECF No. 370); (Resp. Obj. 3:11–6:16, ECF No. 385). In the R&R, Magistrate Judge Koppe denies Defendant's request for an evidentiary hearing and recommends denying Defendant's Motion to Suppress because he was not under custodial interrogation when interviewed. (*See* R&R 3:4–8:4). Defendant filed an Objection to the R&R, (ECF No. 370), and the Government filed a Response, (ECF No. 385).

## II. LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. *See* 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a *de novo* determination of those portions of the R&R to which objections are made. *See* 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).

## III. DISCUSSION

Defendant objects to both the Magistrate Judge's denial of an evidentiary hearing and the recommendation to deny his Motion to Suppress. The Court discusses each in turn.

### A. Evidentiary Hearing

The R&R denies Defendant's request for an evidentiary hearing because "both parties relied upon the same memorandum of interview and video footage in presenting the facts." (R&R 3:12–21). In his Objection, Defendant contends holding an evidentiary hearing is warranted because the parties dispute material facts. (*See* Obj. 6:17–10:2).

"An evidentiary hearing on a motion . . . need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of [material] fact exist." *Howell*, 231 F.3d at 620 (citations

omitted). The Court will not hold a hearing on a defendant's pre-trial motion "merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." *Id.* at 621 (quoting *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990)). It is within a district court's discretion to decide whether to hold an evidentiary hearing. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979).

Here, Defendant's Motion to Suppress fails to demonstrate "that contested issues of [material] fact exist." For example, Defendant takes umbrage at the Magistrate Judge's reference to five to eight officers as "a small number." (*See* Mot. Suppress 7:8–8:7). However, determining whether Defendant's interview constituted custodial interrogation rests on the conditions during the interview. During the interview, only two officers were present, and the parties do not dispute this. (*See id.* 2:10–11); (Resp. Mot. Suppress 4:8–12, ECF No. 269). Thus, referring to five to eight officers as "a small number" is not a contested issue of material fact.

Next, Defendant contends an evidentiary hearing is required to determine whether the officers guarded him and his wife at all times. (Obj. 8:8–18). He suggests he was in custody because although he was free to move during the search, officers insisted on always escorting and monitoring him. (Mot. Suppress 6:17–19 n.18). However, the evidence does not bear this out. Officers did not force him to answer questions, did not restrain him during the interview, did not guard the doors during the interview, Defendant had free access to multiple exits, and he was able to take a break during the interview. (*See* Video Evidence, Ex. B to Mot. Suppress, ECF No. 256). While the officers initially restrained Defendant for a brief period during the initial safety check, Defendant was mostly unrestrained during the search and interview. (*See id.*, Ex. B to Mot. Suppress); (Mem. Interview at 1, Ex. C to Mot. Suppress, ECF No. 255-1). Thus, the evidence indicates Defendant was not guarded at all times.

Further, Defendant asserts the R&R makes no specific findings regarding whether the officers displayed weapons during the interview. (Obj. 8:19–9:6).  However, neither party disputes that the officers had holstered weapons on their persons. (*Id.* 9:1–3); (Resp. Obj. 15:9–12).  As such, that officers had holstered weapons is not a disputed issue of material fact.  Finally, Defendant argues he was not free to leave because one of the officers commented on a video that his wife was "allowed to leave" and because he could not retreat into the safety of his own home. (Obj. 9:7–10:1).  Yet, the officers told Defendant he was free not to answer their questions, that "he could stop answering questions at any time," that he could leave the home at any time, that he should not answer a question if the alternative was giving false information, and the officers did not restrain him during the interview or stop him from taking a break. (*See* Mem. Interview at 1, Ex. C to Mot. Suppress).  Thus, although Defendant argues he did not feel free to leave, the evidence demonstrates the opposite is true.  As such, the Court denies Defendant's request for an evidentiary hearing. *See Howell*, 231 F.3d at 621.

### B. Motion to Suppress

Next, the R&R recommends denying Defendant's Motion to Suppress for two reasons.  First, a police-dominated atmosphere did not exist during Defendant's interview. (R&R 6:16–7:4).  Second, he was not in custody when the officers interviewed him. (*Id.* 7:5–8:4).  Defendant disagrees. (*See* Obj. 3:18–6:16).

"In order to combat [the pressures inherent in custodial interrogation] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights." *United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006) (quoting *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)).  *Miranda* warnings are only required when the person being questioned is subjected to custodial interrogation. *United States v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)).  Deciding this requires examining the totality of the

circumstances, *see Thompson v. Keohane*, 516 U.S. 99, 112 (1995), which involves determining whether "a reasonable innocent person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave." *United States v. Bassignani*, 575 F.3d 879, 883–84 (9th Cir. 2009) (quoting *United States v. Booth*, 669 F.2d 121, 1235 (9th Cir. 1981)).

