# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> MARIO CASTRO, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:19-cr-00295-GMN-NJK <br><br> **ORDER** |

Pending before the Court is the Motion to Suppress, (ECF No. 257),[1] filed by Defendant Mario Castro ("Defendant"). The Government filed a Response, (ECF No. 270), to which Defendant filed a Reply, (ECF No. 275).

Also pending before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Nancy J. Koppe, (ECF No. 326), counseling that the Court deny Defendant's Motion to Suppress, (ECF No. 257). Defendant timely filed an Objection, (ECF No. 371), and the Government filed a Response, (ECF No. 384).

For the reasons discussed below, Defendant's Motion to Suppress is **DENIED**, and the R&R is **ACCEPTED and ADOPTED in full**.

**I. BACKGROUND**

On November 12, 2019, a grand jury issued an Indictment charging Defendant with one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, twelve counts of mail fraud, in violation of 18 U.S.C. § 1341, and a related forfeiture allegation. (*See* Indictment

---

[1] Defendant filed a previous Motion to Suppress, (ECF No. 254), but later filed the instant Motion, (ECF No. 257), as a corrected image. Since the latter Motion is the operative one, the Court refers to the Motion to Suppress at ECF No. 257.

4:1–9:16, 10:4–12:2, ECF No. 1). Defendant moves to suppress all evidence seized as a result of two warrants that United States Postal Inspectors (the "officers") executed on his home and workplace. (*See generally* Mot. Suppress, ECF No. 257). Magistrate Judge Koppe provides a detailed review of the facts and procedural history of this matter in the R&R. (*See* R&R 1:17–4:23, ECF No. 326). (*See also* Mot. Suppress 2:1–4:20); (Resp. Mot. Suppress 3:1–4:8, ECF No. 270). In the R&R, Magistrate Judge Koppe denies Defendant's request for an evidentiary hearing and recommends denying Defendant's Motion to Suppress because the warrants the officers executed were not defective. (*See* R&R 5:15–15:2). Defendant filed an Objection to the R&R, (ECF No. 371), and the Government filed a Response, (ECF No. 384).

## II. LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. *See* 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a *de novo* determination of those portions of the R&R to which objections are made. *See* 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).

## III. DISCUSSION

The R&R recommends denying Defendant's Motion to Suppress for three reasons. First, probable cause existed for the issuing judge to issue the warrants for Defendant's home and workplace. (*See* R&R 7:1–10:16). Second, the warrants demonstrated sufficient particularity and were not overbroad. (*See id.* 10:17–13:17). Third, the electronic search protocol meets constitutional standards. (*See id.* 13:18–15:2). Defendant objects because he

argues the warrants were deficient.[2] (*See generally* Obj.).  The Court addresses each issue in turn.

### A.  Probable Cause

Defendant argues probable cause did not exist to search for or seize any materials or records related to Defendant prior to 2014. (*See* Mot. Suppress 7:1–17).  The R&R, however, holds that "the issuing judge had a substantial basis for finding that probable cause existed to issue both the warrant for Defendant's house and for his workplace." (R&R 9:4–7).  In his Objection, Defendant argues again that there was no probable cause to seize any materials or records related to him prior to 2014. (*See* Obj. 5:8–6:14).

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV.  Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484–87 (1963); *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016).

The Fourth Amendment's Warrant Clause provides that a warrant may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  This language imposes three requirements. *Dalia v. United States*, 441 U.S. 238, 255 (1979).  A valid search warrant must be: (1) issued by a neutral and detached judge; (2) supported by probable cause to believe the evidence sought will aid in a particular apprehension or conviction for a particular offense; and (3) describe the things to be seized and the place to be searched with particularity. *United States v. Artis*, 919 F.3d 1123, 1129 (9th Cir. 2019) (citing *Dalia*, 441 U.S. at 255).

---

[2] Defendant does not object to the Magistrate Judge's denial of an evidentiary hearing and withdraws his arguments regarding electronic search protocols. (Obj. 2:9–12).  Accordingly, the Court does not discuss these issues, denies Defendant's request for an evidentiary hearing, and accepts and adopts the Magistrate Judge's recommendation regarding electronic search protocols.

Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept turning on the assessment of probabilities and the particular factual context not readily, or even usefully, reduced to a neat set of legal rules," and its existence must be determined by an analysis of the totality of the circumstances surrounding the intrusion. *Id.* at 232. Determining whether probable cause exists "turn[s] on the assessment of probabilities in particular factual contexts." *Id.* The concept does not deal with hard certainties, but with probabilities. *Id.* at 241; *see also Brinegar v. United States*, 338 U.S. 160, 175 (1949) (explaining that probable cause deals with "probabilities" which are not technical, but factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians act). The probable cause standard is a "practical, non-technical conception." *Brinegar*, 338 U.S. at 175.

The issuing judge need not determine "that the evidence is more likely than not to be found where the search takes place. . . . The [issuing judge] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir.1991) (citation and internal quotation marks omitted). Neither certainty nor a preponderance of the evidence is required. *United States v. Kelley*, 482 F.3d 1047, 1050–51 (9th Cir. 2007) (citations omitted). In issuing a search warrant, the issuing judge simply must determine whether there is a "fair probability" that evidence of a crime will be found. *Gates*, 462 U.S. at 230, 238, 246. A reviewing court is required to examine all circumstances set forth in the affidavit, and in doubtful cases, to give preference to the validity of the warrant. *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.), *cert. denied*, 474 U.S. 847 (1985). A judge's determination that an affidavit provided probable cause to issue a warrant "will be upheld unless clearly erroneous." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004).

It is well recognized that law enforcement officers can rely on their own experience and the experience and information of other law enforcement officers in establishing probable cause. *United States v. Butler*, 74 F.3d 916 (9th Cir. 1996). Similarly, an issuing judge "may rely on the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *United States v. Fannin*, 817 F.2d 1379, 1381 (9th Cir. 1987). *See also United States v. Ayers*, 924 F.2d 1468, 1479 (9th Cir. 1991) ("[I]n weighing the evidence supporting a request for a search warrant, [an issuing judge] may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found"). An officer need not include all the information in her possession to obtain a search warrant. An affidavit need only show facts adequate to support the finding of probable cause. *United States v. Johns*, 948 F.2d 599, 605 (9th Cir. 1991).

Here, probable cause supported the warrants the officers executed. The affidavit provides detailed connections between the alleged fraud scheme and Defendant, his home, and his workplace. The affiant states he has more than twenty (20) years of experience working as a Postal Inspector with the United States Postal Inspection Service and has conducted multiple criminal investigations of similar fraud schemes. (*See* Aff. Supp. Search Warrant ("Aff.") ¶ 1, Ex. A to Mot. Suppress, ECF No. 257-1). He also states his understanding of how the alleged scheme functioned, (*see id.* ¶¶ 43–91, Ex. A to Mot. Suppress), including the contents of the fraudulent letters sent to victims, (*see id.* ¶¶ 50–72, Ex. A to Mot. Suppress), third-party consumer mail agency boxes Defendant allegedly opened and used to receive mail from victims, (*see id.* ¶¶ 15, 91, Ex. A to Mot. Suppress), money deposited into bank accounts for solicitations related to companies Defendant is allegedly associated with, (*see id.* ¶¶ 87, 91, 95–96, Ex. A to Mot. Suppress), that various forms of technology, such as phones and computers, were used to further the scheme, (*see id.* ¶¶ 126, 129, 134–136, 162–171, Ex. A to Mot. Suppress), and evidence supporting the notion that the scheme began as early as 2004, (*see id.* ¶

92, Ex. A to Mot. Suppress). Based on the totality of the circumstances, and the contents of the affidavit, a fair probability existed that evidence of the alleged fraud scheme would be discovered both at Defendant's home and workplace; thus, the search warrants are valid. *See Gates*, 462 U.S. at 230; *Fannin*, 817 F.2d at 1381.

Further, warrants are not required to have temporal limitations, and Defendant does not offer persuasive argument in opposition. Temporal limitations for issuing warrants are not required if "the subject matter to be searched roughly align[s] temporally with the period of relevant criminal activity for which the government had probable cause to search." *United States v. Lofstead*, 574 F. Supp. 3d 831, 843 (D. Nev. 2021), *appeal dismissed*, No. 21-10375, 2022 WL 866324 (9th Cir. Jan. 4, 2022) (citing *United States v. Johnson*, No. 6:14-cr-00482-MC, 2018 WL 934606, at *2 (D. Or. Feb. 16. 2018)). As discussed above, probable cause existed because there was a fair probability that evidence of the alleged fraud scheme, spanning back to 2004, would be discovered both at Defendant's home and workplace. Further, as the R&R correctly points out,

> Defendant has proffered no reasons why the warrants had to specifically be limited to his alleged personal involvement in the scheme for a nexus to exist or why the warrants might not be valid on the basis that other relevant evidence predating Defendant's alleged personal involvement in the scheme existed at the two locations, such as old draft solicitations or databases including information from solicitations mailed prior to his involvement.