In determining whether a suspect was in custody, "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).  Interrogation under *Miranda* consists of any words or actions on the part of law enforcement officers that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Williams*, 842 F.3d 1143, 1146–47 (9th Cir. 2016).

The Court first addresses whether a police-dominated atmosphere existed during Defendant's interview and then turns to whether he was in custody during the interview.

### i. Police-Dominated Atmosphere

When officers interview a suspect at the interviewee's home, the Court must assess whether a "police-dominated atmosphere" existed at the time of the interview. *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008).  The Court must consider four factors in making this determination: (1) the number of law enforcement personnel and whether they were armed; (2) whether the person being questioned was restrained at any point, either by physical force or threats; (3) whether the person was isolated from others; and (4) whether the person being interviewed was informed that he was free to leave or terminate the interview, as well as the context in which those statements were made. *Id.* at 1084.

Here, a police-dominated atmosphere did not exist during Defendant's interview.  First, only two officers interviewed Defendant. (Video Evidence, Ex. B to Mot. Suppress).  Although

the officers had holstered weapons, they never drew them or pointed them at Defendant. (*See* Video Evidence, Ex. A to Mot. Suppress, ECF No. 256); (Video Evidence, Ex. B to Mot. Suppress); (Video Evidence, Ex. D to Mot. Suppress, ECF No. 256); (Mem. Interview at 1, Ex. C to Mot. Suppress). Second, Defendant was not restrained: during the interview, Defendant was sitting with free access to multiple exits. (Video Evidence, Ex. B to Mot. Suppress). In addition, the officers did not restrain him during the interview or stop him from taking a break. (*See* Mem. Interview at 1, Ex. C to Mot. Suppress). Third, while Defendant answered questions on his own, the evidence suggests Defendant's wife could leave freely. (*See* Video Evidence, Ex. D to Mot. Suppress). Additionally, the officers told Defendant multiple times he was free to leave. (*See* Mem. Interview at 1, Ex. C to Mot. Suppress). Fourth, the officers told Defendant he was free not to answer their questions, that "he could stop answering questions at any time," that he could leave the home at any time, that he should not answer a question if the alternative was giving false information. (*See id.*, Ex. C to Mot. Suppress). Accordingly, under the circumstances of the interview, a police-dominated atmosphere did not exist.

### ii. Custody under the Fifth Amendment

As discussed above, a person is in custody if there was "a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *Stansbury*, 511 U.S. at 322 (1994) (quoting *Beheler*, 463 U.S. at 1125). Interrogation under *Miranda* consists of any words or actions on the part of law enforcement officers that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." Williams, 842 F.3d at 1146–47 (9th Cir. 2016). The Court looks at five factors to determine whether a person is in custody: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002).

1      Here, Defendant was not in custody when officers interviewed him.  The officers did not
2 place Defendant under arrest during the interview.  Although the officers initially restrained
3 Defendant for a brief period during the initial safety check, Defendant was mostly unrestrained
4 during the search and interview. (*See* Video Evidence, Ex. B to Mot. Suppress); (Mem.
5 Interview at 1, Ex. C to Mot. Suppress).  Further, as the officers conducted the interview,
6 Defendant was sitting unrestrained in a chair closest to multiple exits; he was not trapped in a
7 corner. (*See* Video Evidence, Ex. B to Mot. Suppress).  Moreover, while officers confronted
8 Defendant with evidence of guilt, he answered the officers' questions freely.  They informed
9 Defendant that he was free not to answer their questions, that "he could stop answering
10 questions at any time," that he could leave the home at any time, that he should not answer a
11 question if the alternative was giving false information. (*See* Mem. Interview at 1, Ex. C to
12 Mot. Suppress).  Defendant also freely chose to answer follow-up questions after the interview
13 had finished. (*See id.* at 5, Ex. C to Mot. Suppress).  As such, a reasonable person under these
14 circumstances would feel free to leave; therefore, Defendant was not in custody. *See*
15 *Bassignani*, 575 F.3d at 883–84.[1]  Accordingly, the Court denies Defendant's Motion to
16 Suppress.
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25

---

[1] Because Defendant was not in custody, the Court need not address the issue of interrogation.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress, (ECF No. 255), is **DENIED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation, (ECF No. 311), is **ACCEPTED and ADOPTED in full.**

**DATED** this __1__ day of September, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court