(R&R 10:9–14). In his Objection, Defendant does not dispel this deficiency. Therefore, probable cause supported the warrants the officers executed.

**B. Specificity**

Defendant contends the warrants lack particularity and are overbroad. (*See* Mot. Suppress 8:1–11:9). The R&R holds that the affidavit in support of the warrant provides objective standards such that officers could distinguish between items subject to seizure and those which were not. (*See* R&R 12:15–13:4). It also holds that the warrants are not overbroad

because they are limited to searching for documents and items that either support or dispel the alleged fraud scheme. (*See id.* 13:5–17).  In his Objection, Defendant maintains that Attachment B, the document identifying the information to be seized, was overbroad. (*See* Obj. 6:15–9:3).

Search warrants must be specific. *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006).  "Specificity has two aspects: particularity and breadth.  Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement that the scope of the warrant must be limited by the probable cause on which the warrant is based." *Id.* (citing *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993)).

The particularity requirement exists to prevent general searches. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  The particularity requirement functionally limits the authority to search by the probable cause that supports the search, ensuring that the search will be carefully tailored to its justifications instead of a wide-ranging exploratory search such as those specifically prohibited by the Fourth Amendment. *Id.*; *see also In re Search of Google Email Accounts identified in Attachment A*, 92 F.Supp.3d 944, 950 (D. Alaska 2015) (citing *Payton v. New York*, 445 U.S. 573, 584 n.21 (1980)).  The need to prevent general exploratory searching of a person's belongings is particularly of concern in document searches because, unlike other objects, document searches tend to involve broad disclosures of the intimacies of private lives, transactions, and thoughts. *United States v. Washington*, 797 F.2d 1461, 1468 (9th Cir. 1986). However, the Ninth Circuit has often recognized a legitimate law enforcement need to collect large quantities of data and search through it carefully for concealed or disguised pieces of evidence. *See, e.g.*, *Hill*, 459 F.3d at 973.

To satisfy the particularity requirement, the "description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015) (quoting *United States v.*

*Smith*, 424 F.3d 992, 1004 (9th Cir. 2005)).  In determining whether a warrant is sufficiently particular, the Ninth Circuit considers one or more of the following factors: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which the executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *See, e.g.*, *United States v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004) (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (1986)).

A warrant's description of items needs to be only "reasonably specific, rather than elaborately detailed." *Hill*, 459 F.3d at 973 (citing *United States v. Storage Spaces Designated Nos. 8 & 49*, 777 F.2d 1363, 1368 (9th Cir. 1985)).  A warrant with generic categories of items will not be necessarily invalidated "if a more precise description of the items . . . is not possible." *Id.*  The level of specificity required "varies depending on the circumstances of the case and the type of items involved. *Id.*; *see also Spilotro*, 800 F.2d at 963-65 (noting that warrants that "describe[e] the criminal activit[y] . . . rather than simply referring to the statute believed to have been violated" provide more substantive guidance which can satisfy the particularity requirement).

The breadth requirement functions to "limit the scope of the search warrant by the probable cause on which the warrant is based." *Fries*, 781 F.3d at 1151 (quoting *Smith*, 424 F.3d at 1004); *see also Hill*, 459 F.3d at 973.  The overbreadth analysis asks the Court to assess a tailoring question: "does the proposed warrant limit the government's search to the specific places that must be inspected to confirm or dispel the suspicion that gave rise to probable cause?" *In re Search of Google Email*, 92 F.Supp.3d at 950 (citing *Garrison*, 480 U.S. at 84)).

Additionally, within the context of electronic evidence, over-seizing "is an accepted reality in electronic searching because there is no way to be sure exactly what an electronic file

contains without somehow examining its content." *United States v. Flores*, 802 F.3d 1028, 1044–45 (9th Cir. 2015) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010)). Data that used to be kept physically is now routinely kept electronically, and there can be challenges in retrieving electronically stored information. *Comprehensive Drug Testing, Inc.*, 621 F.3d at 1175. Additionally, courts are hesitant to narrow search protocols for digital information because digital files are easy to disguise or rename, and evidence could escape discovery. *United States v. Adjani*, 452 F.3d 1140, 1150 (9th Cir. 2006). Generally, a warrant to search electronic data will sufficiently protect against overbreadth if the warrant (1) specifies the particular crime for which evidence is sought; (2) prohibits the retention of unresponsive information under a plain-view doctrine; and (3) protects third party rights by segregating unresponsive information. *Flores*, 802 F.3d at 1045.

Here, the warrants demonstrated sufficient particularity and were not overbroad. First, as described above, probable cause existed to support execution of the warrants. (*See* Aff. ¶¶ 15, 43–92, 95–96, 126, 129, 134–136, 162–171, Ex. A to Mot. Suppress). Second, the warrants showed sufficient particularity because the affidavit in support of the warrants provides objective standards such that officers could distinguish between items subject to seizure and those which were not. *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009) (quoting *United States v. Kow*, 58 F.3d 423, 429 n.3 (9th Cir. 1995)) (holding that an affidavit is part of a warrant and can cure any defects in the warrant "only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search"). For example, the affidavit lists the specific people and entities associated with the alleged fraud scheme. (*See* Aff. ¶¶ 15, 43–92, 95–96, 126, 129, 134–136, 162–171, Ex. A to Mot. Suppress); (Attachment B to Aff.: Particular Property to be Seized ("Attachment B") ¶ 2, Ex. A to Mot. Suppress, ECF No. 257-1). In addition, the affidavit explains that people engaged in fraud

schemes often keep records of their fraudulent activities on electronic media, including computers. (Aff. ¶¶ 164–165, Ex. A to Mot. Suppress). The affidavit then states that in the affiant's experience, electronic evidence may be obfuscated in various ways, requiring examiners to analyze every file on a computer, which is why courts are hesitant to narrow search protocols regarding digital information. (*See id.* ¶¶ 149–155, Ex. A to Mot. Suppress); *Adjani*, 452 F.3d at 1150.

Further, the affidavit is reasonably specific about the particular type of documentation and records the officers would search for, including "customer databases and lists (including identifying information and all data captured about customers), contracts, complaints, correspondence, and other business or financial records," solicitations, collection letters, advertising or marketing materials, legal notices from third parties, invoices and business or financial records related to payments from consumers, "shipping and mailing records for common carriers and the U.S. Postal Service, including invoices and receipts, . . . [and] records related to banks and payment processors, including contracts, correspondence, deposit slips, and consumer checks." (*See* Attachment B ¶ 2, Ex. A to Mot. Suppress); *Hill*, 459 F.3d at 973. It also lists the procedures the officers would take to attempt to recover evidence, including obfuscated evidence, from any computer seized. (*See* Attachment C to Aff.: Protocol for Searching Electronic Data Seized Pursuant to This Search Warrant ("Attachment C") ¶ 5, Ex. A to Mot. Suppress, ECF No. 257-1). Moreover, the affidavit explains that in executing the warrants, officers will make reasonable efforts to minimize exposing or examining "irrelevant, privileged, or confidential files . . . ." (*See id.* ¶¶ 1, 5, Ex. A to Mot. Suppress). Thus, the warrants allow a search for no more evidence than is necessary to either "confirm or dispel the suspicion that gave rise to probable cause." *See In re Search of Google Email*, 92 F.Supp.3d at 950. In addition, courts routinely approve searches for identity information related to control over records or documents and the information supporting probable cause directly link

Defendant's electronic devices to the alleged fraud scheme's activity. *See, e.g.*, *United States v. Turner*, 2:21-cr-00013-KJD-BNW, 2022 WL 195083, at * 5 (D. Nev. Jan. 21, 2022) (finding a warrant valid which sought to seek basic user identity information related to electronic data). Accordingly, the Court denies Defendant's Motion to Suppress and accepts and adopts the Magistrate Judge's R&R.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress, (ECF No. 257), is **DENIED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation, (ECF No. 326), is **ACCEPTED and ADOPTED in full.**

**DATED** this __4__ day of September, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court