*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF NEVADA

3    UNITED STATES OF AMERICA,      )
                                    ) Case No. 2:19-cr-00295-GMN-NJK
4              Plaintiff,           )
                                    ) Las Vegas, Nevada
5    vs.                            ) March 20, 2023
                                    ) 1:02 p.m. - 5:29 p.m.
6    MARIO CASTRO, SALVADOR         ) Courtroom 7D
     CASTRO, MIGUEL CASTRO, and     ) JURY TRIAL, DAY 1,
7    JOSE LUIS MENDEZ,              ) PM SESSION
                                    )
8              Defendants.          )
     _____    )   *C E R T I F I E D   C O P Y*

9

10         REPORTER'S **REDACTED** TRANSCRIPT OF JURY TRIAL,
                         DAY 1, PM SESSION
11           BEFORE THE HONORABLE GLORIA M. NAVARRO
                UNITED STATES DISTRICT COURT JUDGE

12

13   APPEARANCES:

14   For the Government:   **TIMOTHY T. FINLEY, ESQ.**
                           **DANIEL E. ZYTNICK, ESQ.**
15                         *U.S. Department of Justice*
                           *950 Pennsylvania Avenue, N.W.*
16                         *Washington, D.C. 20530*
                           *(202) 307-0050*
17

18

19   (Appearances continued on pages 2 and 3.)

20

21   Court Reporter:      Amber M. McClane, RPR, CRR, CCR #914
                          United States District Court
22                        333 Las Vegas Boulevard South, Room 1334
                          Las Vegas, Nevada 89101
23                        (702) 384-0429 or AM@nvd.uscourts.gov

24   Proceedings reported by machine shorthand.  Transcript
     produced by computer-aided transcription.
25

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
 1   APPEARANCES CONTINUED:

 2   For the Government (Cont.):

 3        MINA CHANG, AUSA
          UNITED STATES ATTORNEY'S OFFICE
 4        501 Las Vegas Boulevard South, Suite 1100
          Las Vegas, Nevada 89101
 5        (702) 388-6336

 6

 7   For Defendant Mario Castro:

 8        JOSHUA L. TOMSHECK, ESQ.
          HOFLAND & TOMSHECK
 9        228 South Fourth Street, First Floor
          Las Vegas, Nevada 89101
10        (702) 895-6760

11   -AND-

12        RICHARD E. TANASI, ESQ.
          TANASI LAW OFFICES
13        8716 Spanish Ridge Avenue, Suite 105
          Las Vegas, Nevada 89148
14        (702) 906-2411

15

16   For Defendant Salvador Castro:

17        DONALD J. GREEN, ESQ.
          LAW OFFICES OF DONALD J. GREEN
18        4760 South Pecos Road, Suite 103
          Las Vegas, Nevada 89121
19        (702) 388-2047

20

21   / / / / /

22   / / / / /

23   / / / / /

24

25
```

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
1    APPEARANCES CONTINUED:

2    For Defendant Miguel Castro:

3         LUCAS J. GAFFNEY, ESQ.
          GAFFNEY LAW
4         9900 Covington Cross Drive, Suite 290
          Las Vegas, Nevada 89144
5         (702) 742-2055

6    -AND-

7         THOMAS A. ERICSSON, ESQ.
          THOMAS A. ERICSSON, CHTD.
8         9900 Covington Cross Drive, Suite 290
          Las Vegas, Nevada 89144
9         (702) 878-2889

10   For Defendant Jose Luis Mendez:

11        WILLIAM H. BROWN, ESQ.
          CHRISTOPHER MISHLER, ESQ.
12        BROWN MISHLER, PLLC
          911 North Buffalo Drive, Suite 202
13        Las Vegas, Nevada 89128
          (702) 816-2200

14

15                           * * * * *

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

*Page 143*

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          LAS VEGAS, NEVADA; MONDAY, MARCH 20, 2023; 1:02 P.M.

2                           --o0o--

3                    P R O C E E D I N G S

4          **THE COURT:**  Good afternoon, everyone.  Please take a

5     look to the left and the right of your seat, and raise your

6     hand if there's not a person or a lanyard next to you.  Oh.

7     No, actually, did you pick up the lanyards?

8          **COURTROOM ADMINISTRATOR:**  Yes.

9          **THE COURT:**  Oh.  Now I don't know.  How am I going to

10    know?  Okay.  How do we know if someone's missing?

11         **PROSPECTIVE JUROR:**  I think they got excused.

12         **COURTROOM ADMINISTRATOR:**  They did.

13         **THE COURT:**  It looks like this... went back to the

14    first page.  We did that.  Okay.  All right.

15         So does anyone think there's a person missing next to

16    you that should be here?  Please raise your hand.

17         **PROSPECTIVE JUROR:**  No, not here.

18         **COURTROOM ADMINISTRATOR:**  She wouldn't know

19    because... when everybody left --

20         **THE COURT:**  Oh.  Okay.  So we did dismiss --

21         **COURTROOM ADMINISTRATOR:**  Seventy-three.

22         **THE COURT:**  -- 73.  Is that who we -- yes, we did

23    dismiss 73.

24         Okay.  So we're going with the next question.  So was

25    there anyone else who's been charged with a criminal offense

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    that we haven't heard about yet?

2        *(No hands raised.)*

3            THE COURT:  All right.  Then the next question is:

4    Have you been a member to a litigation, a party in litigation,

5    a lawsuit, or a dispute with an agency of the United States?

6    Have you ever been a party to a lawsuit or been in litigation

7    or been in a dispute with an agency of the United States, so

8    the Federal Government?

9            MR. GREEN:  Back here, Your Honor, ma'am.

10           THE COURT:  Yes.  And what is your juror number?

11           PROSPECTIVE JUROR:  Sixty-three.

12           THE COURT:  Sixty-three.  Yes.  So which -- which

13   department were you in a dispute with?

14           PROSPECTIVE JUROR:  Name of the company or name of

15   the --

16           THE COURT:  Yeah, name of the government agency.

17           PROSPECTIVE JUROR:  Oh.  I'm sorry.  I misunderstood

18   the question.  No.  Sorry.

19           THE COURT:  Oh.  Okay.

20           PROSPECTIVE JUROR:  Not a government agency, no.

21           THE COURT:  Okay.  But you were in -- you were a

22   party to litigation?

23           PROSPECTIVE JUROR:  Yes.

24           THE COURT:  Okay.  Who were you in litigation with?

25           PROSPECTIVE JUROR:  I mean, I sign all these papers

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

1    that I can't repeat, but I have been -- I've been in

2    litigation.

3            **THE COURT:**  Oh.  Okay.  So there was a

4    confidentiality agreement --

5            **PROSPECTIVE JUROR:**  Yes, it is.

6            **THE COURT:**  -- in the end -- okay.  So it was a civil

7    lawsuit?

8            **PROSPECTIVE JUROR:**  Yes.

9            **THE COURT:**  And it was resolved?

10            **PROSPECTIVE JUROR:**  Yes.

11            **THE COURT:**  Did you have an attorney in that lawsuit?

12            **PROSPECTIVE JUROR:**  Yes.

13            **THE COURT:**  Okay.  All right.  Thank you.

14            Anyone else in litigation with an agency of the

15    United States?

16            **PROSPECTIVE JUROR:**  The city.  My mother sued the

17    City of Las Vegas for a --

18            **THE COURT:**  I'm sorry.  What was your juror number

19    again?

20            **PROSPECTIVE JUROR:**  Juror thirty-two.

21            **THE COURT:**  32.  Thank you.  Sorry for that.  Okay.

22    Your mom?

23            **PROSPECTIVE JUROR:**  She sued the City of Las Vegas

24    for illegally installing a concrete barrier that she tripped

25    over.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          **THE COURT:**  Oh.  Okay.  And how long ago was that?

2          **PROSPECTIVE JUROR:**  Fifteen years ago.

3          **THE COURT:**  Okay.  Thank you.

4          Anyone else?

5       *(No hands raised.)*

6          **THE COURT:**  All right.  So please raise your hand if

7   you have any formal legal training in law enforcement work.

8          Okay.  Juror Number 5.

9          **PROSPECTIVE JUROR:**  Family member; cousin.  He's a

10  correctional officer in Idaho.

11         **THE COURT:**  Okay.  Anyone else?

12         **PROSPECTIVE JUROR:**  Sorry, Judge.  Number 6.  I

13  forgot.  I have so much stuff in my past.  I was a

14  correctional officer at the maximum security prison in Los

15  Lunas, New Mexico, back in -- right before 2000.  I want to

16  say '98, '99, somewhere around in there.  That's it.

17         **THE COURT:**  Okay.  Thank you.

18         **PROSPECTIVE JUROR:**  Juror Number 3.

19         **THE COURT:**  Yes.

20         **PROSPECTIVE JUROR:**  My brother-in-law is a prison

21  guard up there in California.

22         **THE COURT:**  Prison guard where?

23         **PROSPECTIVE JUROR:**  In Northern California.

24         **THE COURT:**  Northern California.  Yes.  Thank you.

25         **PROSPECTIVE JUROR:**  Juror 21.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          THE COURT:  Yes.

2          PROSPECTIVE JUROR:  My sister worked as a dispatcher

3   for Madera County back in, I think it was, like, early 90s.

4          THE COURT:  Dispatcher for the county?

5          PROSPECTIVE JUROR:  Of Madera.

6          THE COURT:  Like the police, like 911, or --

7          PROSPECTIVE JUROR:  No -- well, kind of sort of.  She

8   did -- she did, like, a -- Madera County is -- was a -- it was

9   a small precinct.  So she took in all the calls.  I don't

10  think she -- she didn't really work for 911, but she worked

11  for the police department itself.

12         THE COURT:  Okay.  Thank you.

13         PROSPECTIVE JUROR:  Juror Number 29.  My son-in-law

14  is a U.S. federal marshal.

15         THE COURT:  And is that here in Nevada or a different

16  district?

17         PROSPECTIVE JUROR:  He is in -- currently in Utah.

18         THE COURT:  Thank you.

19         PROSPECTIVE JUROR:  Juror Number 35.  My father was a

20  police officer and a deputy DA.

21         THE COURT:  Is that here in Nevada or somewhere else?

22         PROSPECTIVE JUROR:  Alameda County, California.

23         THE COURT:  Did John ask you what -- did you ask him

24  what state?

25         PROSPECTIVE JUROR:  No, I didn't.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1           **THE COURT:**  Oh.  Okay.  He's from the East Coast, so

2    I thought maybe he asked you to specify which state.

3           Anyone else?

4           **PROSPECTIVE JUROR:**  Juror 34.  I -- I was previously

5    employed by the City of North Las Vegas Police Department.  I

6    worked in the detention center.

7           **THE COURT:**  Are you at the detention center now or

8    you said previously?

9           **PROSPECTIVE JUROR:**  Previously.

10          **THE COURT:**  When did you retire?  When did you stop

11   working there?

12          **PROSPECTIVE JUROR:**  2011.

13          **THE COURT:**  Okay.  Thank you.

14          **PROSPECTIVE JUROR:**  Juror 25.

15          **THE COURT:**  Yes.

16          **PROSPECTIVE JUROR:**  My husband's a correction officer

17   at Southern Desert prison.

18          **THE COURT:**  I'm not sure if I heard you.  Your

19   husband is a corrections officer at Southern Desert?  That's

20   in Pahrump?

21     *(Reporter instruction.)*

22          **THE COURT:**  Oh.  In Indian Springs?

23          **PROSPECTIVE JUROR:**  Yeah.

24          **MR. ERICSSON:**  Your Honor, which juror number was

25   that, please?

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          **THE COURT:**  Twenty-five.

2          **PROSPECTIVE JUROR:**  Juror 27.  My husband was the

3    undersheriff in Wyoming, and I have an aunt and uncle that

4    work for Metro and they're all retired.

5          **PROSPECTIVE JUROR:**  Juror 29.  My grandson also is a

6    correctional officer, just becoming a correctional officer in

7    Idaho.

8          **THE COURT:**  Number 29, grandson, correctional officer

9    in Idaho?

10          **PROSPECTIVE JUROR:**  Yes.

11          **THE COURT:**  Okay.  Thank you.

12          **PROSPECTIVE JUROR:**  Juror Number 53.  My stepmom is a

13    correctional officer here in Las Vegas.

14          **THE COURT:**  I'm sorry.  Where is she a correction

15    officer, your stepmom?

16          **PROSPECTIVE JUROR:**  At the county jail.

17          **THE COURT:**  Here at the Las Vegas County Jail?

18          **PROSPECTIVE JUROR:**  Yes.

19          **THE COURT:**  Okay.

20          **PROSPECTIVE JUROR:**  Juror Number 60.  My stepbrother

21    in Illinois is a police officer in Melrose Park.  He's been

22    doing it for a little over two years.  Speak to him every

23    couple months.

24          **THE COURT:**  Thank you.

25          Anyone else?  Oh, yes.  Back over here, Number 3.

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

1    No, 5 I mean.

2            **PROSPECTIVE JUROR:**  Juror 5.  I didn't see you said

3    close friends, but I have a friend who's a correctional

4    officer at the county jail.

5            **THE COURT:**  Corrections officers where?

6            **PROSPECTIVE JUROR:**  The jail that's, like, right here

7    downtown.

8            **THE COURT:**  Oh.  CCDC?

9            **PROSPECTIVE JUROR:**  I assume, yes.

10           **THE COURT:**  Okay.  County jail.  Thank you.

11           **PROSPECTIVE JUROR:**  Juror Number 8.

12           **THE COURT:**  Yes.

13           **PROSPECTIVE JUROR:**  My jujitsu instructor is a CO

14   here in Las Vegas.

15           **THE COURT:**  Did you say a CU?

16           **PROSPECTIVE JUROR:**  A CO, a correctional officer.

17           **THE COURT:**  CO.  Anyone else?  We got one more.

18           **PROSPECTIVE JUROR:**  Juror Number 67.  My brother is a

19   general counsel, an attorney, for A.T. Still University in

20   Phoenix and also in Missouri.

21           **THE COURT:**  Okay.  I'm sorry, he's a -- did you

22   say --

23           **PROSPECTIVE JUROR:**  General counsel and vice

24   president.

25           **THE COURT:**  In Phoenix or Missouri?  I'm sorry.

*REDACTED*
*2:19-cr-00295-GMN-NJK - March 20, 2023*

1        **PROSPECTIVE JUROR:**  Both.  A.T. Still University,

2    which is based out of Phoenix, Missouri -- or Phoenix,

3    Arizona, and also has a sister school in Clarksville,

4    Missouri.

5        **THE COURT:**  And so does he do law enforcement work?

6        **PROSPECTIVE JUROR:**  No, but he has the legal

7    training.

8        **THE COURT:**  Oh.  Okay.  Thank you.

9        Anyone else?

10    *(No hands raised.)*

11        **THE COURT:**  All right.  So next raise your hand if

12    you have had a negative experience with law enforcement.

13    Examples of law enforcement include local police department,

14    sheriff, a local district attorney's office, the FBI, the

15    DEA -- so FBI, Federal Bureau of Investigations; DEA, Drug

16    Enforcement Agency; ATF, the -- what is ATF?  Task force?  No.

17    Alcohol Tobacco Firearms.  That's it.  IRS, Internal Revenue

18    Service; Department of Labor; Department of Homeland Security;

19    United States Postal Service; or Veterans Administration, et

20    cetera.  So if you've had any negative experience with them.

21        **PROSPECTIVE JUROR:**  When I was stationed at a naval

22    hospital in Long Beach, I was --

23        **THE COURT:**  I'm sorry.  What's your juror number?

24        **PROSPECTIVE JUROR:**  Oh.  Sorry.  Juror 21.

25        **THE COURT:**  21.  Yes.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1              **PROSPECTIVE JUROR:**  I was detained and questioned by

2      police officers walking to the hospital, the naval hospital,

3      because they said that I looked like somebody that they --

4      that they got a report on.

5              **THE COURT:**  Thank you.

6              Anyone else?

7          *(No hands raised.)*

8              **THE COURT:**  All right.  Raise your hand if you have

9      had any military experience, and then please tell me which

10     branch, rank, and what type of discharge you received.

11             **PROSPECTIVE JUROR:**  Juror 3.  Air Force.  I retired

12     in 2004.

13             **THE COURT:**  And what was the highest rank that you --

14             **PROSPECTIVE JUROR:**  E -- E-7, master sergeant.

15             **THE COURT:**  Thank you.

16             **PROSPECTIVE JUROR:**  Juror Number 8.  I was an active

17     duty Marine Corps from 2000 to 2004.  And 2008 through 2014 I

18     was California Army National Guard.

19             **THE COURT:**  Thank you.

20             **PROSPECTIVE JUROR:**  Juror Number 11.  My husband was

21     active duty.  He's retired now, but I worked on the base, too.

22     He was U.S. Air Force for 21 years.

23             **THE COURT:**  Thank you.

24             **PROSPECTIVE JUROR:**  Jury [sic] 21.  Navy from '89 to

25     '93, E-4.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          THE COURT:  Okay.  Thank you.

2          PROSPECTIVE JUROR:  Juror 28.  U.S. Army, 2002 to

3    2012, E-4.

4          THE COURT:  Thank you.

5          PROSPECTIVE JUROR:  Juror 71.  United States Air

6    Force, 1988 to 2008, E-6.

7          THE COURT:  Anyone else with military experience?

8      (No hands raised.)

9          THE COURT:  All right.  So a defendant has the right

10   to choose to testify or to not testify in his own trial.  If a

11   defendant chooses to not testify during trial, a jury cannot

12   use that choice against the defendant.  In other words, the

13   defendant has the right to remain silent.  And even if you

14   wish you would have heard from him, you can't use that against

15   him.  All right?

16          So is there anyone who believes they simply could not

17   reach a judgment in this case unless they hear from the

18   defendant?  Or can you follow the law and understand that no

19   person is required, they're not compelled to testify against

20   themselves so they're not -- you're not allowed to force them

21   to testify if they don't want to?

22      (No hands raised.)

23          THE COURT:  Nobody has an issue with that?  No?  All

24   right.

25          Next question, let's talk about the nature of this

1   case.  We have a conspiracy to commit mail fraud and making a

2   false statement to a government agent.  Due to the nature of

3   this charge, the kind of charge that it is, is there anyone

4   who thinks they could not be a fair juror in this kind of

5   case?

6       *(No hands raised.)*

7           **THE COURT:**  All right.  So that's a uniform negative.

8           Next I'm going to ask you some more case-specific

9   questions.  So far we've only talked about generally questions

10  that apply to pretty much all different kinds of cases.

11          So does anyone hold the belief that the Federal

12  Government should not or does not have the authority to

13  prosecute mail fraud or false statements to a government

14  agency -- or to a government agent?  Excuse me.  Anyone have

15  any concern about the fact that this is a federal crime?

16      *(No hands raised.)*

17          **THE COURT:**  All right.  So that's a uniform negative.

18          All right.  So please raise your hand if you've ever

19  been self-employed, or own your own business, worked in the

20  direct mail industry, worked in the printing industry, been

21  the victim of fraud, entered a sweepstakes, responded to a

22  sweepstakes solicitation received by mail or e-mail, submitted

23  payment in response to a sweepstakes solicitation, or known

24  anyone who won a mail or e-mail sweepstakes?  So raise your

25  hand for any of these, and then tell me how many of them

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    identifies you.

2          **PROSPECTIVE JUROR:**  I entered that one.  It's

3    Publisher's Clearing House.  I guess is that a sweepstakes?  I

4    won a suitcase, but -- Juror 3.

5          **THE COURT:**  And that's Juror Number 3.  Thank you.

6          **PROSPECTIVE JUROR:**  I've done some freelance musician

7    gigs, and I get paid, like, under the table.  That's allowed

8    to say?

9          **THE COURT:**  All right.  All right.  So that's Juror

10   Number 5.  I'm taking that to be self-employed; is that --

11   okay.

12         **PROSPECTIVE JUROR:**  Juror Number 6.  We've all

13   entered sweepstakes.  I mean, we all played the lottery and

14   stuff like that.  But anyway, I did work in the printing

15   industry where we -- in Texas, and we printed all the --

16   nothing related to this -- just printed -- we printed all the

17   things for Peter Piper Pizza, all the pizza boxes.  That's it.

18         **THE COURT:**  Oh, okay.  Thank you.

19         **PROSPECTIVE JUROR:**  Juror Number 8.  I currently have

20   my own business.  I've been self-employed for the past six

21   years.

22         **PROSPECTIVE JUROR:**  Juror 15.  I used to work for

23   Money Mailer.  It's like Valpak.  Like, coupons in the mail.

24         **THE COURT:**  Okay.  Can you say that again holding the

25   microphone a little bit closer?

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          PROSPECTIVE JUROR:  Juror 15.  I used to work for
2   Money Mailer or Money Mail, whatever it is.  It's like Valpak,
3   the coupons in the mail.
4          THE COURT:  So did you call it Money Mailer?
5          PROSPECTIVE JUROR:  Yeah.
6          THE COURT:  All right.  And so what is that?
7          PROSPECTIVE JUROR:  They just send coupons through
8   the mail.  You target small businesses.  You'd go sell that to
9   them.
10         THE COURT:  And what did you do with them?
11         PROSPECTIVE JUROR:  I was -- directly dealt with
12  small businesses.  So I'd make coupons for them, and you'd
13  send them out to mail, to the people in certain residential
14  areas.
15         THE COURT:  But what specifically was your job?
16         PROSPECTIVE JUROR:  So I would create the ads for
17  them.  You'd sell that to them, and then you'd mail out all
18  the coupons to a certain residential area.  So, I mean, it's
19  kind of relative.
20         THE COURT:  Okay.  So did you -- I'm trying to --
21  so --
22         PROSPECTIVE JUROR:  It's like sales.
23         THE COURT:  So on a computer you're creating it?
24         PROSPECTIVE JUROR:  No.  You go straight to the
25  business or you call, cold calls, cold sales.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          THE COURT:  All right.  So you were in the phone

2    call --

3          PROSPECTIVE JUROR:  Yeah.  And then you'd make the

4    actual coupon that you send through the mail.  If you've got,

5    like, Valpak or Money Mailer in the mail.

6          THE COURT:  All right.  So you were in the phone

7    sales for that?

8          PROSPECTIVE JUROR:  Kind of, yeah.

9          THE COURT:  All right.  Thank you.  Anyone else?

10         PROSPECTIVE JUROR:  Juror 17, self-employed, sole

11   provider for the household.

12         THE COURT:  Thank you.

13         PROSPECTIVE JUROR:  Juror 18.  I'm self-employed, and

14   I have entered a sweepstakes.

15         PROSPECTIVE JUROR:  Juror 19.  I once ran a

16   conference and had a corporation for that in my name for about

17   a year around 2005.  That no longer exists so, you know...

18         THE COURT:  Okay.  Thank you.

19         PROSPECTIVE JUROR:  Juror 21.  I've entered

20   sweepstakes.

21         THE COURT:  Thank you.

22         PROSPECTIVE JUROR:  Jury [sic] Number 27.  And I was

23   self-employed, and I was hired to -- subcontracted to move

24   products to -- for the United States Postal Services and then

25   the --

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1        (Reporter instruction.)

2            **PROSPECTIVE JUROR:**  I did shipping and receiving for

3    imports/exports, and some of that was printing.  And then the

4    other part of it, fraud, I have over $100,000 in bad checks

5    that I've been given in the past 15 years and then from

6    sweepstakes that I won and people sending me money.  And

7    then -- and of course I put it in the bank.  But then also the

8    fraud side of that, I'm the victim.  But my banks were also

9    mad at me over that.  And then submitted payments for

10   sweepstakes, I have done that also for international

11   sweepstakes, not American ones.  And then the other one, I

12   have won on e-mails and -- et cetera, et cetera.  And I have

13   received some monies, but when it comes to the big dollars

14   that they pay, they never show up with the money.

15           **THE COURT:**  And what was your jury number?

16           **PROSPECTIVE JUROR:**  My juror number is 26.

17           **THE COURT:**  Twenty-six.  Okay.  Thank you.  I thought

18   you said 27.

19           **PROSPECTIVE JUROR:**  Juror 32.  I'm self-employed and

20   have entered sweepstakes.

21           **THE COURT:**  Okay.  Self-employed?

22           **PROSPECTIVE JUROR:**  What?

23           **THE COURT:**  Was it just self-employed or --

24           **PROSPECTIVE JUROR:**  I've also entered sweepstakes.

25           **THE COURT:**  And entered sweepstakes.  Thank you.

1          PROSPECTIVE JUROR:  Juror Number 35.  Self-employed

2     and own my own business.

3          THE COURT:  I heard self-employed but not after that.

4          PROSPECTIVE JUROR:  And have my own business.

5          THE COURT:  Opened your own business.  Yes.  Thank

6     you.

7          PROSPECTIVE JUROR:  Juror 34.  I've owned my own

8     business.  I'm sure I've entered sweepstakes, and I currently

9     work for a company that use direct mail.

10          THE COURT:  Thank you.

11          PROSPECTIVE JUROR:  Juror Number 49.  I'm

12     self-employed.  I'm a musician.

13          THE COURT:  Thank you.

14          PROSPECTIVE JUROR:  Juror 54.  I've been

15     self-employed.  I've worked with the direct mail industry, and

16     I've worked with the printing industry also.

17          THE COURT:  Thank you.

18          PROSPECTIVE JUROR:  Juror 57.  Victim of fraud back

19     in 2002.

20          PROSPECTIVE JUROR:  Juror 61.  I've been

21     self-employed as a certified public accountant.  I've been

22     licensed as a CPA since 1981.

23          THE COURT:  Thank you.

24          PROSPECTIVE JUROR:  Juror 74.  I have entered a

25     sweepstakes and have submitted a payment in response to a

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    sweepstakes when I ordered some magazines.

2          THE COURT:  Anybody else?

3      (No hands raised.)

4          THE COURT:  Now, to determine whether you have any

5    prior personal knowledge about this case, please raise your

6    hand if you think that you are familiar with this case.  I'm

7    not aware that there's been anything in the media, but I don't

8    read every single piece of media that's out there.  So if you

9    think either you have media knowledge or personal knowledge or

10   know someone somehow involved with this case, please raise

11   your hand.

12      (No hands raised.)

13          THE COURT:  No?  All right.

14          Raise your hand if you or someone close to you

15   believes that agencies of the Federal Government overreach

16   their authority and act outside the constitution of the

17   United States.

18          PROSPECTIVE JUROR:  Juror 56.  I'm -- I'm a Native

19   American, and a lot of the Native American tribes have issues

20   with water.  And the water rights that was in the news

21   recently, a lot of the Federal Government agencies were

22   watering down all the native families.  My cousins were

23   involved in all this, and I have many cousins and people I

24   know involved in -- it is harassment of the -- you know, they

25   just wanted to save their land.  That pipeline that went

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    underneath, that wasn't authorized.  It's a sovereign nation,

2    and these companies went in and put those pipelines underneath

3    there.  So it was -- it was constant battle, and it was in the

4    news.  So, yes, I think it's an overreach.

5         **THE COURT:**  Thank you.

6         Anyone else?

7         **PROSPECTIVE JUROR:**  I also believe that --

8         **THE COURT:**  I'm sorry.  What's your jury number?

9         **PROSPECTIVE JUROR:**  Oh.  I'm sorry.  Juror 65.

10        **THE COURT:**  Thank you.

11        **PROSPECTIVE JUROR:**  Government outreach.  I believe

12   the -- some of these governmental agencies go well beyond the

13   confines of the constitution.  And the one I can just think of

14   right now is Obamacare.  I was against that, and I feel that's

15   very unconstitutional.  I don't think the taxpayers of this

16   country need to pay for medical care for everyone.  Certainly

17   I will also talk about illegal immigration and the

18   constitution that our taxes -- our tax dollars are paying for

19   their health care, housing, et cetera.

20        **THE COURT:**  Thank you.

21        Anyone else?

22     *(No hands raised.)*

23        **THE COURT:**  All right.  Please raise your hand if you

24   have an opinion about the United States Attorney's Office or

25   Department of Justice that could affect your ability to render

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

1    a verdict in this case.  So if you have an opinion, whether

2    favorable or unfavorable about the United States Attorney's

3    Office or Department of Justice that would affect your ability

4    to render a verdict in this case, please raise your hand.

5            PROSPECTIVE JUROR:  My past -- I'm Juror 56.  My past

6    employment, I worked with [indiscernible] electrical

7    engineering as well as the Department of Energy.  We worked

8    together on cases with the Department of Justice attorneys

9    dealing with the Nevada Test Site workers, as well as my dad

10   was employed up there in Local Union 12.  So, yes, I -- I

11   just -- I just wanted to voice that.

12           THE COURT:  Okay.  Thank you.

13           PROSPECTIVE JUROR:  Juror Number 65.  I also have a

14   problem with the Department of Justice, specifically Donald

15   Trump and the Mar-a-Lago raid and what they're trying to do to

16   him now.  I do not trust them.  So, yeah, I do have a real

17   issue with the Department of Justice right now in this

18   country.

19           THE COURT:  Thank you.

20           Anyone else?

21       (No hands raised.)

22           THE COURT:  All right.  If you've read any news

23   accounts about the United States Attorney's Office or

24   Department of Justice that would affect your ability to render

25   a verdict in this case that is fair and impartial, please

1    raise your hand.

2        *(No hands raised.)*

3            **THE COURT:**  All right.  If you or a close family

4    member or friend have been the victim of fraud, please raise

5    your hand.  Or if you believe -- well, let's do it one at a

6    time.  I don't know why these are together.

7            Anyone here believe that you or someone close to you

8    as been a victim of fraud?  Yes.

9            **PROSPECTIVE JUROR:**  Juror 47.  My elderly mother was

10   the victim of fraud multiple times as she got older, little

11   less sharp.  She got mail fraud.  They got her to buy things.

12   They got her account information.  They stole money from her

13   bank account.  They racked up her credit cards.  There's a lot

14   of people out there preying on either unsuspecting people or

15   preying on seniors.

16           **THE COURT:**  Thank you.

17           **PROSPECTIVE JUROR:**  Yeah, I was -- Juror Number 54.

18   I was a victim of fraud.  Back in 2018 there was an account

19   phone line opened up -- or a couple of phone lines opened up

20   in my name, and $6,000 of international calls was racked up.

21   And I got everything closed in my name, and I couldn't do

22   anything for a week.

23           **THE COURT:**  Okay.  Thank you.

24           **PROSPECTIVE JUROR:**  Juror 57.  Again, fraud victim

25   back in 2002.  Took me for about $5,000.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
 1              PROSPECTIVE JUROR:  Juror Number 60.  My father and
 2      stepmother had their accounts hacked and a bunch of money
 3      taken through their phone like two years ago.
 4              THE COURT:  Your father and stepmother?
 5              PROSPECTIVE JUROR:  Yes.
 6              THE COURT:  Okay.  And what -- did you say these are
 7      bank accounts or credit card accounts?
 8              PROSPECTIVE JUROR:  Both credit, bank, through their
 9      phone.
10              PROSPECTIVE JUROR:  Juror 63.  I was a victim of
11      fraud for $15,000.
12              THE COURT:  Thank you.
13              Anyone else?
14         (No hands raised.)
15              THE COURT:  All right.  Do you believe someone who
16      falls for a telephone, Internet, or mail scam deserves it
17      because they should have figured out it was a scam?  So raise
18      your hand if you think someone who falls for the telephone,
19      Internet, or mail scam deserves it because they should have
20      figured out it was a scam.
21         (No hands raised.)
22              THE COURT:  That's a uniform negative.
23              All right.  Cooperating witnesses can be defendants
24      in a criminal case who assist the Government in the
25      investigation and prosecution of other persons often as a term
```

1    or condition in a plea bargain.  Please raise your hand if you

2    have any concerns or bad feelings about the Government's use

3    of cooperating witnesses.

4        *(No hands raised.)*

5            **THE COURT:**  Uniform negative.

6            If anyone has a close family friend -- family or

7    friend or yourself who has been treated unfairly by a law

8    enforcement or police officer, please raise your hand.  And

9    this is not just a routine traffic ticket but something other

10   than just a traffic ticket.  If you believe you've been

11   treated unfairly or close friend or family member was treated

12   unfairly, please raise your hand.

13       *(No hands raised.)*

14           **THE COURT:**  All right.  I think we've already heard

15   those.

16           All right.  So this next part is fairly simple.  I'll

17   explain to you how it works.  Here are the questions.  It's a

18   biographical questionnaire.  I'll read out the eight

19   questions, and then show you how to answer it.

20           So the first one is state your jury number, the

21   community you live in, how long you've lived there.

22           Number 2:  Do you own or rent your current residence?

23           Number 3:  State your occupation, the name of your

24   current employer.  If you're retired, state your prior

25   employer and occupation.

1          Number 4:  State whether you are married.  And if so,

2     the current occupation and employer of your spouse.  If

3     they're retired, state their prior occupation.

4          Number 5:  If you have minor children living in your

5     home, please tell us the ages.

6          Number 6:  State your education level.

7          Number 7:  Whether you've had any prior jury service

8     in this or any other court.

9          And Number 8:  If you did have prior jury service,

10    tell us was the case criminal or civil, and without telling us

11    what the verdict is, just tell us whether the jury that you

12    served on actually reached a verdict.

13          So this is how I would answer it.  So Number 1:  You

14    know, I'm Juror Number -- Judge.  And I lived in the Summerlin

15    community.  I was been there for about ten years now.  I do

16    own my current residence.  I am a U.S. district court judge.

17    My employer is the U.S. Judiciary.  And I am married.  He is

18    retired and was formerly a district attorney.  We don't have

19    any more minor kids at home.  My highest education level was a

20    Juris Doctorate degree, so a doctor of law.  And I do have

21    prior jury service.  It was a criminal case, and we did not

22    reach a verdict.

23          All right.  So we'll start with Juror Number 1.

24          **PROSPECTIVE JUROR:**  I'm Juror Number 1.  I live in

25    Sunrise Manor.  I've lived on the East Side of Vegas my entire

1    life, 43 years.  I own my current residence.  I am a route

2    manager for SkyTop Vending.  I'm married.  My wife is a CNA

3    for a nursing home.  No minor children.  They're all adults.

4    High school graduate.  I have served on a jury before in an

5    officer-involved homicide, and we did reach a verdict.

6            **THE COURT:**  Thank you.

7            **PROSPECTIVE JUROR:**  Juror Number 3.  Lives in Naples

8    community in Henderson.  Lived there about 12, 13 years.  We

9    own.  My occupation, I work IT at MGM Resorts at Bellagio.

10   Let's see.  I'm retired military.  I'm married.  Wife doesn't

11   work.  I don't have any -- all my kids are grown-up.  I have a

12   bachelor's degree in IT.  I've never had prior jury service.

13           **THE COURT:**  Thank you.

14           **PROSPECTIVE JUROR:**  Juror Number 5.  Live in North

15   Las Vegas.  I lived there for 24 years.  I am in the

16   occupation of marketing for The Sanctuary Dispensaries.  I am

17   single.  I have no children.  Education level is some college,

18   graduated high school.  I do not have any prior jury service.

19           **THE COURT:**  Thank you.

20           **PROSPECTIVE JUROR:**  Juror 6.  I live in Paradise

21   right now.  I've been there since roughly '08, '09.  I'm

22   basically a lifelong Las Vegan.  Been here since 1969.  I have

23   lived everywhere else across the country and in different

24   countries.  I do own my home.  My occupation is a games dealer

25   for over 20 years.  I am now on SSDI.  My husband used to

1    be -- I'm sorry, Judge.  I had a car accident, and sometimes

2    my mind kind of freezes on me.

3            **THE COURT:**  All right.

4            **PROSPECTIVE JUROR:**  My husband worked for the Clark

5    County School District, and he's now retired.  Did I give you

6    my education level?

7            **THE COURT:**  Your education level.

8            **PROSPECTIVE JUROR:**  My education level is a

9    bachelor's in history.  No jury service before.

10           **THE COURT:**  Thank you.

11           **PROSPECTIVE JUROR:**  I'm Juror Number 7.  I live in

12   Green Valley.  I've been there for 26 years.  I own my home.

13   I'm retired now.  I used to work at Sands Corporation as the

14   IT change manager.  I'm not currently married.  I have no

15   minor children living with me.  I have an associate's degree.

16   I had one prior jury service.  It was a criminal case, and we

17   did reach a verdict.

18           **THE COURT:**  Thank you.

19           **PROSPECTIVE JUROR:**  Juror Number 8.  I live in the

20   Summerlin community.  I've been there for six years.  I own my

21   own home.  I own my own business.  I'm a mobile diesel

22   mechanic, and my company name is United Diesel, LLC.  I am

23   married, and my wife is a registered respiratory therapist at

24   a hospital.  I have a daughter who's 15, and my current

25   education level is a junior in college.  And I have had prior

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    jury service.  It was a criminal case, and we did reach a

2    verdict.

3            **PROSPECTIVE JUROR:**  This is Juror 9.  I currently

4    live in Sunrise Manor.  I've lived there all my life, for 22

5    years.  We currently own the place.  Recently got laid off.  I

6    used to work for Coin Cloud as a client support representative

7    and service dispatcher.  Not married.  Have no kids.

8    Education level is about two years of college, and no prior

9    jury service.

10           **THE COURT:**  Thank you.

11           **PROSPECTIVE JUROR:**  Juror Number 11.  I live in

12   Henderson.  We own our home.  I currently work for Valley

13   Health Systems.  I'm a registered nurse.  My husband's retired

14   military, now works for Henderson Electric Motors as a general

15   manager.  I have one child at home.  She's 18.  My education

16   level is a bachelor's in nursing, and then no prior jury

17   service.

18           **THE COURT:**  Thank you.

19           **PROSPECTIVE JUROR:**  Juror Number 12.  I've been

20   living in Las Vegas for --

21       *(Reporter instruction.)*

22           **PROSPECTIVE JUROR:**  Juror Number 12.  Living in the

23   City of Las Vegas for 25 years.  Currently own my home.  I

24   currently work for the City of Las Vegas as a compliance

25   inspector.  My wife is an accountant for a hospital system

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    here in the valley.  One minor child at home --

2           THE COURT:  Oh.  They can't hear you --

3        (Reporter instruction.)

4           PROSPECTIVE JUROR:  Oh.  Okay.  So one minor child at

5    home.  Education level is two years of college.  And prior

6    juror service, I was on a civil trial where we did reach a

7    verdict.

8           THE COURT:  What did you say your wife was employed

9    doing?

10          PROSPECTIVE JUROR:  For a hospital system here as an

11   accountant.

12          THE COURT:  Accountant at a hospital.  Thank you.

13          PROSPECTIVE JUROR:  Hi.  Jury [sic] Number 14.  I

14   live in Clark County for 14 years.  I do own my own house.

15   I'm retired.  I retired from MGM, Luxor I worked at.  I'm

16   married.  My husband is retired.  He used to do convention

17   work.  No children.  Educational level, 12; high school

18   graduate.

19          THE COURT:  And what did you do at MGM?

20          PROSPECTIVE JUROR:  I was a waitress.

21          THE COURT:  Waitress.  Thank you.

22          PROSPECTIVE JUROR:  Juror 15.  I live in Henderson;

23   been there for ten years.  I rent.  I am facilities at ARIA.

24   My fiancée is an ICU nurse at Centennial Hospital.  We don't

25   have any children, high school diploma, and no prior jury

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    service.

2           PROSPECTIVE JUROR:  I am Juror 16.  I live in

3    Henderson.  I've been living there for 21 years.  I live with

4    my parents.  I am a manager at Pizza Hut.  I am single.  I

5    don't have any minor children.  And then I have some college

6    and no prior jury service.

7           THE COURT:  Do you have a declared major in college?

8           PROSPECTIVE JUROR:  I dropped out of college, so --

9           THE COURT:  Okay.  What -- did you have a major

10   before --

11          PROSPECTIVE JUROR:  I was in veterinary medicine.

12          THE COURT:  Veterinary medicine.  Okay.  Thank you.

13          PROSPECTIVE JUROR:  Jury [sic] Number 17.  I reside

14   in Anthem for the last 18 years.  I do own my own home.  I'm

15   self-employed at -- from Platinum Real Estate Professionals.

16   And I have no minor children at home; however, Tuesdays and

17   Thursdays I do take care of my younger two grandchildren.  No

18   priors.  And college is an associate's in deaf studies and

19   interpreting.  No, no prior jury service.

20          PROSPECTIVE JUROR:  Juror 18.  I live in East

21   Las Vegas; been there for one year.  Own my home.  I'm a

22   bookkeeper with a firm called Bliss Your Money.  I am married.

23   My spouse is a lighting designer for Hawthorne Gardening

24   Company.  No minor children.  College graduate; associate's

25   degree, veterinary technology.  No prior jury service.

```
 1              PROSPECTIVE JUROR:  This is Jury [sic] Number 19.  I
 2    do divide my time between Henderson, Nevada, and Yorba Linda,
 3    California.  We have homes in both places.  I've had the home
 4    here for 25 years and in California for seven years.  I'm a
 5    professor of computer science at the University of Nevada
 6    Las Vegas.  My wife is a professor of computer science at
 7    Cal State Fullerton.  I have two children, ████ and ████.
 8    One is in fifth grade; the other one is in sixth grade.  She
 9    just had her play yesterday.  And then, what else?  Ph.D.
10    Anything else there?  No prior jury duty, so I'm really
11    excited about this.  What else is going on?  Okay.  Are there
12    any other questions there?
13              THE COURT:  That's all.  Thank you.
14              PROSPECTIVE JUROR:  Okay.  Thank you.
15              PROSPECTIVE JUROR:  Jury [sic] 21.  I live in
16    Henderson.  I've lived there for about a year and a half.  I
17    rent.  I work -- I -- I'm formerly trained as an operating
18    room technician, but I just recently received my certification
19    for decontamination and sterile processing.  I've never been
20    married.  I don't have any children.  I've attended some
21    college, and I have no prior jury duty service.
22              PROSPECTIVE JUROR:  I'm Juror 25.  I've lived in old
23    Henderson for 50 years.  I'm a register nurse at St. Rose
24    Siena Hospital.  My husband is a correction officer at
25    Southern Desert in Indian Springs.  I have an associate's
```

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1  degree in nursing.  I have no minor children, and I've never

2  been on jury duty.

3          **PROSPECTIVE JUROR:**  I'm -- prior -- Juror Number 26.

4  And I... I live in Sandy Valley, Nevada.  I've been there for

5  13 years.  I -- okay.  I've been in Sandy Valley, Nevada.

6  I've lived there for 13 years and -- let's see.  What's that

7  second one say?  I need it bigger.  What?  I own my home?

8  I -- I need it bigger.  I need that bigger.

9          **THE COURT:**  Nick, do you have the --

10          **PROSPECTIVE JUROR:**  Can you make the screen a little

11  bit bigger?

12          **THE COURT:**  -- copy?

13          **COURTROOM ADMINISTRATOR:**  Yes, I do.

14          **THE COURT:**  Okay.  Just a minute.  We've got a

15  laminated copy.  We can use it.

16          **PROSPECTIVE JUROR:**  All right.  I'm unmarried.  I

17  have no minor children.  I have associate's in medicine.  I do

18  not have any prior in-court service, but I've been summonsed a

19  lot.  And then prior jury duty, I've never served on a juror

20  [sic].

21          **PROSPECTIVE JUROR:**  Juror Number 27.  I live in

22  Las Vegas, been there for 65 years.  I spend half of my time

23  here, half my time in Jackson, Wyoming.  I own my own home.

24  I'm retired.  My husband is retired.  What is that next

25  question?  No minor children.  I have been on a jury before.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    We reached a verdict.  The -- oh.  High school, 12th.

2          **THE COURT:**  Was it a criminal or a civil case where

3    you reached a verdict?

4          **PROSPECTIVE JUROR:**  Civil.

5          **THE COURT:**  Civil.

6          And before you were retired, what did you do for a

7    living?

8          **PROSPECTIVE JUROR:**  Worked for a title company.

9          **THE COURT:**  And before your husband was retired, what

10   did he do?

11         **PROSPECTIVE JUROR:**  Real estate and law enforcement.

12         **THE COURT:**  Thank you.

13         **PROSPECTIVE JUROR:**  Jury [sic] 28.  I live in Clark

14   County in Las Vegas about 40 years.  I rent.  I'm a taxi

15   driver for YCS company.  No, I'm not -- I'm not retired.  I'm

16   married; she's a housewife.  No children of mine; just a

17   stepson.  Two years college degree, and no prior jury service.

18         **THE COURT:**  Thank you.

19         **PROSPECTIVE JUROR:**  Juror Number 29.  I've been in

20   Las Vegas for 53 years; own my home.  I've been in this home

21   for 34 years.  I'm retired from Boyd Gaming as a food and

22   beverage audit supervisor.  I'm married.  My husband is

23   self-employed, partially retired.  No minor children at home;

24   they're all grown.  High school graduate, minimal college, and

25   I have not had any prior jury service.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          THE COURT:  And what was your husband doing before he

2    retired?

3          PROSPECTIVE JUROR:  Well, he still owns his business.

4    He has a landscape maintenance business, and he still works

5    part time in the business.

6          THE COURT:  Thank you.

7          PROSPECTIVE JUROR:  Juror Number 30.  I live in North

8    Las Vegas over ten years now.  I've been here all my life,

9    though, in Las Vegas.  I rent an apartment ten years now.  My

10   occupation is I -- a customer service rep for a dental

11   insurance company.  And I'm single.  I have no minor children.

12   I graduated high school, and I have no prior jury service.

13   And I think that's it.

14         PROSPECTIVE JUROR:  Juror Number 31.  I've been

15   living in Henderson for about 24 years.  I rent.  I work at

16   Morley Grading as an operator.  I'm not married.  I have a

17   one-year-old, high school graduate, and no prior jury service.

18         PROSPECTIVE JUROR:  Juror 32.  I've lived in

19   Summerlin for 30 years.  We own.  I'm a Realtor.  I work for

20   Go Global Realty.  I'm not married, no children, bachelor's

21   degree, never served on jury duty.  My first time.

22         THE COURT:  What is your bachelor degree in?

23         PROSPECTIVE JUROR:  Business administration

24   management.

25         THE COURT:  Thank you.

1          **PROSPECTIVE JUROR:** Juror Number 33.  I lived in the

2     Province community for about 12 years now; own my own

3     residence.  I'm a tractor-trailer technician at XPO Logistics.

4     Not married.  Don't have kids.  Education level is a high

5     school diploma.  Didn't have any prior jury.

6          **PROSPECTIVE JUROR:** Juror 34.  Live in the Centennial

7     Hills community for over 20 years.  Own our own home.  I'm a

8     propounding sales manager for Palm Mortuaries and Cemeteries.

9     I'm married.  My husband is the general manager for an auto

10    dealership.  I have four minor children; 17, 15 -- I have to

11    think about it -- 8, and 11.  Bachelor's -- bachelor of arts

12    in interdisciplinary social science, and I have not had any

13    jury service experience.

14         **PROSPECTIVE JUROR:** Juror Number 35.  Henderson eight

15    years; own.  Also own a local brewery.  I'm not married.  No

16    kids.  High school -- high school education, and no jury

17    service.

18         **THE COURT:** I'm sorry.  How are you employed?

19         **PROSPECTIVE JUROR:** I own a local brewery.

20         **THE COURT:** Brewery.  Okay.  Thank you.

21         **PROSPECTIVE JUROR:** Juror 36.  I've lived on East

22    Side Las Vegas for 15 years; rent.  I currently work for

23    Intermountain Health as a certified medical assistant.  I'm

24    married.  My husband is a parts runner.  No minor children in

25    the house, some college, and never served on a jury.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          THE COURT:  And what did you say your husband did?  I
2     didn't catch that.
3          PROSPECTIVE JUROR:  He's a parts runner, auto parts
4     runner.
5          THE COURT:  Car parts runner?  Okay.  Thank you.
6          PROSPECTIVE JUROR:  Juror 37.  I live in the city of
7     Las Vegas.  I've been here for three years.  I own.  I'm an
8     artist for the house of NAH (phonetic), not married, no
9     children, 4 degrees.  No to seven and eight.
10         THE COURT:  What were your degrees?
11         PROSPECTIVE JUROR:  Art, advertising, acting, and
12    Egyptology.
13         THE COURT:  Art, advertising, acting --
14         PROSPECTIVE JUROR:  And Egyptology.
15         THE COURT:  Egyptology.  A-A-A-E.  Okay.  Thank you.
16         PROSPECTIVE JUROR:  I've lived in Pahrump --
17         THE COURT:  Is this Juror Number 41?  I'm trying to
18    make sure I didn't --
19         PROSPECTIVE JUROR:  Juror Number 41.
20         THE COURT:  41?  Perfect.  Thank you.
21         PROSPECTIVE JUROR:  Sorry about that.
22         I've lived in Pahrump for the last five years.  I own
23    my house.  I'm married.  My -- I -- I'm a transportation
24    manager for Core-Mark International.  My wife is medical
25    records for Pahrump Health and Rehab.  I have three children

1    at home; 17, 10, and 6.  And I have a 12th grade education and

2    no prior jury services.

3          PROSPECTIVE JUROR:  Juror Number 45.  I've lived in

4    Las Vegas for 61 years.  My husband and I own our home.  I --

5    I'm retired.  I was an office manager for an S vault company.

6    My husband is retired unfortunately.  He was -- he was a

7    contractor.  And no children; just a bunch of animals.  High

8    school diploma.  And, no, I have never served on a jury

9    before.

10          PROSPECTIVE JUROR:  Juror 47.  I live in Henderson

11   for the last 23 years.  We own.  I currently work for Empire

12   Southwest in part sales.  I am married.  She's not employed

13   outside of the house.  We have no minor children, some

14   college, no jury service.

15          PROSPECTIVE JUROR:  Juror 49.  I've lived in Aliante

16   for, like, a year now.  I rent.  And I'm self-employed.  I'm a

17   musician.  I'm single.  I have no children.  High school

18   dropout, and I have had no prior jury services.

19          PROSPECTIVE JUROR:  Juror Number 50.  I live in

20   Henderson, Nevada, for 15 years.  I am an executive director

21   for Revel Communities.  My husband is retired.  I have four

22   adult children and I have seven grandchildren, and I have --

23   two credits shy of an associate's degree.  And I have no prior

24   court jury duty.

25          PROSPECTIVE JUROR:  Juror Number 51.  I've lived in

1  the city of Las Vegas for 37 years.  We own our own home.  I'm

2  currently a registered nurse at Sunrise Hospital in the

3  newborn ICU.  My husband is a cook in a local casino.  No

4  minor children.  I have an associate's degree in science with

5  a minor in nursing.  No prior jury service.

6         **PROSPECTIVE JUROR:**  Juror 52.  I've been in the

7  Summerlin community for 12 years.  I'm renting.  I'm currently

8  employed at Wynn Encore.  I'm a security officer.  I'm not

9  married.  I have two children, ages 2 and 4.  Education level

10  is high school, and I have not had any prior jury service.

11         **PROSPECTIVE JUROR:**  Juror Number 53.  I live in the

12  Silverado Ranch community.  I am renting.  I work in the

13  marketing field but am currently not employed.  I am not

14  married.  I do have one son.  He's 15.  I have my bachelor's

15  degree in communications, and I have had no prior jury service

16  before this.

17         **PROSPECTIVE JUROR:**  Juror Number 54.  I live in the

18  Summerlin community.  We own our home.  I'm a CDL truck driver

19  for Albertson's.  I'm married.  I -- my wife does not work.

20  We have three minor children; 15, 10, 8 -- or 7, I'm sorry.  I

21  have an associate's degree in pharmacy tech.  I've had prior

22  jury service.  It was criminal, and we did reach a verdict.

23         **THE COURT:**  Okay.  What was your AA degree in?

24         **PROSPECTIVE JUROR:**  Pharmacy.

25         **THE COURT:**  Pharmacy?

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
1              PROSPECTIVE JUROR:  Um-hum.

2          THE COURT:  Okay.  And the case that you were a juror

3     in before was criminal or civil?

4              PROSPECTIVE JUROR:  Yeah, criminal.

5          THE COURT:  Criminal.  Thank you.

6              PROSPECTIVE JUROR:  I'm Juror Number 56.  I've lived

7     in the North Las Vegas area for 53 years.  I own a home.  I

8     will be going unemployed.  My last employer was the Moapa

9     Valley Paiutes childcare as a supervisor.  I'm not married,

10    and I have no minor children at home.  They're all grown.  I

11    have an -- I have an AA with education.  I have no jury

12    service prior.  Yeah.

13             PROSPECTIVE JUROR:  Number 57.  I live in Las Vegas;

14    have for 33 years.  I own the place.  I'm retired.  I was an

15    electrician out at the Nevada Test Site for over 20 years.  I

16    am married.  She's retired.  She's been a housewife.  No

17    children at home.  Education is an AA.  No prior jury.

18             THE COURT:  Thank you.

19             PROSPECTIVE JUROR:  I'm Juror Number 58.  I lived

20    here in Vegas for ten years.  I own my own home.  I work --

21    I'm a MA, medical assistant, at an ENT doctor's office.  I am

22    married.  He's a general manager for Pizza Hut.  I have two

23    young kids, 5 and 8.  My highest level of education is

24    associate's degree in medical assistant, and I haven't had

25    jury duty before.
```

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          PROSPECTIVE JUROR:  I'm Jury [sic] Number 59.  I live

2     in Las Vegas for 11 years.  I rent my -- I'm renting.  I live

3     in a renting apartment.  My occupation is as an accountant,

4     but I work in the sales industry for -- instead.  And I work

5     in the real estate industry as a salesperson.  And currently

6     right now I am working as a taxi driver.  I am single and have

7     no children at this point in time -- no minor children -- no

8     minor children living with me.  My education is a high school

9     education.  I have no prior jury service before.  I -- if you

10    have...

11          THE COURT:  That's it.

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Thank you very much.

14          PROSPECTIVE JUROR:  I'm Juror Number 60.  I've been

15    in Las Vegas for nine years in the Anthem Highlands community.

16    I own my home for the last year.  I am currently a pool and

17    landscape designer for Poolscapes here in town.  I am married.

18    My wife works for Intermountain Healthcare as a telehealth

19    communications specialist.  We have two small children, 11 and

20    13.  I have an associate's degree in computer-aided drafting

21    and architectural design, and I've never done jury duty

22    before.

23          THE COURT:  Thank you.

24          PROSPECTIVE JUROR:  I'm Juror Number 61.  I've lived

25    in Northwest Las Vegas most recently since 2017.  I own my

1    home along with my wife.  I am a certified public accountant.

2    I'm also currently employed by Mohegan Casino Las Vegas.  I

3    mentioned that I'm married.  My spouse is a retired certified

4    public accountant and a homemaker.  No minor children

5    currently living at home.  My education level is a bachelor's

6    degree in commerce with an emphasis in accounting.  I've had

7    prior jury duty on a criminal case.  We did not reach a

8    verdict.

9           **PROSPECTIVE JUROR:**  Juror 62.  I live -- I've lived

10   in Las Vegas for eight years, Mountain's Edge.  I own my own

11   home.  I am single currently.  I am a sixth grade math teacher

12   for Clark County SLAM Academy is the name of the school.

13   Let's see.  I'm single, as a said.  I have a bachelor's degree

14   in psychology and education, and I've never been on a jury

15   before.

16          **PROSPECTIVE JUROR:**  Juror 63.  I live in Summerlin.

17   I own my own -- I own my own home.  I had my own business.

18   I'm a business owner -- current business -- I mean a retired

19   business owner.  I am a widow.  I have no children.  I have

20   two years of college, and I've never served in jury before.

21          **PROSPECTIVE JUROR:**  I'm Juror Number 65.  I currently

22   live in Green Valley in Henderson, and I've lived there for 17

23   years.  I grew up here in Las Vegas, and I was educated here

24   as well.  I own my own home, and my current occupation is with

25   the Clark County School District.  I'm a help desk analyst for

1    software and computer, and I've been with CCSD for 25 years.

2    And I am single, and I do own my own home -- oh.  I already

3    said that.  I'm sorry.  I have no minor children.  And I've

4    two years of college here at UNLV, and I have no prior jury

5    service experience.

6            **PROSPECTIVE JUROR:**  Juror Number 66.  I live in

7    Summerlin.  I lived with family since 2017.  I'm an Uber

8    driver.  I'm not married.  No minor children.  High school

9    diploma.  No jury service.

10           **PROSPECTIVE JUROR:**  I'm Juror Number 67.  I've lived

11   in Las Vegas for the last 11 years.  I have rented my home in

12   north-ish Summerlin for the last three years.  I am a high

13   school teacher and K-12 curriculum coach for Odyssey Charter

14   Schools here in Las Vegas.  I am divorced.  I have no minor

15   children.  My highest education level is a master's degree,

16   and I've had no prior jury service in the past.

17           **PROSPECTIVE JUROR:**  I am Juror Number 68.  I've lived

18   in Las Vegas for 23 years.  I rent.  I work at the Palms

19   Casino Resort as a food server inside of a restaurant.  No, I

20   am single.  I do not have children.  I currently have a high

21   school diploma, currently studying for an associate degree to

22   move on for a four-year degree bachelor's.  No, I do not have

23   jury duty experience.

24           **THE COURT:**  Do you have a declared major?

25           **PROSPECTIVE JUROR:**  For my four-year degree will be

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    American Sign Language, yes.

2            **PROSPECTIVE JUROR:**  Juror Number 69.  I currently

3    own.  Occupation, I work at Embassy (phonetic) Technologies as

4    their software sales.  And married.  No minor children at

5    home.  High school graduate.  No prior jury service.  I think

6    that's it.

7            **THE COURT:**  Is your wife employed?

8            **PROSPECTIVE JUROR:**  Oh.  Yes.  She is a -- commercial

9    real estate accounting.

10           **PROSPECTIVE JUROR:**  Juror Number 70.  I currently

11   live in East Las Vegas.  I'm currently renting as well.  My

12   current occupation, I'm an executive trainer for a third-party

13   call center.  I'm not married.  I have no minor children

14   staying at home, and I have a high school diploma with some

15   college.  And I have no prior jury service experience.

16           **THE COURT:**  Did you say you were an executive trainer

17   for a call center?

18           **PROSPECTIVE JUROR:**  Correct, for a third-party call

19   center.  Correct.

20           **THE COURT:**  Thank you.

21           **PROSPECTIVE JUROR:**  Juror 71.  Live in Highlands

22   Ranch area.  We own our house.  I'm an aircraft mechanic with

23   Denmar Tech.  I am married.  My wife previously worked for

24   CCSD as a teacher.  She doesn't work anymore.  I have a

25   16-year-old son, a bachelor of arts degree in multimedia video

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
 1   game design, and first time doing jury service.
 2              PROSPECTIVE JUROR:  Juror 72.  I've lived in
 3   Las Vegas for 26 years --
 4        (Reporter instruction.)
 5              THE COURT:  Can you hold the microphone a little
 6   closer, please?
 7              PROSPECTIVE JUROR:  Is this better?
 8              Okay.  Juror 72.  I've lived in Las Vegas --
 9              THE COURT:  Little closer.  I can't hear you still.
10   Sorry.
11              PROSPECTIVE JUROR:  Oh.  I didn't know I was a rock
12   star.
13              I've lived in Las Vegas for 26 years.  I own.  My
14   employer is HDA.  I'm a staff nurse.  I am single.  No minor
15   children.  Education level is associate's degree.  I have sat
16   on one jury before, and we reached a verdict, criminal.
17              PROSPECTIVE JUROR:  Juror 74.  I live in East
18   Las Vegas, Whitney.  We own our home.  I am -- do 1099 work
19   for local companies for the conferences and conventions here
20   in Las Vegas.  I am married.  My husband is a 26-year veteran
21   of the United States Air Force as air battle manager.  He
22   currently works on base as a contractor for AF (phonetic) Tech
23   as an air battle manager analyst, and he does 1099 work as a
24   super car instructor.  We have no human minor children living
25   with us.  I am -- my education level is a bachelor's in human
```

1    development with a minor in child development.  And I have

2    never had any jury service.

3            **PROSPECTIVE JUROR:**  Juror Number 75.  I've lived in

4    southwest area for the past 20 years.  I live with my parents

5    right now.  I am a hostess at Blue Ribbon Sushi at Red Rock

6    Casino.  I am single and -- with no kids.  I am currently

7    going for my bachelor's, but I am taking a gap semester right

8    now.  And I've had no prior jury service.

9            **THE COURT:**  I'm sorry.  Did you have a declared

10    major?

11            **PROSPECTIVE JUROR:**  Dental hygiene.

12            **PROSPECTIVE JUROR:**  Juror Number 76.  I've been

13    living in North Las Vegas for 34 years.  I rent.  I'm working

14    at the Clark County School District in transportation.  I am

15    married.  She works for Clark County School District also.  I

16    have two minor children, 17 and 6.  High school level

17    education.  No jury service.

18            **THE COURT:**  And how are you doing with your anxiety

19    level?  Is it getting better or worse or the same?

20            **PROSPECTIVE JUROR:**  I'm -- I'm okay.

21            **THE COURT:**  Okay.  Thank you.

22            All right.  Next please raise your hand if you have

23    any religious or philosophical beliefs that prevent you from

24    rendering judgment on another human being in a criminal case.

25        *(No hands raised.)*

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

 1          **THE COURT:**  No.  Okay.  No hands up.  So that's a
 2   uniform no.
 3          Next, tell me if you have any limitation -- and we
 4   can do a sidebar -- either as a result of your upbringing or a
 5   specific incident in your life that makes it difficult for you
 6   to treat fairly and impartially other people of a different
 7   race or different culture or different religion, I'll even say
 8   a different gender, than yourself.
 9          We had a woman once who raised her hand and said, I'm
10   going through a divorce right, and I hate all men and just
11   can't be fair.  She was just being honest.  She's like, I just
12   really hate men right now.
13          So for any reason, whether it's your upbringing or
14   just some incident that happened, if there's anything that --
15   you know, you know yourself best.  If you know you can't be
16   fair and impartial right now because of any particular reason,
17   please let us know and, like I said, we can do a sidebar.
18      *(No hands raised.)*
19          **THE COURT:**  All right.  That's a uniform no.
20          Now that you have all heard from each other -- every
21   single person in the room had to speak when we did the
22   questionnaire.  Now that you've heard from each other, is
23   there any juror here who realizes that you recognize another
24   juror in the room?  Please raise your hand if you know any of
25   the other jurors in the room.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          There we go.  There's always one.  This is why we ask
2     the question.  Every single time there's someone.
3          All right.  What was your number again?
4          PROSPECTIVE JUROR:  Juror 32.
5          THE COURT:  32.
6          PROSPECTIVE JUROR:  I know juror -- I don't know her
7     number in the -- Juror 17, we used to work at the same
8     company.
9          THE COURT:  Okay.  Juror 17, did you recognize Juror
10    32?
11         PROSPECTIVE JUROR:  Yes.
12         THE COURT:  Yes.
13         Okay.  So how long ago did you work at the same
14    company?
15      (Reporter instruction.)
16         THE COURT:  Wait.  Did you -- so Number 17, did you
17    recognize 32?
18         PROSPECTIVE JUROR:  I did recognize him.
19         THE COURT:  Okay.  How long did you work at the same
20    company?
21         PROSPECTIVE JUROR:  You know what?  I've -- since
22    before COVID, my office has been at my home.  So I haven't
23    gone into the office since prior to COVID.  So it would have
24    been sometime before then.
25         THE COURT:  Okay.  And are you still working at the

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

```
 1    same company or different?
 2              PROSPECTIVE JUROR:  I am at Platinum.  I'm not sure.
 3              PROSPECTIVE JUROR:  I'm not.
 4              THE COURT:  Okay.  So Number 32 is no longer at
 5    Platinum, but Number 17 still is.
 6              So at the time that you were both working together
 7    at -- I gather the place is called Platinum, was one of you
 8    the boss of the other?
 9              PROSPECTIVE JUROR:  No.
10              THE COURT:  Okay.  So you were equals or at least --
11              PROSPECTIVE JUROR:  Correct.
12              THE COURT:  -- different departments?
13              Okay.  So if you ended up on the same jury together,
14    would it be awkward in any way if you disagree with each
15    other?  Would you be able to discuss that civilly?
16              PROSPECTIVE JUROR:  Not to me, no.  He might have a
17    different answer.
18              THE COURT:  How about you, Juror Number 32, any --
19    any concerns with --
20         (Simultaneous crosstalk.)
21              PROSPECTIVE JUROR:  No, no concerns.
22              THE COURT:  -- with Number 17?
23              PROSPECTIVE JUROR:  No, no concerns.
24              THE COURT:  Okay.  Thank you.
25              Anyone else recognize another jury?
```

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
 1       (No hands raised.)

 2           THE COURT:  All right.  We're getting towards the end

 3   now.  We've got -- we're going to be doing follow-up questions

 4   by the attorneys, but I'm going to do a bathroom break first.

 5           So I remind you, during the bathroom break, you are

 6   not to speak to other jurors about the case.  You're not to

 7   speak to anyone about the case, and that includes no blogging

 8   or e-mailing.  If you've got someone at home or at work that

 9   you need to contact, let them know, yes, I'm still here, no,

10   they haven't kicked me off, you can go ahead and do that, but

11   don't start talking to them about the case at all.  Don't

12   speak to the attorneys or any staff people or anyone else that

13   you see in the hallways.  Just go to the bathroom and come

14   back.  Don't try to blog or Google anything about what is mail

15   fraud or the people's names in the case or anything like that.

16   Please, I'm treating you as adults, not taking away your

17   phones.  You know, I'm trusting you to only use it for

18   emergency purposes, keeping track of work or kids or anything

19   like that, parents.

20           So go ahead and -- let's take our bathroom break.

21   It's 2:20.  So by 2:40 you think?  There's less of us, so I

22   think it would be easier to get everybody back.  So we'll plan

23   to be back here for 2:40.  Let's stand for the jury so they

24   can take their break first.

25           Did you want to speak at sidebar?  All right.  So
```

1   that's, 1, 2, 3, 4, 5.  So I need Juror Number 5 and counsel

2   at sidebar, please.  Oh.  You just have a question.

3        *(Pause in proceedings.)*

4           **THE COURT:**  All right.  So we're not at sidebar.  We

5   decided to do this in court.  So Juror Number 5, what was your

6   question?

7           **PROSPECTIVE JUROR:**  It was just about the note for --

8   to send to the employment.

9           **THE COURT:**  Yes.

10          **COURTROOM ADMINISTRATOR:**  I can give him the note,

11  but I don't know if he's going to be selected or not.  I don't

12  know if he needs it for today.

13          **PROSPECTIVE JUROR:**  That's what I was wondering.

14          **THE COURT:**  Right.  We don't know if you're selected

15  yet or not.  We're not there yet.  But if you are selected, I

16  will give you a note before you leave today.

17          **PROSPECTIVE JUROR:**  Would that be today when we get

18  the selection, at the end of the --

19          **THE COURT:**  I think that we will get to the end of

20  the selection today.

21          **PROSPECTIVE JUROR:**  Okay.  Thank you.

22          **THE COURT:**  Okay.  I still need to have a sidebar

23  with counsel though.

24       *(At sidebar on the record.)*

25          **THE COURT:**  I'm going to give you a list of people

 1    that I think we should think about, and then you can tell me

 2    when we come back what you think about them.

 3          All right.  So we still have I think about -- if

 4    I'm -- my number's right, about 13 more that we could excuse

 5    if we want to.  We don't have to but just so you have in mind.

 6          I'm looking at Juror Number 8 has a small business.

 7    He's the only mechanic, and he's also a -- starting school

 8    April 1st full time and he had asked to be excused.  So think

 9    about him.

10          Number 11 is the one who is a supervisor at a nursing

11    hospital.  She does get paid by the hospital, but she's

12    concerned what her absence -- the effect that her absence

13    would make on everybody else.

14          Number 17 is self-employed as a Realtor and has a

15    closing on March 27th and April 4th and also some other

16    closing that's out of the district or out of the county where

17    she needs to be there in person.

18          Number 26 has two clients.  She thinks she can

19    reschedule, but she feels that she is biased against the

20    defendants because of the crime, and she feels that she has

21    been a victim of mail fraud before.  She had bad checks over

22    $100,000 she was a victim of.  It's a lot.  There's a lot that

23    I wrote for her down.

24          Okay.  Number 30 is -- let's see.  Her employer does

25    not pay for that long.  So does pay for a short jury but not a

1    long one.  And she also has a mom that she's responsible for

2    that needs help.

3         Number 31, he is the only worker in his family.  He

4    works four 10s.  He has a girlfriend and a baby.  She doesn't

5    work.  So he's the sole provider for the family.

6         Number 34 has kids that get out of school at either

7    2:30 or 3:30 depending on the day of the week.  And she's

8    supposed to pick them up, and she doesn't think she has a ride

9    for them.

10        Next is Number 50.  Recognizes Mr. Mishler.  That's

11   all -- oh no.  Executive director of a senior living center

12   where she's on call 24/7 and responsible for 140 seniors.

13        Number 56 is the sole caretaker for an 84-year-old

14   mom.  She needs to help her with pills, and also she can't

15   cook for herself.  Her dad passed away recently.  It's been

16   difficult, and she also needs to take her mom to doctor's

17   appointments.  They live in the same home.

18        Number 65 has a caregiver but the caregiver is

19   leaving April 14th through the 21st.  So she would be missing

20   three days of trial.  And also has an employment at 11:00 a.m.

21   on March 24th to get a crown.

22        And then Number 76 is the anxiety, but he said his

23   anxiety is fine.

24        So these are ones that I sort of thought were on a

25   lower scale of hardship than the ones that we already excused.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    But nonetheless, you don't want a whole lot of them because

2    they're not going to be able to -- I mean, we would miss so

3    many court days.  On some of them I think we have to excuse

4    them.  So those are the ones I think that I... oh.  Did I

5    mention Number 15 works graveyard at the ARIA?  So he would

6    have to begin work on Thursday at 11:00 p.m. after he gets off

7    with us.  Again, that's kind of...

8            so those are just for you-all to think about.  I'm

9    not making a decision now, but during the break and after you

10   ask your follow-up questions so that, if you don't want to

11   waste time on someone that you-all agree should be excused,

12   then you don't have to follow-up question with them.  But if

13   you want to follow-up question with them and make sure that

14   they really do have a hardship, that's also --

15           **MR. GAFFNEY:**  And Judge, were you saying that you

16   believe we could potentially excuse 13 for cause and still

17   have a panel where we could all use our peremptories?

18           **THE COURT:**  That's what Nick is telling me.

19           **MR. GAFFNEY:**  Okay.

20           **THE COURT:**  So I was trying to be careful with the

21   ones that I excused earlier, and I didn't excuse these.  But,

22   you know, if we need to excuse them, then we should consider

23   them.  But I want you-all to have the time to think about it.

24           **MR. MISHLER:**  I just would ask on Juror 50 if the

25   Government or any of the other attorneys wanted to inquire

1    about their -- her relationship with me, if we could do that

2    at sidebar?  I don't think poker is a problem, but some jurors

3    might so --

4            THE COURT:  Okay.  And do you -- do you recognize

5    her?

6            MR. MISHLER:  I recognized her immediately, yeah.

7            THE COURT:  Oh, yeah.  Okay.  Do you see -- well, let

8    me ask you.  Do you see her frequently?

9            MR. MISHLER:  I saw her Saturday.

10           THE COURT:  Oh, okay.  So it's recently more than

11   frequently?

12           MR. MISHLER:  Yeah.  I mean, I recognize, but I

13   don't -- I didn't know her name.

14           MR. ERICSSON:  Did she take your money?

15           MR. MISHLER:  I mean, she didn't knock --

16           THE COURT:  Did you take --

17           MR. MISHLER:  -- me out --

18           THE COURT:  -- her money --

19           MR. MISHLER:  -- the tournament, and I didn't knock

20   her out.  She outlasted me.  So I don't feel anything one way

21   or the other.

22           MR. TOMSHECK:  Did you tell her any jokes?

23           MR. MISHLER:  I tell everybody jokes.

24           THE COURT:  Is that going to prejudice your client?

25           MR. MISHLER:  So I -- I just don't want other juror

1    members who might have a bias against gambling or something

2    like that to infer something about my client based on that,

3    so...

4         **THE COURT:**  Okay.  All right.  All right.  So we'll

5    see you after bathroom break.

6         *(End of discussion at sidebar.)*

7         *(Recess at 2:31 p.m., until 2:39 p.m.)*

8         **THE COURT:**  Thank you.  You may be seated.

9         All right.  We're propping the doors up because it's

10   really cold back there, see if we can get an air flow going.

11        So hopefully everybody's back from the bathroom

12   break.  Please raise your hand if you think someone sitting

13   next to you has not returned that was here before the break.

14        *(No hands raised.)*

15        **THE COURT:**  All right.  I don't see any hands.

16        All right.  So we're going to start now with the

17   attorneys' follow-up questions starting with the Government.

18        **MR. TANASI:**  Your Honor?

19        **THE COURT:**  I'm sorry.  Did you have a question?

20        **MR. TANASI:**  Briefly if we could just have sidebar

21   again?

22        **THE COURT:**  Sure.

23        **MR. TANASI:**  Thank you.

24        *(At sidebar on the record.)*

25        **THE COURT:**  Did you-all agree to excuse some jurors

1    so you don't have to ask some questions?

2           MR. TANASI:  So we do have some consensus, Your

3    Honor.

4           THE COURT:  Okay.

5           MR. TANASI:  I didn't admittedly have a chance to

6    make sure we have a consensus across the board, but I figured

7    we could hopefully try to do that right now.

8           MR. FINLEY:  Okay.  I thought you meant all of them.

9    You didn't?

10          MR. TANASI:  Well, I can represent that -- Rich

11   Tanasi for Mario Castro.  So we're okay with all of the

12   Court's proposed jurors that you referenced earlier --

13          THE COURT:  Oh, I didn't mean -- I didn't mean to

14   excuse all of them.  I just said those are the ones that I

15   have left that have a hardship that I did not excuse that --

16   expressing their hardship or a bias but that I had not yet

17   excused.  So I -- do we -- is that too many?  Let's see.

18   One... nine.  So I think I have nine.  Let's make sure we have

19   the same ones.  So is it Number 8?

20          MR. TANASI:  I have Number 8, yes.

21          THE COURT:  Number 11?

22          MR. TANASI:  Number 11.

23          THE COURT:  Number 17?

24          MR. TANASI:  I had 15 --

25          THE COURT:  Oh.  15.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
1          MR. TANASI:  -- and then 17.

2          THE COURT:  Fifteen and 17.  Okay.

3     Okay.  Number 26?

4          MR. TANASI:  Yes, ma'am.

5          THE COURT:  Number 30?

6          MR. TANASI:  Correct.

7          THE COURT:  Thirty-one?

8          MR. TANASI:  Correct.

9          THE COURT:  And did I say 34 or not?

10         MR. TANASI:  You did.

11         MR. FINLEY:  34, yes, Judge.

12         THE COURT:  Okay.  So now that's 11.

13         MR. GREEN:  I'm sorry.  What number was that,

14    Your Honor?

15         THE COURT:  Thirty-four.

16         MR. GREEN:  Thirty-four.  Check.

17         THE COURT:  And Number 50.

18         MR. TANASI:  Correct.

19         MR. GREEN:  Check.

20         THE COURT:  Fifty-six?

21         MR. GREEN:  Check.

22         MR. TANASI:  Yes.

23         THE COURT:  And 65.

24         MR. TANASI:  Yes.

25         THE COURT:  Okay.  So that's 11.
```

1    **MR. GREEN:**  You mentioned 76, Your Honor.

2    **MR. TANASI:**  And also 76 was the --

3    **THE COURT:**  Oh.  Okay.  And 76 would make it 12.  I

4  think that only leaves us with one extra.  So I'm not sure.

5  Do you really want to excuse all of them?  Let's see.

6    Seventy-six said his anxiety was fine.  So I'm not

7  going to excuse 76 yet unless he tells us something else.  You

8  can ask him questions about that.

9    Sixty-five is... yes.  Fifty-nine I just had down as

10  a question because he said he can't see properly out of his

11  left eye.  He's going to see the doctor tomorrow.  He doesn't

12  have an appointment.  It's a walk-in.  He does have a court

13  date April 19th for a ticket.

14    **MR. TANASI:**  So I didn't have 59 in that list, but --

15    **THE COURT:**  Yeah, me neither.  I just -- that's -- he

16  might end up being a problem if he is on the jury, but...

17    **MR. TANASI:**  Gotcha.

18    **THE COURT:**  I don't see that we have to excuse

19  Number 50.  But if you want to, that's fine.

20    **MR. TANASI:**  So, Your Honor, I have no problem with

21  continuing to move forward.  I guess I misunderstood the

22  Court's --

23    **THE COURT:**  No, no.  I appreciate that, if you come

24  to a consensus.  I just think we're running right into the...

25  let's see.  Okay.  I'll excuse all of them except for 50 and

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1   76, and then if you still want me to reconsider 50 and 76

2   after you're done with questioning, then I will.  But I think

3   there might be some people who have a bias that you might

4   elicit that we have to get rid of, and then we'll have gotten

5   rid of someone who really didn't have a bias, just happens to

6   recognize Mr. Mishler.

7           **MR. TANASI:**  Okay.

8           **THE COURT:**  So I'm not -- I'm not -- I'll excuse

9   everyone except for 76 and 50, if that's what everyone wants.

10          Does anybody want me to keep some of the other ones

11  that we talked about?

12          **MR. GAFFNEY:**  Lucas Gaffney on behalf of Miguel

13  Castro.  I'm fine with all of the jurors that you discussed.

14  I always am concerned when somebody has childcare issues or

15  issues caring for an elderly parent and their mind is not

16  really here.  It's a long trial, so I think it makes sense.

17          **MR. GREEN:**  Donald Green on behalf of Salvador

18  Castro.  We join in the comments of Mr. Tanasi and

19  Mr. Gaffney.  Thank you.

20          **THE COURT:**  All right.  I haven't heard from

21  Mr. Brown or Mr. Mishler.

22          **MR. BROWN:**  Mr. Tanasi and I spoke before the bench

23  conference I think about what's being discussed now.

24          **MR. TANASI:**  That's correct.

25          **MR. BROWN:**  So his comments reflect mine as well.

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
 1           THE COURT:  Okay.

 2           MR. BROWN:  Thank you.

 3           THE COURT:  And what's the Government's position?

 4           MR. FINLEY:  No objection to excusing those jurors,

 5    Your Honor.

 6           THE COURT:  Okay.  So just again for the record, I'm

 7    excusing 8, 11, 15, 17, 26, 30, 31, 34, 56, 65.

 8           I think there's one more here I don't want -- let's

 9    see.  The gentleman who starts at 11:00 on Thursdays.  I don't

10    think we need to excuse him yet.  Where's that?

11           MS. CHANG:  Number 15, Your Honor.

12           THE COURT:  What was the number?

13           MS. CHANG:  Number 15.

14           THE COURT:  Fifteen.

15           MR. FINLEY:  I think you excused him.

16           THE COURT:  No.  50 is the woman who recognizes

17    Mr. Mishler.  Yeah, I'm not going to --

18           MS. CHANG:  Fifteen.

19           THE COURT:  Oh.  15.  You're absolutely right.  Yes,

20    I'm not going to excuse Number 15 yet because he goes to work

21    at 11:00 p.m. on Thursday, and we will be done at 4:00 p.m. on

22    Thursday.  So I think that would be fine.

23           MR. FINLEY:  Okay.  So 15 is still there.

24           THE COURT:  Yeah.  Okay.  Thank you.

25        (End of discussion at sidebar.)
```

1          **THE COURT:**  All right.  We have a few more jurors

2     that we've agreed to excuse.  So when I say your number, you

3     can go ahead take off your lanyard, leave it on your seat, and

4     make sure that you look around you underneath if there's

5     anything that you might have set down so that you don't forget

6     it.  You don't need to go back to the court administration.

7     This would complete your jury service.  So you shouldn't be

8     called again for two years.

9          So first the Court would like to thank and excuse

10    Juror Number 8.  Thank you for coming in today.  You are

11    excused.  We're also going to thank and excuse Juror

12    Number 11.  And Juror Number 17.  And we thank and excuse

13    Juror Number 26 and Juror Number 30 and Juror Number 31.  And

14    Juror Number 56, thank you.  You are excused.  And Juror

15    Number 65, thank you for your service today.  You are excused.

16          I didn't excuse Number 34 because I'm still not clear

17    on whether the kids have a ride or not after school.  Some of

18    the kids get out at -- or the kids get out either at 2:30 or

19    3:30 depending on the week, and Juror 34 was going to check to

20    see if there was somebody else who could pick them up or not.

21    And so I never heard back.  So I think maybe we should address

22    that now.

23          John, if you could bring the microphone to Juror

24    Number 34?

25          So during lunch or during the break, were you able to

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
1    find out if there's somebody who can help you out with --
2              PROSPECTIVE JUROR:  It's too long of a --
3              THE COURT:  -- jury duty and picking up kids?
4              PROSPECTIVE JUROR:  It's too long of a time frame and
5    it was too short of a time frame for me to get a commitment.
6    And it's not a consistent time for me to say, hey, can you
7    doing it every Thursday, you know?  So I couldn't get a
8    commitment.
9              THE COURT:  So is it just on Thursdays that you --
10             PROSPECTIVE JUROR:  No.  I was just giving an
11   example.
12             THE COURT:  Oh.
13             PROSPECTIVE JUROR:  I didn't have a set time that I
14   would need it because --
15             THE COURT:  Okay.  So you still have that hardship.
16   Do you -- do you want some more time to try to resolve it, or
17   do you want to be excused?
18             PROSPECTIVE JUROR:  If I could be excused, that would
19   be great.
20             THE COURT:  Okay.  All right.  Juror Number 34.
21   Thank you for coming in today.
22             PROSPECTIVE JUROR:  Thank you.
23             THE COURT:  You are excused, and this does conclude
24   your jury service.
25             All right.  So now we're going to have follow-up
```

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    questions by the Government first.  They have 20 minutes.

2    They can reserve -- they can use all of it or they can use

3    some of it and reserve the rest.  And then each of the

4    defendants have 15 minutes, ten would be better, but 15

5    minutes.  And we'll go in whatever order the defense wants to

6    go.

7            So, Mr. Finley, you have 20 minutes, sir.  Do you

8    want to reserve some, or do you want to use all of it now?

9            **MR. FINLEY:**  I don't think I'm going to use anywhere

10   near 20 minutes.

11           **THE COURT:**  Okay.

12           **MR. FINLEY:**  Should I stand at the podium then?

13           **THE COURT:**  Wherever is more comfortable for you.  I

14   know you've got a lot to write on, so whatever's more

15   comfortable for you.

16           **MR. FINLEY:**  Hopefully everyone can hear me.  Can you

17   hear me all?  So I had a question for Juror Number 62.  Hello,

18   sir.  You mentioned that your stepfather had been involved

19   in -- in two cases where the Government prosecuted him for a

20   fraud offense?

21           **PROSPECTIVE JUROR:**  Yes.

22           **MR. FINLEY:**  And was that the Federal Government?

23           **PROSPECTIVE JUROR:**  Yes.

24           **MR. FINLEY:**  Where was that?

25           **PROSPECTIVE JUROR:**  Los Angeles.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          MR. FINLEY:  How long ago did that happen?

2          PROSPECTIVE JUROR:  The first case was about -- I was

3     a minor.  Maybe 25 years ago?  And there was a secondary case

4     which was about ten years ago.

5          MR. FINLEY:  Okay.  And the first one resulted in a

6     conviction; is that right?

7          PROSPECTIVE JUROR:  Correct.

8          MR. FINLEY:  And the second one resulted in what?

9          PROSPECTIVE JUROR:  In innocence.

10         MR. FINLEY:  Okay.  Like an acquittal?

11         PROSPECTIVE JUROR:  Correct.

12         MR. FINLEY:  Okay.  Did those experiences have an

13    impact on you in terms of how you view the Government?

14         PROSPECTIVE JUROR:  Yes and no.  I mean, it's my

15    family, so of course you're going to have, you know, bias

16    towards that.  And, you know, it's your family.  So of course

17    you're going to have that loyalty to them.  At the same way, I

18    understand the process that goes -- both my parents are

19    attorneys, so I understand the process.  It was just maybe

20    because I was at such a formidable age, it was tough for me,

21    and I still do carrying and harbor a little bit.  But I can

22    understand why there was a conviction.

23         MR. FINLEY:  Okay.  Did you believe that the result

24    in both those cases was the right result or not?

25         PROSPECTIVE JUROR:  Yes and no.  I think it should

1    have -- like the first case should have been less punishment,

2    and the second one I do believe was -- he was proven innocent,

3    so...

4            **MR. FINLEY:**  And would it be hard for you not to

5    think about those experiences as you -- if you sat on the

6    jury?

7            **PROSPECTIVE JUROR:**  No.

8            **MR. FINLEY:**  Thank you.

9            Juror Number 32.  You had mentioned that you knew

10   somebody who had been prosecuted; is that right?

11           **PROSPECTIVE JUROR:**  Yes.  My friend's father.

12           **MR. FINLEY:**  Your friend's father.  Can you tell us

13   what he was prosecuted for?

14           **PROSPECTIVE JUROR:**  The details are a bit foggy.  I

15   believe it was mail fraud, dishonorable, like, use of

16   customers' money, misleading -- I don't know the details.  The

17   case was a long time ago, but I know that it was from my

18   understanding mishandled improperly.  And then it was through

19   then-President Trump pardoning, the Innocence project, I'm not

20   entirely sure.  But I know it was very hard on my friend to

21   have his father locked up for 17 years or so for something

22   that essentially was -- who knows if it was actually handled

23   properly.

24           **MR. FINLEY:**  Do you have an opinion about the case?

25           **PROSPECTIVE JUROR:**  From -- I only know of it from my

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    friend's perspective and his standpoint, and I definitely

2    think it was handled improperly by the -- the Federal

3    Government, I suppose that's who handed down the sentence,

4    so...

5         MR. FINLEY:  And did that have any affect on your

6    views of the Federal Government?

7         PROSPECTIVE JUROR:  In that perspective, I believe,

8    yes.  I think it was -- you know, they should have done a

9    better job.

10        MR. FINLEY:  And how would that affect you serving on

11   the jury here?  Would it be difficult for you to set aside

12   those feelings?

13        PROSPECTIVE JUROR:  Possibly.  I know it was really,

14   really hard on him and his whole family.  And then, you know,

15   to have it come to a president to have to do it, regardless of

16   how the -- everyone felt about it, it was -- it was hard.

17        MR. FINLEY:  Thank you.

18        No further questions, Your Honor.

19        THE COURT:  All right.  Thank you.

20        Mr. Tanasi, would you like to go first, sir?

21        MR. TANASI:  Yes, Your Honor.  Thank you.  If I may

22   just have a brief moment to fight with the lectern.

23        It's winning.  Okay.

24        Good afternoon, everyone.  My name's Rich Tanasi, and

25   I have the pleasure, along with Josh Tomsheck, of representing

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    Mario Castro.  It's been a long day, and I appreciate

2    everyone's patience thus far.  And I can tell you Mario does

3    as well.

4         Nobody likes being on the spot here.  Nobody likes

5    answering questions, and unfortunately I have a few more

6    questions.  The goal here is to try to get fair and impartial

7    jurors, and so I hope you can understand that.

8         Sir, if we could please pass the mic to Juror Number

9    16.  Right out of the gates, I apologize.  I'm picking on you.

10        **PROSPECTIVE JUROR:**  You're good.  Don't worry.

11        **MR. TANASI:**  All right.  So I'm only picking on you

12   because I don't know a whole lot about you.

13        **PROSPECTIVE JUROR:**  Okay.

14        **MR. TANASI:**  All right?  And so all that I sort of

15   have listed is that you are a manager at Pizza Hut; correct?

16        **PROSPECTIVE JUROR:**  Um-hum.

17        **MR. TANASI:**  All right.  So that's a management role.

18   You have folks that work for you and folks that come to you

19   with problems, fair to say?

20        **PROSPECTIVE JUROR:**  Yeah.

21        **MR. TANASI:**  All right.  So when they come to you

22   with problems, do you carefully listen to what it is they have

23   to tell you?

24        **PROSPECTIVE JUROR:**  Yeah.

25        **MR. TANASI:**  All right.  And say you have two

1    employees that might have a dispute of some kind.  What do you

2    do in that scenario?

3            PROSPECTIVE JUROR:  I would take them each and have

4    them both explain their stories on the side, and then decide

5    what to do with them from there.

6            MR. TANASI:  Okay.  And you say you listen to both

7    sides.  Do you do anything else?  Do you investigate further?

8            PROSPECTIVE JUROR:  Yeah, I might ask other people if

9    they saw something, you know.

10           MR. TANASI:  Right.  Because fair to say in that

11   management role you don't want to rush to judgment; right?

12           PROSPECTIVE JUROR:  Yeah.

13           MR. TANASI:  Okay.  That's exactly what everyone in

14   this courtroom doesn't want you to do either.  Can you -- can

15   you understand that?

16           PROSPECTIVE JUROR:  Yeah.

17           MR. TANASI:  And so do you have any problems bringing

18   that managerial experience with you into this courtroom to

19   carefully comb through the evidence in this case?

20           PROSPECTIVE JUROR:  No, I don't have a problem with

21   that.

22           MR. TANASI:  You mentioned you listen to both sides;

23   right?

24           PROSPECTIVE JUROR:  (Nods head up and down).

25           MR. TANASI:  And that's great.  I'll submit to you,

1    as Her Honor has informed you already, the defense, Mr. Castro

2    and his fellow co-defendants, they have the right to remain

3    silent.  All right?  Do you have any issue with that as -- at

4    all?

5            **PROSPECTIVE JUROR:**  No.

6            **MR. TANASI:**  So, in other words, if after this

7    afternoon I sit down and I say nothing for the rest of the

8    trial, and even more in particular, you ultimately hear

9    nothing from Mario Castro, will you hold that against him?

10           **PROSPECTIVE JUROR:**  No.

11           **MR. TANASI:**  No?  Okay.

12           There's kind of a saying that where there's smoke,

13   there's fire; right?  So are you familiar with that saying?

14           **PROSPECTIVE JUROR:**  A little bit, yeah.

15           **MR. TANASI:**  Right.  So the concept is basically as

16   it applies in here, you wouldn't be sitting here right now,

17   right, some might think, if these folks over here didn't do

18   something; right?

19           **PROSPECTIVE JUROR:**  (Nods head up and down).

20           **MR. TANASI:**  Others sort of might say, well, hold on,

21   wait a minute, there's the constitution, there's the law, and

22   they're innocent until proven guilty; right?

23           So of those two kind of camps, where do you think you

24   would fall into?

25           **PROSPECTIVE JUROR:**  The second one.

1          **MR. TANASI:**  Which is they're innocent until proven

2     guilty; correct?

3          *(Reporter instruction.)*

4          **PROSPECTIVE JUROR:**  They're innocent until proven

5     guilty.

6          **MR. TANASI:**  All right.  And so I think, even as Her

7     Honor referenced, as you sit here now, everyone's vote should

8     be not guilty.  Do you remember that?

9          **PROSPECTIVE JUROR:**  Yeah.

10          **MR. TANASI:**  Do you have any dispute or any issue

11     with that at all?

12          **PROSPECTIVE JUROR:**  No.

13          **MR. TANASI:**  No?  So if you were sitting in

14     Mr. Castro's seat, would you want you on the jury?

15          **PROSPECTIVE JUROR:**  Yeah, probably.

16          **MR. TANASI:**  Probably?

17          **PROSPECTIVE JUROR:**  Yeah, I would.

18          **MR. TANASI:**  Okay.  Again, I don't mean to drill

19     down, but you used the word "probably."  And lawyers, we're

20     kind of notorious for overanalyzing words.  What was the

21     hesitation?

22          **PROSPECTIVE JUROR:**  Um, I just young is all.

23          **MR. TANASI:**  Okay.

24          **PROSPECTIVE JUROR:**  Yeah.

25          **MR. TANASI:**  I'm glad you're honest about that.  How

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    old are you again?

2            **PROSPECTIVE JUROR:**  I'm 21.

3            **MR. TANASI:**  Twenty-one.  So at the end of the trial

4    you're going to be asked by the Court to deliberate.  And in

5    deliberating, you're going to bring your own opinions into

6    that deliberation room.  If you fast-forward with me to that

7    moment -- I don't know -- want to know what your decision is

8    going to be.  Okay?  But imagine a situation where you believe

9    one way but your fellow jurors believe another way.

10            Can you picture that?

11        *(Reporter instruction.)*

12            **PROSPECTIVE JUROR:**  Yes, I can picture that.

13            **MR. TANASI:**  So in that moment would you be able to

14    voice your opinion?

15            **PROSPECTIVE JUROR:**  Yeah.

16            **MR. TANASI:**  Right.  Just because you're young, your

17    opinion isn't worth any less.  Fair?

18            **PROSPECTIVE JUROR:**  Yeah, I can say my side.

19            **MR. TANASI:**  Okay.  All right.  Is there anything

20    else that you'd like to share with the rest of us about this

21    process?

22            **PROSPECTIVE JUROR:**  No, I'm all right.

23            **MR. TANASI:**  Would you love it if I asked to pass the

24    microphone to Juror Number 1?

25            All right.  How are you, sir?

 1          **PROSPECTIVE JUROR:**  Good.  You?

 2          **MR. TANASI:**  All right.  So same idea.  I'm just sort

 3     of picking on you because I don't have a whole lot of notes

 4     written down.  I do have that you're also in management.

 5     Fair?

 6          **PROSPECTIVE JUROR:**  Yes.

 7          **MR. TANASI:**  All right.  And have you, in your

 8     capacity as a manager, had disputes that you've had to

 9     resolve?

10          **PROSPECTIVE JUROR:**  All the time.

11          **MR. TANASI:**  So in that capacity or in those

12     different situations, tell me what you did.

13          **PROSPECTIVE JUROR:**  Did basically like he said.

14     Listen to both sides, see if there's anybody else as a witness

15     that may corroborate one or the other, and then base my

16     judgment off of what I can find out after investigating.

17          **MR. TANASI:**  Okay.  And then you ultimately make your

18     decision based on your analysis?

19          **PROSPECTIVE JUROR:**  Yes.

20          **MR. TANASI:**  Is that something that -- that we can

21     all count on you to do in this case?

22          **PROSPECTIVE JUROR:**  Yes.

23          **MR. TANASI:**  All right.  Same -- same question I had,

24     the smoke/fire question.  Same idea.  Is there anything about

25     the fact -- the simple fact that these gentlemen are sitting

```
1    here accused that causes you to think, hey, they must have

2    done something, they wouldn't be sitting here if something

3    didn't happen?

4            PROSPECTIVE JUROR:  No.

5        MR. TANASI:  No.  Okay.  And so you can be fair and

6    impartial in this case?

7            PROSPECTIVE JUROR:  Yes.

8        MR. TANASI:  All right.  If you were sitting where

9    Mr. Castro is sitting, would you want you on the jury?

10           PROSPECTIVE JUROR:  Yes.

11       MR. TANASI:  Okay.  All right.  If you could pass the

12   microphone to your right.  Thank you.  I'm sorry.

13           THE COURT:  Left.  Left.

14       MR. TANASI:  I'm sorry, your left.  Thank you.  It's

15   been a long day.

16           How are you, sir?

17           PROSPECTIVE JUROR:  Fine.  How are you?

18       MR. TANASI:  All right.  You were in the Air Force?

19           PROSPECTIVE JUROR:  Yes.

20       MR. TANASI:  Thank you for you service.

21           PROSPECTIVE JUROR:  You're welcome.

22       MR. TANASI:  Your brother was in corrections,

23   corrections officer.  Fair?

24           PROSPECTIVE JUROR:  My brother-in-law.

25       MR. TANASI:  Brother-in-law.  Okay.
```

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          Do you have a close relationship with him?

2          **PROSPECTIVE JUROR:**  Yeah.

3          **MR. TANASI:**  All right.  Is there anything about your

4    relationship with your brother-in-law that would cause you to

5    be any -- have any sort of preconceived opinions in this case?

6          **PROSPECTIVE JUROR:**  No.

7          **MR. TANASI:**  No.  So you get along with him okay?

8          **PROSPECTIVE JUROR:**  Yeah.

9          **MR. TANASI:**  All right.  Somebody you talk to on a

10   daily basis?

11         **PROSPECTIVE JUROR:**  I'm sorry, what?

12         **MR. TANASI:**  Somebody you talk to on a daily basis?

13         **PROSPECTIVE JUROR:**  Not every day, no.

14         **MR. TANASI:**  Okay.  Her Honor will instruct you, as

15   she has already, you won't be able to speak with people about

16   the case.  Is that something that you'll be able to follow,

17   that rule?

18         **PROSPECTIVE JUROR:**  Yeah.

19         **MR. TANASI:**  Okay.  Including when speaking to your

20   brother-in-law who's a correctional officer?

21         **PROSPECTIVE JUROR:**  Yeah, he knows the deal.

22         **MR. TANASI:**  All right.  Also I have a note that you

23   said your -- I think your daughter and your mother were both

24   robbed?

25         **PROSPECTIVE JUROR:**  Yeah.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          **MR. TANASI:**  Okay.  Is there anything about the fact

2   that they were the victims of crime that would stand in your

3   way of being fair and impartial in this case?

4          **PROSPECTIVE JUROR:**  No.

5          **MR. TANASI:**  No.

6          Same question I had earlier about sort of where

7   there's smoke, there's fire.  Is there -- is there anything

8   about the simple fact that these gentlemen are sitting here in

9   this courtroom accused that leads you to believe that they

10  might be guilty?

11         **PROSPECTIVE JUROR:**  No.

12         **MR. TANASI:**  No?  You're going to expect the

13  Government in this case to prove its case beyond a reasonable

14  doubt?

15         **PROSPECTIVE JUROR:**  Yes, I --

16         **MR. TANASI:**  We can have you make that promise?

17         **PROSPECTIVE JUROR:**  Yeah.

18         **MR. TANASI:**  All right.  Thank you.  If you could

19  pass the mic.  Thank you.

20         How are you, sir?

21         **PROSPECTIVE JUROR:**  Great.  How are you?

22         **MR. TANASI:**  Good.  What is your juror number?

23         **PROSPECTIVE JUROR:**  Juror 5.

24         **MR. TANASI:**  5.  Thank you.

25         Same question.  I think you have a family member

 1   who's in corrections; correct?

 2           **PROSPECTIVE JUROR:**  Yes, sir.

 3           **MR. TANASI:**  All right.  Who is that family member?

 4           **PROSPECTIVE JUROR:**  He's a cousin.

 5           **MR. TANASI:**  And do you speak with your cousin

 6   regularly?

 7           **PROSPECTIVE JUROR:**  I do not.

 8           **MR. TANASI:**  You do not?

 9           **PROSPECTIVE JUROR:**  Um-hum.

10           **MR. TANASI:**  Okay.  Is there anything about that

11   relationship with your cousin that would interfere with your

12   ability to be fair and impartial in this case?

13           **PROSPECTIVE JUROR:**  No, sir.

14           **MR. TANASI:**  I don't -- do you have any managerial

15   experience?

16           **PROSPECTIVE JUROR:**  Partially.  Not really.

17           **MR. TANASI:**  Partial.

18           **PROSPECTIVE JUROR:**  More directioning [sic] for

19   music, but nothing in a job setting.

20           **MR. TANASI:**  Okay.  Have you ever had to resolve

21   disputes?

22           **PROSPECTIVE JUROR:**  Within friendships, yeah.

23           **MR. TANASI:**  Okay.  That's probably pretty emotional

24   and hard to do; right?

25           **PROSPECTIVE JUROR:**  Definitely.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          MR. TANASI:  But in that setting, are you fair to

2    both sides?

3          PROSPECTIVE JUROR:  Yes.

4          MR. TANASI:  Okay.  Do you rush to judgment?

5          PROSPECTIVE JUROR:  I do not.

6          MR. TANASI:  Do you believe one person's word over

7    the other quickly?

8          PROSPECTIVE JUROR:  No.

9          MR. TANASI:  No.

10          Do you think you're a good judge of character?

11          PROSPECTIVE JUROR:  Yes.

12          MR. TANASI:  You can tell when you think someone is

13    telling the truth or not?

14          PROSPECTIVE JUROR:  Usually from body language and

15    how they say things, but yes.

16          MR. TANASI:  Okay.  Do you have any preconceived

17    notions coming into this courtroom that we should be aware of

18    that would interfere with your ability to be fair and

19    impartial?

20          PROSPECTIVE JUROR:  No.

21          MR. TANASI:  All right.  If you could pass the

22    microphone.  Thank you.

23          PROSPECTIVE JUROR:  Hello.  Jury 6 -- Juror 6.

24          MR. TANASI:  How are you, ma'am?

25          PROSPECTIVE JUROR:  Fine.  How are you today?

1          **MR. TANASI:**  Good.  Thank you.

2          I'm sorry to hear about your car accident.  And if at

3    any point, you know, we sort of get you jammed up, please

4    just --

5          **PROSPECTIVE JUROR:**  Just sometimes -- sometimes my

6    brain thinks faster than my mind will talk.  That's all.

7          **MR. TANASI:**  Okay.

8          **PROSPECTIVE JUROR:**  I mean my mouth will talk.  My

9    brain thinks faster than my mouth will talk.

10          **MR. TANASI:**  Got it.  No problem.  I wish my brain

11    thought fast, you know?

12          So you said that you -- your ex was a -- was a felon;

13    right?

14          **PROSPECTIVE JUROR:**  (Nods head up and down).

15          **MR. TANASI:**  Do you believe that your ex was treated

16    fairly throughout the course of his foray with the criminal

17    justice system?

18          **PROSPECTIVE JUROR:**  That's kind of hard to answer.

19          Does the Court mind if I go into a little details?

20    Because I'm not embarrassed.  I don't care.

21          **MR. TANASI:**  I have no problem if the Court has no

22    problem.

23          **THE COURT:**  No.

24          **PROSPECTIVE JUROR:**  Okay.  My ex was a pedophile, and

25    I do not believe he was dealt with properly and I believe that

1    he got off way too easily.  Part of the reason I divorced him

2    was because of that.

3              **MR. TANASI:**  Understood.

4              So, now, this case has nothing to do --

5              **PROSPECTIVE JUROR:**  Right.

6              **MR. TANASI:**  -- with sexual offenses.  You understand

7    that; right?

8              **PROSPECTIVE JUROR:**  (Nods head up and down).

9              **MR. TANASI:**  However, it does allege crimes.

10             **PROSPECTIVE JUROR:**  Right.

11             **MR. TANASI:**  So is there anything just about the

12   simple fact that you're being asked potentially to sit on a

13   jury in a criminal case, anything about your past that would

14   interfere with your ability here today?

15             **PROSPECTIVE JUROR:**  No.

16        *(Reporter instruction.)*

17             **MR. TANASI:**  Is that a no?

18             **PROSPECTIVE JUROR:**  I said no, there's nothing that

19   will affect.  I take everything as it comes.  And just because

20   they're here doesn't mean they're guilty.  I'll listen to both

21   sides and make my decision according to the law.  I believe in

22   the justice system.

23             **MR. TANASI:**  Fantastic.  Thank you.  You did also - I

24   have a note -- used to work in corrections.  Fair?

25             **PROSPECTIVE JUROR:**  Yes.  I was a CO at a maximum

1    security in Los Lunas, New Mexico.

2         **MR. TANASI:**  How long did you do that?

3         **PROSPECTIVE JUROR:**  Not very long.  Only about two

4    months.

5         **MR. TANASI:**  Seems like a tough job.

6         **PROSPECTIVE JUROR:**  It wasn't tough so much as I got

7    a better paying job because I just moved to the area.  But I

8    did not -- honestly, being a maximum security prison, wasn't

9    that secure.  I didn't like that.

10        **MR. TANASI:**  Understood.

11        Did you have enough experience or time there to deal

12    with any inmate disputes?

13        **PROSPECTIVE JUROR:**  Considering that I had to deliver

14    food to the -- to the solitary confined, yes, I had plenty of

15    time to deal with the inmates.

16        **MR. TANASI:**  Okay.  And did you carry a management

17    position or --

18        **PROSPECTIVE JUROR:**  Not there.  But I have carried

19    management positions.  I have managed many restaurants and

20    bars.

21        **MR. TANASI:**  Okay.  So in those positions in the

22    past, did you have any incidents or issues with employees?

23        **PROSPECTIVE JUROR:**  Always as a manager.  Employees

24    and customers, employees/employees, employees/cooks, you name

25    it.

 1          MR. TANASI:  Okay.  How did you try to solve those

 2   problems or those incidents?

 3          PROSPECTIVE JUROR:  Got to listen to both sides, see

 4   where they're both coming from, how they both feel, but then

 5   you also have to interpret how the laws of the company -- the

 6   laws? -- the rules of the company, which in this case would be

 7   the laws, deal in that -- apply to that situation.  And that's

 8   a -- your part as the manager is to read between those lines

 9   and to try to figure out the best way to absolve the whole

10   situation in benefit of all the parties.

11          MR. TANASI:  Okay.  Now, in this particular case, as

12   I mentioned, the defendants have a right to remain silent,

13   constitutional right that we all have.  Do you have any issue

14   with that?

15          PROSPECTIVE JUROR:  No.

16          MR. TANASI:  Okay.  So if you go through this entire

17   trial and you don't hear once from Mario Castro or any other

18   defendant in the case, will you hold that against them?

19          PROSPECTIVE JUROR:  I don't hold it -- I would not

20   hold it against them.  I believe that most people should speak

21   in their own defense, but there are times when so many things

22   are brought against somebody that opening your mouth makes it

23   feel like everything is going to come out wrong or everyone's

24   going to turn it around the wrong way, and so you just don't

25   want to say anything.  So I got to kind of take it as it comes

1    and goes.

2        **MR. TANASI:**  Do you have any issue, though, as you

3    sit here now -- not to mince words -- with the idea that no

4    one ever in this courtroom has the obligation to explain their

5    side of things?  They have -- always have the right to remain

6    silent.

7        **PROSPECTIVE JUROR:**  Do I have problem with them

8    having the right to remain silent?  No, I do not.  They can

9    remain silent if they want to.  No, that will not affect my

10   opinion.

11       **MR. TANASI:**  Understood.

12       The Court has instructed you a little, and will

13   instruct you much more on this, that the Government has the

14   burden, the burden of proof beyond a reasonable doubt.  And

15   what that can look like is ultimately, after we're speaking

16   now, I could sit down, Mr. Tomsheck could sit down, and the

17   rest of us could say and do nothing for the entire duration of

18   the rest of the trial.  And we still could stand up at the end

19   and ask that you find our clients not guilty if you don't

20   believe that the Government has met their burden of proof

21   beyond a reasonable doubt.  Do you understand that concept?

22       **PROSPECTIVE JUROR:**  Yes.

23       **MR. TANASI:**  Do you have any problem with that

24   concept at all?

25       **PROSPECTIVE JUROR:**  No.  I agree with it.

1          **MR. TANASI:**  Okay.  If you could pass the mic?  Thank

2    you.

3          **THE COURT:**  One more minute, Mr. Tanasi.

4          **MR. TANASI:**  Thank you, Your Honor.

5          Hello, ma'am.

6          **PROSPECTIVE JUROR:**  One minute.

7          **MR. TANASI:**  One minute.

8          **PROSPECTIVE JUROR:**  Go.

9          **MR. TANASI:**  Like, yes.

10          All right, ma'am.  How are you today?

11          **PROSPECTIVE JUROR:**  Okay.

12          **MR. TANASI:**  What is your juror number?

13          **PROSPECTIVE JUROR:**  Seven.

14          **MR. TANASI:**  All right.  Now, some of the questions

15    I've asked relate to the right to remain silent.  Do you have

16    any issue with that at all?

17          **PROSPECTIVE JUROR:**  Well, you've explained it two

18    different ways to different people.

19          **MR. TANASI:**  Okay.

20          **PROSPECTIVE JUROR:**  You've stated it two different

21    ways.  The first -- or one of the ways you said was if they --

22    defendants decide to say nothing.

23          **MR. TANASI:**  Right.

24          **PROSPECTIVE JUROR:**  And that's one way.  But then the

25    other one was you said they say nothing and you say nothing.

1    You could just sit down right now and --

2            **MR. TANASI:**  Right.

3            **PROSPECTIVE JUROR:**  -- that would be that.  I see

4    those two different ways.

5            **MR. TANASI:**  You do?

6            **PROSPECTIVE JUROR:**  Um-hum.

7            **MR. TANASI:**  Okay.  I will represent to you that, as

8    defense lawyers for Mr. Castro, we can maintain his right to

9    remain silent and say and do nothing throughout the duration

10   of the trial.  We have that right if we chose to do it.  And

11   the reason is because the Government has the burden of proof

12   beyond a reasonable doubt.

13           **PROSPECTIVE JUROR:**  I got that, yep.

14           **MR. TANASI:**  We don't have the burden present any

15   evidence.

16           **PROSPECTIVE JUROR:**  I got that.

17           **MR. TANASI:**  Okay.  So now that maybe I've explained

18   it a third way -- hopefully I didn't make it more confusing --

19   do you have any issue with that concept, that idea that, A,

20   the defendants and their lawyers can remain silent the entire

21   time and expect the Government to meet its burden of proof

22   beyond a reasonable doubt?

23           **PROSPECTIVE JUROR:**  Yeah, I kind of have a problem

24   with that.

25           **MR. TANASI:**  Okay.  Why?

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
 1            PROSPECTIVE JUROR:  Because you haven't defended them
 2    if you don't say anything, and they hired you as a defense
 3    lawyer.  And what did they pay you for?
 4            MR. TANASI:  Understood.
 5            Again, let's add a different scenario.
 6            PROSPECTIVE JUROR:  Okay.
 7            MR. TANASI:  You hear from us at the very end of the
 8    trial to argue, but we didn't present any evidence the entire
 9    time because, again, we don't have the burden to do so.  Do
10    you have any issue with that?
11            PROSPECTIVE JUROR:  Are you going to present evidence
12    when you argue at the end?
13            MR. TANASI:  Again, the Government has the burden of
14    producing evidence and then convincing you beyond a reasonable
15    doubt of guilt.  So the argument could be over just what the
16    Government presented.
17            PROSPECTIVE JUROR:  I -- I -- no, I don't see that as
18    being something that I could -- there -- you're all here for a
19    reason.  We're here for a reason.
20            MR. TANASI:  Okay.  So let me ask it this way.
21    Again, the Government has the burden of proof beyond a
22    reasonable doubt.  Do you think that that is too hard on the
23    Government, too big of an ask, to put the burden on the
24    Government and not put the burden on the defense?
25            PROSPECTIVE JUROR:  What do you mean by too hard?
```

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          MR. TANASI:  Unfair.

2          PROSPECTIVE JUROR:  Unfair?  No.

3          MR. TANASI:  Okay.  Now, if you were sitting in

4    Mr. Castro's seat, would you want you seated as a juror?

5          PROSPECTIVE JUROR:  If -- no, probably not.

6          MR. TANASI:  Why not?

7          PROSPECTIVE JUROR:  Because I inherently don't trust

8    the Government, and I have a -- not a brilliant, shiny image

9    of lawyers in my head.  And I -- I'm just being honest.

10         MR. TANASI:  That's fair.  I have a best friend who

11   doesn't like lawyers very much.  We're still friends,

12   thankfully, but he let's me know it all the time.

13         So is there anything about your conception about

14   defense lawyers in this case that would keep you from being

15   fair and impartial?

16         PROSPECTIVE JUROR:  No.  Lawyers are lawyers.

17         MR. TANASI:  Okay.  All right.

18         PROSPECTIVE JUROR:  In my experience.

19         MR. TANASI:  So if I -- I just want to make sure I

20   understand you kind of correctly.  Do you have a bias leaning

21   one way or another, one more towards the Government, one more

22   towards the defense, or --

23         PROSPECTIVE JUROR:  No.  Equally bad guys.

24         THE COURT:  I didn't hear that last answer.  I'm

25   sorry.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          **PROSPECTIVE JUROR:**  They're equally bad guys.  I

2     mean, I don't -- I'm just looking for words that everybody

3     understands.

4          **MR. TANASI:**  And I appreciate your honesty.

5          **PROSPECTIVE JUROR:**  And, yeah, I just -- lawyers

6     are -- I've not had good experiences with lawyers, and the

7     Government just -- I don't trust them.

8          **MR. TANASI:**  Okay.  All right.

9          **PROSPECTIVE JUROR:**  Not that I don't trust you, too,

10    but the Government in general.

11         **MR. TANASI:**  Understood.

12         Now, is there any way you'd be able to set aside that

13    distrust for this case if instructed by -- by the Court?

14         **PROSPECTIVE JUROR:**  I can't predict the future.  I

15    mean, I -- my opinions of the Government --

16       *(Reporter instruction.)*

17         **THE COURT:**  Yeah, keep the microphone up to your

18    mouth.

19         **PROSPECTIVE JUROR:**  Oh.  I'm sorry.

20         I couldn't predict the future.  I'm -- I'm -- I -- my

21    opinion of lawyers and Government isn't going to change

22    regardless of what you guys do.  And it's just my life

23    experiences.  60 some-odd years have put me in the position

24    of, you know, yeah, yeah, it's the Government.  You know, they

25    lie to us, they do silly things, they spend our money, take

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

 1    our money.  And lawyers, you know, could be manipulative, can

 2    be -- they tend to talk down to people.  You know, it's -- and

 3    what you do in this particular courtroom doesn't necessarily

 4    change that, and I can't tell you how it will affect me.

 5          I can tell you that, when you first started this, you

 6    were asking -- I thought you were asking very leading

 7    questions.  You were trying to pull the answer -- specific

 8    answers out of this gentleman over here, and that's the kind

 9    of thing I don't like.  Everybody's an individual, but you

10    asked everybody pretty much the same thing.  And -- but in a

11    way you tuned it to what they had told you before.  And

12    that -- I don't know.  I just feel like that's kind of

13    leading.

14          MR. TANASI:  Understood.  Well, I appreciate your

15    honesty.

16          PROSPECTIVE JUROR:  Sorry.

17          MR. TANASI:  Don't be sorry.  This is what we want.

18    This is why we're standing here.

19          PROSPECTIVE JUROR:  I want to be honest.  I've been

20    on a jury before.  That was -- that was difficult, but it was

21    a whole different event.

22          MR. TANASI:  What kind of case was that?

23          PROSPECTIVE JUROR:  It was a child sexual abuse case.

24          MR. TANASI:  And without telling me the verdict, did

25    you guys reach a verdict?

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          PROSPECTIVE JUROR:  We did.  It took about two

2    minutes.

3          MR. TANASI:  All right.  Thank you for your honesty.

4    I think my time is up.

5          PROSPECTIVE JUROR:  Okay.

6          MR. TANASI:  Thank you, Your Honor.

7          THE COURT:  Thank you.  Mr. Gaffney.

8          MR. GAFFNEY:  Thank you, Judge.  Good afternoon,

9    ladies and gentlemen.  I know it has been a long day.  I will

10   try to keep it as short as possible.  I think you guys are

11   probably all now familiar with what we're trying to do here.

12   The Judge at the beginning of this process called this voir

13   dire, which means to speak the truth.  And just like Juror

14   Number 7, there is nothing wrong with having an opinion that I

15   don't like attorneys in general.  That's exactly the kind of

16   information that we're looking for.  Some people have positive

17   experiences with law enforcement; some people have negative

18   experiences with law enforcement.  We're looking for people

19   who are going to be fair not only to the defense but also to

20   the Government.  We want jurors who are going to be fair to

21   both sides.

22          And so I apologize if some of these questions may

23   seem intrusive.  We're just trying to find people who will be

24   fair and impartial and give both sides equal treatment.

25          Can -- can we pass the mic to Juror Number 25,

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    please.

2            Ma'am, if I heard you correctly, you had indicated

3    that both your father and your husband's -- your husband are

4    correctional officers for the Nevada Department of

5    Corrections?

6            **PROSPECTIVE JUROR:**  Not my father.  Just my husband.

7            **MR. GAFFNEY:**  Just your husband.  Is your father --

8    does he have any affiliation with law enforcement?

9            **PROSPECTIVE JUROR:**  No.

10    *(Reporter instruction.)*

11           **MR. GAFFNEY:**  So does the fact that your husband has

12   an affiliation with law enforcement, would that tend to make

13   you see law enforcement in a more favorable way?

14           **PROSPECTIVE JUROR:**  No.

15           **MR. GAFFNEY:**  Okay.  Let me ask it a different way.

16   When the -- we go to trial, there's going to be witnesses who

17   are testifying.  Some of them will be from law enforcement.

18   Some of them will be lay witnesses, meaning they may just be

19   your average citizens or other witnesses.

20           Would you have the tendency to give the weight of a

21   law enforcement officer more consideration thinking that maybe

22   they're more credible or more honest than another witness?

23           **PROSPECTIVE JUROR:**  No.

24           **MR. GAFFNEY:**  And is that because -- and why is that?

25           **PROSPECTIVE JUROR:**  Well, I believe everybody

1    deserves a second chance.  And my husband being an officer, he

2    kind of doesn't.

3          MR. GAFFNEY:  Would you agree with me that there's

4    good and bad people in law enforcement?

5          PROSPECTIVE JUROR:  Of course.

6          MR. GAFFNEY:  Okay.  And that when somebody's

7    testifying, just because they may be a part of law

8    enforcement, you need to judge their credibility as an

9    individual on the witness stand; is that fair?

10          PROSPECTIVE JUROR:  I didn't understand.

11          MR. GAFFNEY:  Well, just because somebody is law

12    enforcement, does that in your mind make them a more credible

13    witness?

14          PROSPECTIVE JUROR:  No.

15          MR. GAFFNEY:  And what are some of the things that

16    you would do to try to figure out whether maybe a law

17    enforcement officer is telling the truth or not telling the

18    truth?

19          PROSPECTIVE JUROR:  Probably just watching them talk.

20    Maybe looking...

21          MR. GAFFNEY:  Okay.  Fair enough.

22          PROSPECTIVE JUROR:  Body language.

23          MR. GAFFNEY:  All right.  Can you pass the microphone

24    just to your left?  Juror Number 27, I believe?

25          PROSPECTIVE JUROR:  Yes, 27.

1          MR. GAFFNEY:  And, ma'am, I think you had indicated

2     that your husband's retired law enforcement; is that right?

3          PROSPECTIVE JUROR:  He was in law enforcement.  The

4     undersheriff.

5          MR. GAFFNEY:  And you also have other family members

6     who are --

7          PROSPECTIVE JUROR:  Aunt and uncle with Metro.

8          MR. GAFFNEY:  So my question to you remains the same.

9     Do you have any bias in favor of law enforcement versus sort

10    of an average citizen?

11         PROSPECTIVE JUROR:  I do not.

12         MR. GAFFNEY:  Okay.  So if a law enforcement agent

13    was testifying on the witness stand, you wouldn't give their

14    testimony any more weight than anybody else?

15         PROSPECTIVE JUROR:  I would not.

16         MR. GAFFNEY:  Okay.  And if we could pass it to Juror

17    Number 29.  Same question.  I believe you said you had a son

18    who was a U.S. Marshal?

19         PROSPECTIVE JUROR:  A son-in-law who is a U.S.

20    federal marshal.

21         MR. GAFFNEY:  And are you close to your son-in-law?

22         PROSPECTIVE JUROR:  Yes.

23         MR. GAFFNEY:  Does he talk to you about the kind of

24    cases or the kinds of things that he does?

25         PROSPECTIVE JUROR:  He does.  I don't see him too

1   often because they live in another state, but when we do get

2   together, he will -- we will talk.  I volunteer in family

3   court, so sometimes we talk about court.

4        MR. GAFFNEY:  And volunteer in family court in what

5   capacity?

6        PROSPECTIVE JUROR:  I volunteer with the CASA

7   organization.  I volunteer every week in family court as a

8   court monitor.

9        MR. GAFFNEY:  Okay.  And do you have contact with

10  the -- the victims in those cases?  Or not the victims.

11  You're saying family court.  It's the divorce, property --

12       PROSPECTIVE JUROR:  It's not divorce.  It's safety

13  court for the foster children.

14       MR. GAFFNEY:  Okay.  So do you sometimes come into

15  contact with victims?

16       PROSPECTIVE JUROR:  The children.

17       MR. GAFFNEY:  The children.

18       PROSPECTIVE JUROR:  Yes, they sometimes -- yes.  And

19  also, as a CASA, we have foster children as cases.

20       MR. GAFFNEY:  Okay.  Thank you.

21       Can we pass the mic to Juror Number 47?

22       Sir, I -- if I wrote this down correctly, you said

23  that your elderly mother was a victim of mail fraud?

24       PROSPECTIVE JUROR:  Yes.  She had -- she had multiple

25  fraud situations.  There was door-to-door salesmen that would

1    come to her, got her to buy $900 worth of magazine

2    subscriptions, preying on the elderly.  There was some

3    Medicare fraud, fraud waste and abuse, people calling up

4    telling her she needed a walker when she didn't need a walker

5    but they sent her one anyways, which is waste of government

6    money.  There was somebody who stole her credit card by

7    talking her into -- there was a sweepstakes for a vacation.

8    She was going to win this great vacation, and all they need

9    was her credit card for, like, a 50-dollar processing fee.

10   Next thing you know, thousands of dollars charged up on her

11   credit card.  It was a nightmare.

12          MR. GAFFNEY:  Okay.  And so obviously what we're

13   here -- the trial is going to be about mail fraud.  Do you

14   feel that just the nature of this case may have a tendency to

15   make you either more bias either for or against the Government

16   or the defense?

17          PROSPECTIVE JUROR:  I don't have any idea if these

18   gentlemen are guilty or not guilty.  I haven't heard any

19   evidence.  So I'm not biased in that aspect.  I do have a

20   serious disdain for the act, but who wouldn't?

21          MR. GAFFNEY:  And if you were to find out that some

22   of the victims in this case were elderly, would that change

23   your ability to remain fair and impartial?

24          PROSPECTIVE JUROR:  That's hard to say.

25          MR. GAFFNEY:  And is it because it's an experience

 1   that kind of is personal to you?

 2          PROSPECTIVE JUROR:  It's very personal, yes.

 3          MR. GAFFNEY:  Okay.  So, fair to say, if you find out

 4   that some of the victims in this case may be elderly and you

 5   feel that maybe they were targeted and were somehow

 6   vulnerable, that may sway your ability to remain fair and

 7   impartial?

 8          PROSPECTIVE JUROR:  It would definitely make the

 9   crime seem a lot worse to me.

10          MR. GAFFNEY:  Can you pass the mic to Juror Number

11   54, please.  I -- I think you had indicated that you,

12   yourself, was a victim of fraud; is that right?

13          PROSPECTIVE JUROR:  Correct.

14          MR. GAFFNEY:  Okay.  And so same question to you.

15   Because the nature of this case is going to be dealing with

16   mail fraud, fraud, is that going to hamper your ability to be

17   fair and impartial either towards the defense or towards the

18   Government?

19          PROSPECTIVE JUROR:  Not at all.

20          MR. GAFFNEY:  So you'll be able to listen to all of

21   the testimony and then wait till the end to make a decision

22   about whether the defendants may be guilty or not guilty?

23          PROSPECTIVE JUROR:  Absolutely.

24          MR. GAFFNEY:  And can you pass the microphone to

25   Juror Number 57.

1          Same question to you, sir.  You had indicated that

2     you were a victim of fraud back in 2002.

3          **PROSPECTIVE JUROR:**  Yes, sir.

4          **MR. GAFFNEY:**  Is there anything about the nature of

5     this case being a mail fraud case that might make it difficult

6     for you to remain fair and impartial?

7          **PROSPECTIVE JUROR:**  I would say that I would probably

8     not be impartial.

9          **MR. GAFFNEY:**  Okay.  So if you were sitting over here

10    with the defendants, would you want a juror such as yourself

11    on the jury?

12         **PROSPECTIVE JUROR:**  Nope.

13         **MR. GAFFNEY:**  And is that a -- a strongly held belief

14    or feeling that you have?

15         **PROSPECTIVE JUROR:**  Yeah.  It's a -- yeah, it kind

16    of -- when that happened, it hurt a lot, so...

17         **MR. GAFFNEY:**  Okay.  Thank you, sir.

18         Can you pass the mic to Juror Number 60, please.

19         Sir, you had indicated you have a police officer --

20    or, excuse me, a stepbrother who's a police officer in

21    Illinois?

22         **PROSPECTIVE JUROR:**  Yes, sir.

23         **MR. GAFFNEY:**  Talk to him a couple times a week or?

24         **PROSPECTIVE JUROR:**  Couple times a month.

25         **MR. GAFFNEY:**  Couple times a month?

1          PROSPECTIVE JUROR:  Couple times every few months.

2          MR. GAFFNEY:  Okay.  Do you consider your

3     relationship with him or her -- well, him to be close?

4          PROSPECTIVE JUROR:  Stepbrother.

5          MR. GAFFNEY:  Okay.  In Illinois that you talk to a

6     couple times a month?

7          PROSPECTIVE JUROR:  Yeah.

8          MR. GAFFNEY:  Is there anything about your

9     relationship with him that would cause you to weigh testimony

10    from a law enforcement officer in favor of the Government as

11    opposed to a lay witness?

12         PROSPECTIVE JUROR:  No.

13         MR. GAFFNEY:  And can you pass the microphone to

14    Juror Number 63, please.

15         Ma'am, if my -- if I wrote this down correctly, did

16    you indicate you were also a victim of fraud --

17         PROSPECTIVE JUROR:  Yes.

18         MR. GAFFNEY:  -- to the tune of $15,000?

19         PROSPECTIVE JUROR:  Yes.

20         MR. GAFFNEY:  And what kind of fraud was that?

21         PROSPECTIVE JUROR:  It's one of my friend stole my

22    license and my saving card, saving account.

23         MR. GAFFNEY:  Was this a case of identity theft?

24         PROSPECTIVE JUROR:  Yes, you could say that.

25         MR. GAFFNEY:  Okay.  And so you had used the -- the

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    term fraud -- or we had used the term fraud, and then you had

2    told us what happened.  Is there anything about the nature of

3    this case that would make it difficult for you to remain fair

4    and impartial as a juror?

5            **PROSPECTIVE JUROR:**  Probably.

6            **MR. GAFFNEY:**  And is that because of the -- because

7    of the experience you had --

8            **PROSPECTIVE JUROR:**  Yes.

9            **MR. GAFFNEY:**  -- being defrauded?

10           **PROSPECTIVE JUROR:**  Yes.

11           **MR. GAFFNEY:**  Okay.  So if you were to hear from,

12   say, the -- the victims of fraud, would you be able to listen

13   to their testimony and give it equal weight with everybody

14   else, or do you think that you would sort of automatically be

15   in favor of the victims and potentially the Government?

16           **PROSPECTIVE JUROR:**  I would listen to everyone.  Yes,

17   I would listen.

18           **MR. GAFFNEY:**  But ultimately you would -- as sort of

19   a starting point, you would be more in favor of, say, the

20   Government than the defense, is that fair --

21           **PROSPECTIVE JUROR:**  Yes.

22           **MR. GAFFNEY:**  -- in a case like this?

23           **PROSPECTIVE JUROR:**  Yes.

24           **MR. GAFFNEY:**  Okay.  Okay.  Thank you, Judge.

25           **THE COURT:**  Mr. Brown.

1          **MR. BROWN:**  Thank you, Judge.

2          So hello.  My name is William Brown.  I represent

3   Mr. Jose Luis Mendez who's standing up right here.

4          I want to ask a broad, general question first.  And

5   I'll tell you this.  I have a friend named John, and when I

6   tell John I'm going to trial, here's what he says:  What did

7   your guy do?  What that suggests I think is what a lot of

8   people kind of secretly think down below.  That if it's gotten

9   this far, that if we're sitting here with the Federal

10  Government on one side of the courtroom, that they must have

11  done something.

12          So my question is this -- and I'll kind of ask it two

13  ways.  Who thinks that the Government accuses innocent people

14  of committing crimes?  Who thinks that, although someone is

15  accused by the Federal Government of committing a crime, they

16  might be innocent?  Show of hands, who thinks that?  Who

17  thinks that happens?

18      *(Various hands raised.)*

19          **MR. BROWN:**  Who doesn't think that happens?  Who

20  thinks the Government doesn't make mistakes?

21      *(No hands raised.)*

22          **MR. BROWN:**  Who thinks that, despite their best

23  intentions and that acting in good faith, sometimes the

24  Government does make mistakes?  Show of hands.

25      *(Various hands raised.)*

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

 1           MR. BROWN:  Done anyone not think that's true?

 2      (No hands raised.)

 3           MR. BROWN:  Following up on that, who thinks, as we

 4      sit here today right now, that my client, Mr. Mendez, is

 5      innocent?

 6      (Various hands raised.)

 7           MR. BROWN:  I see your hand's not raised.  Can he

 8      have the microphone?

 9           I'm sorry.  Can you tell me your number again?

10           PROSPECTIVE JUROR:  Thirty-two.

11           MR. BROWN:  Number 32.  Mr. 32, can you explain to me

12      what you're thinking?

13           PROSPECTIVE JUROR:  I have no -- again, they haven't

14      presented anything.  I have no idea.  He might have done

15      something; he might not have.

16           MR. BROWN:  Okay.  But as we sit here, you said you

17      haven't heard any evidence yet.

18           PROSPECTIVE JUROR:  Huh-uh.

19           MR. BROWN:  And yet there's still a question in your

20      mind as to whether he's guilty or innocent?  And it's --

21           PROSPECTIVE JUROR:  He's here for something --

22      (Simultaneous crosstalk.)

23      (Reporter instruction.)

24           PROSPECTIVE JUROR:  I don't know what it is, but

25      it's --

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

```
 1              MR. BROWN:  Okay.  So you feel like he's here for

 2    something; right?

 3              PROSPECTIVE JUROR:  Yeah.

 4              MR. BROWN:  They didn't just pull him off the street?

 5              PROSPECTIVE JUROR:  Yeah.

 6              MR. BROWN:  That's fine.  That's fair.

 7              Anyone else think that?  And, again -- okay.  Sir,

 8    yeah, please.

 9              PROSPECTIVE JUROR:  Juror Number 66.  I just agree

10    with what he said.

11              MR. BROWN:  Okay.  And, again, look, no right or

12    wrong answers.  Just please honest answers.  Yes, sir.

13              PROSPECTIVE JUROR:  So I think it has to do with how

14    the question's posed; right?  I mean, at this moment of course

15    he's presumed innocent, but I think people understand the

16    question to mean --

17              COURTROOM ADMINISTRATOR:  Nineteen.

18              PROSPECTIVE JUROR:  -- do we -- maybe there -- maybe

19    there may be a guilty verdict in the end?  Then of course that

20    could be true.  We don't know what's going to happen; right?

21    So in that sense I agree with these two people.

22              MR. BROWN:  You agree with them in the sense that,

23    after hearing all of the evidence --

24              PROSPECTIVE JUROR:  Correct.

25              MR. BROWN:  -- they decide he's guilty?
```

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1       **PROSPECTIVE JUROR:**  Yes.

2          **MR. BROWN:**  Right.  But right here --

3       **PROSPECTIVE JUROR:**  Not right now --

4       *(Simultaneous crosstalk.)*

5       *(Reporter instruction.)*

6          **PROSPECTIVE JUROR:**  Okay.  Anyway, I rest my case.

7          **MR. BROWN:**  You rest your case?  Very nice.  We'll

8   switch places.

9          Okay.  And then just -- thank you for your answers to

10   that question.

11          Mr. 21, if we could -- yeah, if you could hand him

12   the microphone, please.  So I have in my chicken scratch notes

13   here that I believe you had a friend whose partner was

14   victimized in some kind of a fraud thing; is that right?

15          **PROSPECTIVE JUROR:**  Yeah, my best friend's husband.

16          **MR. BROWN:**  Okay.  Your best friend's husband.  Can

17   you tell me a little bit more about that?

18          **PROSPECTIVE JUROR:**  His husband had a stroke about I

19   want to say, like, about maybe five years ago, and as he's

20   recovering from the stroke, he was a victim of mail fraud

21   where he would get these e-mails.  And they would have him buy

22   and send in gift cards.  And we didn't find out about that

23   until -- till just before he -- just before he passed, while

24   we were getting everything ready for him while he was going

25   through hospice and all of that, that's when we noticed these

1    transactions.  And when we -- when we researched the

2    transactions, that's when we found out that he was the -- a

3    victim of the crime.

4         **MR. BROWN:**  Okay.  It sounds like you might have been

5    close to this gentleman.  Were you?

6         **PROSPECTIVE JUROR:**  Yes.

7         **MR. BROWN:**  And so was the realization of his

8    victimization, was that emotionally impactful?

9         **PROSPECTIVE JUROR:**  Yes.

10        **MR. BROWN:**  And is that something you talked about

11   with people?

12        **PROSPECTIVE JUROR:**  Me and my best friend talk about

13   it all the time, even still today.  It's already been over

14   three years since he passed, but it's -- it brings up really

15   bad memories because we're still -- they were never able to

16   recoupe any of the funds that were lost, and it was -- and it

17   sort of, like, just like a thorn that just is still there.

18        **MR. BROWN:**  Okay.  So it's a thorn that's still

19   there.  This experience still kind of has emotional resonance

20   it sounds like.

21        **PROSPECTIVE JUROR:**  Correct.

22        **MR. BROWN:**  And I don't want to put words in your

23   mouth, but my question would be this is a -- a case where the

24   Government is accusing my client of committing fraud.

25        **PROSPECTIVE JUROR:**  Um-hum.

```
 1           MR. BROWN:  And I'm just wondering whether you can
 2   untangle yourself from the emotional experience that you
 3   underwent and just sit and listen objectively to the evidence
 4   in this case without letting your personal experience bleed
 5   into that?
 6           PROSPECTIVE JUROR:  I would like to think so, but I
 7   think it would still be difficult.
 8           MR. BROWN:  It would we difficult?
 9           PROSPECTIVE JUROR:  (Nods head up and down).
10           MR. BROWN:  And how would you do it?  I mean...
11           PROSPECTIVE JUROR:  Well, like I said, I don't -- I
12   don't really know.  Because it wasn't -- it wasn't just Dennis
13   that this happened to but also my best friend's
14   brother-in-law.  And he just passed, and we just are going
15   through that stuff where his sister is telling us -- finding
16   out new things of what it -- and basically kind of the same
17   thing that's happened to him.  So that's sort of another
18   reason why this is sort of like a very fresh thing that's
19   still going on in our family basically.
20           MR. BROWN:  Okay.  So it sounds like you kind of have
21   to set aside a relatively large portion of your personal life?
22           PROSPECTIVE JUROR:  Correct.
23           MR. BROWN:  Okay.  If you were me, if you were
24   representing a defendant in this case, would you want someone
25   like you with these emotionally raw feelings standing in
```

1   judgment of your client?

2           **PROSPECTIVE JUROR:**  Probably not.

3           **MR. BROWN:**  Thank you.

4       Thank you, all, for your answers.

5           **THE COURT:**  Mr. Green, any questions?

6           **MR. GREEN:**  Yes, please, Your Honor.  Thank you.

7       Again, ladies and gentlemen, my name is Don Green,

8   and I represent Mr. Salvador Castro.  It's been a long day,

9   hasn't it?  Who doesn't want to be here?  Somebody -- your

10  hand almost went up.  Okay.  There we go.  All right.

11      This trial is going to be several weeks, possibly six

12  weeks or less, and, you know, it might very well be at the end

13  of this trial we all got to go to DMV and change our residence

14  to this courtroom.  I told my legal assistant that, you know,

15  the trial's going to last six weeks.  She said, Don't worry,

16  Mr. Green.  I got you covered.  I packed extra Depends for

17  you.

18      May the microphone be passed to Prospective Juror

19  Number 6, please.  That's -- there you go.

20          **PROSPECTIVE JUROR:**  Sorry.

21          **MR. GREEN:**  It has been a long day.

22          **PROSPECTIVE JUROR:**  I'm awake.

23          **MR. GREEN:**  Ma'am, again, Prospective Juror Number 6;

24  correct?

25          **PROSPECTIVE JUROR:**  Yes.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          **MR. GREEN:**  Did you say you were a printer in the

2    printing business at one time?

3          **PROSPECTIVE JUROR:**  I was an executive -- executive

4    secretary for a print shop in Texas, and we printed all the

5    pizza boxes for Peter Piper Pizza.

6          **MR. GREEN:**  Okay.  When you -- when you got an order

7    to print, you printed exactly what you were told; correct?

8          **PROSPECTIVE JUROR:**  (Nods head up and down).

9          Yes, sir.

10          **MR. GREEN:**  I mean, did you put two-for-one pizzas on

11    the box?

12          **PROSPECTIVE JUROR:**  No.  We did what the client

13    wanted.

14          **MR. GREEN:**  So the representative from Peter Piper

15    Pizza -- and didn't those used to be like a family place where

16    they had, like, an arcade and a pizza --

17          **PROSPECTIVE JUROR:**  Yes.

18          **MR. GREEN:**  -- bar or pizza -- like a buffet?

19          **PROSPECTIVE JUROR:**  Yes.  Like a Chuck E. Cheese type

20    thing.  It was a kids pizza joint.

21          **MR. GREEN:**  Yes, yes.  But you didn't have any

22    responsibility other than -- the secretary -- the company

23    didn't have any responsibility except to print; correct?

24          **PROSPECTIVE JUROR:**  Yes, that's correct.

25          **MR. GREEN:**  That's it?

1          **PROSPECTIVE JUROR:**  That's correct.

2          **MR. GREEN:**  Thank you.

3          May the microphone be passed to Prospective Juror

4     Number 15.

5          Now, sir, you had mentioned that at one time you had

6     worked for a company, those value packs?

7          **PROSPECTIVE JUROR:**  Yes, sir.

8          **MR. GREEN:**  Okay.  Now, is the value pack like an

9     envelope which has a bunch of coupons in it?

10         **PROSPECTIVE JUROR:**  It is.

11         **MR. GREEN:**  What did you do in this value pack

12    business?

13         **PROSPECTIVE JUROR:**  I'd cold call prospective

14    clients, like small businesses.  We'd go to their business and

15    see if we could advertise for them.  And if we did, we would

16    send coupons of whatever they wanted for their product.

17         **MR. GREEN:**  Did you print the coupons?

18         **PROSPECTIVE JUROR:**  I did not.

19         **MR. GREEN:**  Did they come to you in some form or

20    fashion?

21         **PROSPECTIVE JUROR:**  Yeah.  Corporate would send them.

22         **MR. GREEN:**  And then your company somehow or another

23    stuffed the envelopes with these value pack coupons?

24         **PROSPECTIVE JUROR:**  They did.  They came prepacked.

25         **MR. GREEN:**  Everything from a sale of tires?

1          **PROSPECTIVE JUROR:**  Yes, sir.

2          **MR. GREEN:**  A coupon for an oil change?

3          **PROSPECTIVE JUROR:**  Yes.

4          **MR. GREEN:**  A coupon for a nursery that's going to

5    sell you some trees at a discount?

6          **PROSPECTIVE JUROR:**  Yeah, whoever we could --

7          *(Simultaneous crosstalk.)*

8          **MR. GREEN:**  -- whatever it was?

9          Thank you.  This question is for the -- for the

10   venire panel in general.

11         Does everyone believe -- when you walk into this

12   building, as soon as you go to through the metal detectors,

13   there's a saying which is in some large letters on the foyer

14   wall, and it says that the cornerstone of the American

15   judicial system are the trial courts where witnesses testify,

16   evidence is presented, and juries deliberate.

17         Does everyone agree that that is fundamental for our

18   justice system, yes or no?

19         *(Various hands raised.)*

20         **MR. GREEN:**  Your role as jurors has not changed in

21   thousands of years.  We have representations in the Bible of

22   the people looking at somebody and rendering judgment and

23   stoning them to death right there.  And all of those people

24   you believe are representatives of the community.  All of you

25   believe that?

1          Do you understand -- this is a question for

2     everyone -- that the defense is looking for and the Government

3     is looking for your collective wisdom.  That's why we pick

4     jurors from all walks of life.  Does everyone believe that

5     your collective judgment, going back into the jury room, is

6     fundamental to this system of justice?  Who believes that?

7          *(Various hands raised.)*

8          **MR. GREEN:**  And who believes that with -- with --

9     regardless of this technology, regardless of the thousands of

10    pages that you may see, regardless of all the e-mails,

11    regardless of the flash drives and the hard discs, do you

12    understand that it all boils down to a group of people who are

13    exercising their common sense and looking for the right

14    verdict?  Does everyone believe that?

15         *(Various hands raised.)*

16         **MR. GREEN:**  Thank you.

17         Your Honor, I have no further questions.

18         **THE COURT:**  Thank you, Mr. Green.

19         Mr. Finley, the Government didn't use all of its

20    time.  Would you like to ask any rebuttal questions?

21         **MR. FINLEY:**  Yes, Your Honor.  Thank you.

22         Juror Number 48, Juror Number 57, Juror Number 63,

23    and Juror Number 21, could you raise your hands, please?

24         Okay.  So this question is for all of you.  And I

25    think you, sir, are you 48?

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          **PROSPECTIVE JUROR:**  Forty-seven.

2          **MR. FINLEY:**  Forty-seven.  Thank you.

3          You had mentioned that you would have difficulty if

4     this crime involved elderly victims; is that right?

5          **PROSPECTIVE JUROR:**  I said it was a very personal

6     issue with me because of my mom being an elderly woman and

7     having fraudulent crimes against her multiple times.

8          **MR. FINLEY:**  Okay.  And -- and I think you said -- I

9     think the words you used were you have serious disdain for the

10    act, but you said that it would matter to you whether or not

11    we proved that these four defendants actually did that act;

12    right?

13         **PROSPECTIVE JUROR:**  Correct.  I have a disdain for

14    the act.  The crime is horrible.

15         **MR. FINLEY:**  And so -- and I think that all of the

16    people who raised their hand, they -- they would agree that

17    this is a horrible crime.  And are all of you able to separate

18    the nature of the crime from the question of whether these

19    four defendants actually did that crime?  Would you want to

20    listen to the evidence and make a decision based on the

21    evidence?

22         **PROSPECTIVE JUROR:**  I -- speaking for myself, I can't

23    make a decision without any evidence or anything.  I don't

24    know these men.  I don't know what they have or haven't done.

25         **MR. FINLEY:**  And so for the four jurors, the Judge,

1   if you're chosen for the jury, will instruct you that you have

2   to follow the law in this case.  Is there anyone that would

3   have trouble following the judge's instructions of the four?

4           **PROSPECTIVE JUROR:**  No.

5           **MR. FINLEY:**  Thank you.

6           And of the four of you, would you all be able to --

7   as the judge will instruct you -- not make up your mind until

8   all the evidence is in and make a decision solely on the

9   evidence, not based on any personal experience?  We understand

10  that these personal experiences are important to people, but

11  that the decision has to be based on the evidence and the

12  evidence alone.  Is anybody, among the four of you, unable to

13  do that?  Raise your hand if you think you're unable to do

14  that.

15          Thank you.

16          **THE COURT:**  All right.  Thank you, Mr. Finley.

17          I think it bears repeating that your dislike of the

18  crime does not necessarily mean that you're going to not be a

19  good juror in this case.  I don't remember who it was, but

20  somebody talked about being in a different trial where the

21  case was for a pedophile or child sex abuser.  If all the

22  jurors said, well, we can't sit as jurors because we don't

23  like that crime, who would be left to be a juror?  Only the

24  people who think that they liked that?  Doesn't make any

25  sense.  So just try to work that, too, in your head to try and

1    understand what the questions are that are being asked as far

2    as bias.  It's whether you can be fair to these people, the

3    defendants and to the victims -- the Government is going to be

4    calling victims, so you'll hear them speak as well -- to

5    determine who's telling the truth and whether or not a crime

6    was committed.

7         Obviously there's disdain for the conduct; otherwise,

8    it wouldn't be a crime.  There wouldn't be a law against it.

9    Just because there's a law against it doesn't mean these

10   people actually committed that conduct.  So I hope that that

11   puts to rest some -- some concern that I see in the faces and

12   in the answers that people are giving.

13        Also please remember that in our system of justice

14   everybody is innocent unless proven guilty.  By who?  The

15   prosecution by a reasonable doubt.  So the prosecution has to

16   call witnesses and evidence has to be shown to you to convince

17   you that a person is guilty.

18        So right now, if I were to ask you to cast your vote,

19   you have to say not guilty because there's no evidence at all

20   that's been presented.  What I explained to you about the case

21   earlier was just an explanation, a summary, to give you a

22   flavor of the case so that you would be able to respond to

23   questions and understand why -- why we're asking you these

24   questions.

25        All right.  So at this time I think, Nick, are you

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1  ready with the -- I think he's putting the finishing touches

2  on -- on the form here.

3          Did you want to take one more bathroom break, or do

4  you think you're ready to print?

5          **COURTROOM ADMINISTRATOR:**  I'm ready to print, Judge.

6          **THE COURT:**  All right.  We're ready to print.

7          What's going to happen next is that we have a period

8  of time where, if you'd like to stand up and stretch, you can,

9  but I ask you not to trade places and move around.  So some of

10  you have a little bit of space there where you can stretch,

11  but just don't switch places so we can count heads.

12          The attorneys now will be looking at the list of all

13  the jurors in the room, and they can exercise what's called a

14  peremptory challenge, which is where they can excuse any juror

15  for any reason.  They don't have to explain themselves to me.

16  They don't have to talk to me about it.  They can just pick

17  off any juror that they don't like.  And then the piece of

18  paper goes back and forth.  So the Government has a right to

19  excuse someone, or they can waive it.  They don't have to

20  excuse anyone if they don't want to.  And that's on paper.

21  And then it goes to the defense.  And then the defense has the

22  chance to excuse someone for any reason without asking or

23  telling me, or they can waive it and not excuse anyone.

24          And it keeps going back and forth, and there's a

25  count.  And it takes awhile, and we'll have music on for you.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    But it's going to take a little while.  So if you want to

2    stand and stretch, I appreciate that.  There's nothing wrong

3    with that.  You can do that.  Just please be careful and stay

4    where you're sitting.  Because you'll see the attorneys

5    talking to each other and then kind of lurking their head like

6    a giraffe trying to count and make sure that they remember

7    who's who as they're looking at their notes and deciding who

8    should stay and who should go.

9           **MR. TANASI:**  Your Honor, before we get to perempts,

10   can we approach?

11          **THE COURT:**  Did you want a sidebar?

12          **MR. TANASI:**  We have, yeah, a few cause strikes we'd

13   like.

14          **THE COURT:**  All right.  So we've got -- Amber, are

15   you ready to go?

16          **THE COURT REPORTER:**  Yes.

17          **THE COURT:**  Okay.

18      *(At sidebar on the record.)*

19          **THE COURT:**  Mr. Tanasi or mister -- I see Mr. Brown

20   is closest to the microphone.  Do you want -- who wants to

21   speak?

22          **MR. TANASI:**  Thank you, Your Honor.  I appreciate

23   that.  I know we were printing for perempts, but I wanted to

24   just jump up and make a couple motions for cause.  Actually, I

25   just have one, and I'll be brief.  Again, Rich Tanasi for

1    Mario Castro.

2          I would move to strike Number 7, Juror Number 7.  I

3    know ultimately she I think landed on not liking lawyers in

4    general, not just defense, not just Government, but this case

5    is a case where -- and every case, lawyers are going to be

6    presenting the entire case.  So I think just being right there

7    on the fence, there could be one thing that could happen

8    ultimately in the trial that could tip her one way or another

9    just based upon how the lawyers are acting.  And so I think

10   that would cloud her ability to be fair and impartial in this

11   case.  So I think the rest --

12          **THE COURT:**  Well, she did say that she's also served

13   on a jury before and there was a verdict.

14          **MR. TANASI:**  True.  And I guess I failed on the

15   follow-up to find out when she developed her disdain --

16          **THE COURT:**  That she doesn't trust the Government and

17   she doesn't like lawyers equally.

18          **MR. TANASI:**  Right.  So I --

19          **MR. BROWN:**  Sounds perfect.

20          **MR. TANASI:**  -- view her as being sort of a ticking

21   time bomb of impartiality or partiality.

22          **THE COURT:**  What's the Government's position?

23          **MR. FINLEY:**  No objection, Your Honor.

24          **THE COURT:**  All right.  So Number 7 will be excused.

25          **MR. GREEN:**  For the record, Your Honor, for Salvador

1    Castro, there was no objection to Mr. Tanasi's motion.

2            **THE COURT:**  All right.  And so, again, I'm just going

3    to assume that all of you join in the motion unless you tell

4    me otherwise.

5            **MR. GREEN:**  Um-hum.

6            **MR. TANASI:**  And, Your Honor, I was being reminded,

7    while the Court considers it, of another ground potentially

8    that I overlooked with respect to Juror Number 7 --

9            **THE COURT:**  Oh.  I did excuse Number 7.

10           **MR. TANASI:**  Oh, you did?

11           **THE COURT:**  Yeah, I did.

12           **MR. TANASI:**  Okay.  Thank you.

13           All right.  So, Your Honor, that's all that Mario

14   Castro had for cause strikes.

15           **THE COURT:**  Okay.  Mr. Brown?

16           **MR. BROWN:**  Thank you, Judge.  William Brown for Jose

17   Luis Mendez.  Number 21, he spoke extensively about how

18   emotionally resident [sic] his vicarious experience with fraud

19   was.  He said that, if he were my client, he would not want

20   him sitting on this jury because it would just be too much of

21   an effort to remove that part of his personal life and listen

22   to the evidence objectively.  We would move to excuse him for

23   cause.

24           **THE COURT:**  What's the Government's position as to

25   Number 21?

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1       **MR. FINLEY:**  Your Honor, I think with 21, as with a

2    number of these witnesses [sic], there were a lot of questions

3    that were asking about traumatic personal experiences that

4    they had feelings about, and they admitted that they had

5    feelings.  I mean, we would expect that.  I don't think

6    anybody said they couldn't be fair, they couldn't decide this

7    case based on the evidence.  Nobody said that.  And so I would

8    think that -- you know, he said it would be difficult.  I

9    mean, I think that speaks to his honesty.

10       And the question about will you want me as your

11    jurors, it's very ambiguous.  I mean, it can mean any number

12    of things.  You might think because of my biography, you know,

13    some of the details about me, you wouldn't want me.  But if

14    the question is can they be fair, can they follow your

15    instructions, can they decide the case based on the evidence

16    alone, I think there's no showing of cause for that juror,

17    Number 21.

18       **THE COURT:**  I agree.  There's characteristics that

19    the -- someone on the defense might not think were the best.

20    His sister is a dispatcher with the police.  He served in the

21    Navy, things of that nature.

22       But I don't think that he showed -- there was no

23    demonstration that he couldn't be fair and impartial in the

24    case.  He did have his best friend's husband who was a victim

25    of gift card scam, and it was very difficult and emotional for

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

 1    them.  Also, his brother-in-law was a victim before they

 2    realized -- and that's how they realized that he had dementia

 3    because of the acts that they found out that he was having.  I

 4    didn't hear him actually say that he would have a bias against

 5    these particular defendants but he has an understanding of how

 6    this -- this crime does affect victims and their families.

 7    Otherwise, I don't think that there's a bias.

 8              So the motion to excuse Number 21 for cause is

 9    denied.

10              Any others?  Just the one?

11              MR. BROWN:  Your Honor, yeah, Number 32.  This was

12    about the third or fourth time that the presumption of

13    innocence was broached.  That having been explained each time

14    that, as the defendants sit here, they are presumed innocent,

15    and 32 still candidly indicated that he suspected that wasn't

16    the case.

17              THE COURT:  Well, I did hear him say that he

18    suspected that wasn't the case.  He kept saying I have to hear

19    the evidence, I have to wait, I don't know yet.  I think

20    that's a common misconception, that they have to wait to hear

21    something before they can make a decision.  I didn't hear him

22    say -- I don't know.  I'll ask the Government, what's your

23    position?  I didn't hear him say -- I didn't even have a

24    question mark written next to him.  I have that he's

25    hypoglycemic, mom sued the city 15 years ago, his father was

 1    convicted of felony -- oh, father of a friend was convicted of

 2    a felony -- felony mail fraud two years ago.  Something about

 3    Kyle Smota (phonetic) who was someone who was convicted and

 4    then pardoned by Trump, I think?

 5            MR. BROWN:  The friend's father.

 6            THE COURT:  Yes.

 7            MR. BROWN:  I think -- Mr. Tanasi reminded me.  I

 8    think I asked something along the lines of who thinks that, if

 9    they're here, they must have done something.  And I think he

10    raised his hand.  He was one of two people that raised their

11    hands that think, if we're at this point, they must have done

12    something.

13            THE COURT:  All right.  And the clarification was you

14    don't just pick up innocent people off the street and -- doing

15    something is different than committing a crime.  So just

16    because someone got swept up in something and that's why

17    they're here, I think that's fair for people to think, well,

18    obviously something happened to bring them here, but that

19    doesn't mean they think that they're guilty.

20            MR. BROWN:  Right.  I just interpreted the comment as

21    inconsistent with the presumption of innocence.

22            THE COURT:  What's the Government position on

23    Number 32?

24            MR. FINLEY:  Your Honor, the witness expressed a

25    number of different views, and some of them weren't so good

1    for us either.  I don't think that they rise to the level of

2    cause.  I think the witness said very clearly that he would

3    decide the case based on the evidence.

4         **THE COURT:**  I agree.  I think he was being very

5    honest but not -- didn't demonstrate any bias or any concern.

6    As I said, I didn't even write a "B" next to him with a

7    question mark or anything.

8         So motion to excuse Number 32 for cause is denied.

9         **MR. BROWN:**  Last one, Your Honor, is Number 66.  Same

10   argument.  My -- my takeaway is that he also -- he had a

11   problem with the presumption of our clients' innocence.

12        **THE COURT:**  What's the Government's position with

13   Number 66?

14        **MR. FINLEY:**  I mean, again, I think the question as

15   you pointed out, Your Honor, is ambiguous, "Must be here for

16   something."  Well, of course.  I mean, they've been charged

17   with something.  So if you interpret it that way, the answer

18   is correct.

19        **THE COURT:**  Yeah.  That question always really causes

20   me kind of to twitch a little bit because there was a grand

21   jury who did hear evidence and they did return an indictment,

22   and obviously I'm not going to explain that.  But I think many

23   people are aware of the fact that something must have happened

24   for these people to be here.  We don't just go outside and

25   say, Your last name's Castro, your last name's Castro, your

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

 1    last name's Castro, it's your turn to come in and be charged

 2    with a crime.  You know, that's not how we do things, and most

 3    people know that.

 4             So I -- that's why I say I just cringe when that

 5    question is asked because I know that the clarification for

 6    that is only going to cause them to know that there was a

 7    grand jury that heard evidence and indicted them.  So I don't

 8    think that it's fair to ask someone to believe that they're

 9    here for no reason.  They're obviously here for a reason.

10    Maybe because they work for a company that doing something

11    wrong.  I was waiting for you to go into the pizza box thing.

12    Because if Peter Piper's Pizza is selling bad pepperoni on

13    their pizza, that doesn't mean the lady who's printed the box

14    is guilty of anything.  You know, something like that.

15             And I think that's sort of what people are saying

16    when they're telling you, well, something happened.  They

17    wouldn't just pull people in because their last name is

18    Castro.

19             So I'm not convinced that, just because people are

20    confused about why they're here, that that means that they're

21    automatically biased and can't set that aside and start

22    hearing the evidence.

23             MR. BROWN:  I think -- I understand.  I tried to ask

24    the question this way, they must have done something.  And I

25    understand maybe that raises the same ambiguity, but I

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    understand the Court's ruling.

2          **THE COURT:**  Yeah.  Maybe they just worked there.

3    Maybe they just are married to someone that worked there.  You

4    know, maybe they're the attorney for someone who worked there.

5    I -- so, yeah, I don't -- I don't think that's sufficient for

6    excusing Juror Number 66.  So that motion is denied.

7          Any others, Mr. Gaffney?

8          **MR. GAFFNEY:**  Yes, Your Honor.  Lucas Gaffney for

9    Miguel Castro.  I have three.  They were the three jurors I

10   spoke to about their experience with either being a victim of

11   mail fraud or fraud or having a family member who's a victim

12   of fraud.

13         So the first one was Juror Number 47.  This is the

14   one who had the elderly mother who was a victim of sounds like

15   multiple fraudulent schemes.  And I know that, you know, the

16   Government tried to get up and rehabilitate him and the other

17   jurors by saying, hey, can you follow the law?  I am not

18   necessarily convinced that they know what that means.  I think

19   that juror in particular thought that he could be somewhat

20   impartial as to considering just the nature of the crime, but

21   when he found out that the victims may be elderly -- and I

22   tried to pose it as a hypothetical.  He's going to hear that

23   these -- there are many elderly victims in this case.  I think

24   it's going to be very hard for him to remain impartial when he

25   sees the breadth and depth of the victim pool here.

1           And so my concern is that he won't be able to remain

2     fair and impartial after he hears all the evidence and just

3     essentially, you know, feels that the victims in this case

4     are -- were vulnerable and targeted just like his mother was.

5           **THE COURT:**  What's the Government's position as to

6     Number 47?

7           **MR. FINLEY:**  I recall him saying that the existence

8     of elderly victims would make the crime seem worse to him.

9     But I remember in the questioning he was also asked if he had

10    any kind of pre-disposition about whether the defendants had

11    done anything and he said, No, how could I?  I haven't heard

12    any evidence yet.  So I don't think it -- I don't think that's

13    a cause strike, Your Honor.

14          **THE COURT:**  I agree.  That motion to excuse 47 for

15    cause is denied.

16          **MR. GAFFNEY:**  Next one is Juror Number 57.  He was

17    the -- the gentleman kind of sitting at the end of the row,

18    experienced -- or was a victim of fraud in 2002.  I recall

19    when I was questioning him that I had asked is there anything

20    I could say that essentially would alleviate your bias toward

21    the nature of this case being a fraud case, and he said no.

22    And then I think Mr. Finley got up and tried to rehabilitate

23    him, and he was asking questions of the entire group.  I think

24    there was about four of them, and he was asking questions of

25    the entire group.  And he was saying, you know, Can you follow

1  the law?  Can you remain fair and impartial?  And I didn't

2  see -- I couldn't tell if it was a situation where he was

3  supposed to raise his hand or not, but I didn't see any kind

4  of change in his demeanor.

5        So I feel, based on what he said during my voir dire

6  of him, that that's a deeply held belief that he is going to

7  hold on to throughout trial, and it's -- demonstrates bias

8  towards the defense.

9        And it's actually the same thing with Juror Number

10  63 --

11        THE COURT:  All right.  Let's do one at a time,

12  though.

13        MR. GAFFNEY:  Okay.

14        THE COURT:  What's the Government's response to 57?

15        MR. FINLEY:  Sure.  I recall looking at him and

16  seeing him nodding in response to a lot of these questions,

17  and then I also asked for a show of hands if anybody thought

18  that they couldn't follow instructions, decide the case based

19  on evidence, and he did not raise his hand.

20        THE COURT:  All right.  So for him I wrote down one

21  of his responses that was probably not impartial:  Because it

22  hurt a lot.  So, again, it wasn't a definitive, no, I can't be

23  impartial; yes, I'm biased.  He said probably not impartial,

24  and then I believe he was rehabilitated when the Government

25  came back and provided their explanation.  So the motion to

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

 1    excuse Number 57 for cause is denied.

 2            **MR. GAFFNEY:**  Okay.  Last one, Juror Number 63.

 3    Basically the same argument as to Juror 57; that this was the

 4    lady who said that she was a victim of fraud to the tune of

 5    $15,000.  It apparently struck a deep personal cord with her,

 6    and just the nature of this case made it -- I think made it --

 7    makes it so she's not able to remain fair and impartial.

 8            And I can appreciate the Government's attempts to

 9    rehabilitate these jurors, but I think when you're asking

10    them, hey, can you follow the instructions the Court gives

11    you, they don't necessarily know what that means.  They don't

12    know what jury instructions we're talking about.  If you say,

13    hey, are you going to follow the law, they're going to say,

14    oh, yeah, of course.  But that can be outweighed by their own

15    personal feelings and bias.

16            And so, again, with Juror 63 I think that her

17    victimization is just too deep for her to remain fair and

18    impartial.

19            **THE COURT:**  What's the Government's position?

20            **MR. FINLEY:**  I --

21            **THE COURT:**  Sixty-three.

22            **MR. GAFFNEY:**  She's the one in the corner.

23            **MR. FINLEY:**  I recall her saying that she would

24    listen to everyone and that as a starting point she would be a

25    little bit more in favor of the Government than the defense.

1    But I think that with a lot of these questions, you know,

2    it -- the question of impartiality is sort of being confused

3    with not having emotions.  And I don't think, especially the

4    tone of some of the questions and the context of the

5    questions, is -- it's -- kind of invites confusion about that.

6    I don't -- I don't hear -- I didn't hear her saying that she

7    would decide the case in favor of one party or the other

8    without first hearing the evidence.

9         **THE COURT:**  So she did say more in favor of the

10   Government in a case like this, and that really wasn't

11   addressed more so.  So I think that it's appropriate for me to

12   excuse her for cause.  That wasn't really clarified to the

13   extent that I can be sure that it wasn't a bias.  You're

14   probably right that she's just talking about the conduct --

15        **MR. FINLEY:**  Right.

16        **THE COURT:**  -- the crime --

17        **MR. FINLEY:**  I understand.

18        **THE COURT:**  -- as opposed to the person, but it

19   wasn't clarified, and so I did highlight that one as a

20   potential bias if it didn't get fixed.  And I don't think that

21   it was clarified enough.  So I think I will excuse Juror

22   Number 63.  So that motion is granted.

23        Was that the three, Mr. Gaffney?

24        **MR. GAFFNEY:**  Yeah.  That's the end of my list.

25   Thank you, Judge.

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1          **THE COURT:**  All right.  Mr. Green, do you have any?

2          **MR. GREEN:**  For the record, Your Honor, Don Green for

3    Salvador Castro.  We join in the comments by Mr. Tanasi and

4    Mr. Gaffney.  Thank you.

5          **THE COURT:**  Okay.  So the ones that I excuse now are

6    Number 7 --

7          **MR. GREEN:**  Oh.  And Mr. Brown.  Sorry.

8          **THE COURT:**  Number 7 and 63; right?  Okay.  Thank

9    you.

10         **MR. TANASI:**  Thank you, Judge.

11         *(End of discussion at sidebar.)*

12         **THE COURT:**  All right.  So we're back on the record,

13   and the attorneys and I did meet at sidebar and we did agree

14   to excuse two more jurors.  So at this time I'd like to thank

15   and excuse Juror Number 7 and Juror Number 63.  Thank you for

16   coming in today.  Your jury service is complete.  Please look

17   underneath the -- and around the chair and the bench to make

18   sure you have everything that you brought in.  Go ahead and

19   leave the jury lanyard on the bench or on your chair before

20   you go.  And you don't need to go back to the jury

21   administration office.  You are excused for the day, and you

22   should not be called again for two years.  Thank you for

23   coming in today and for your patience with us.

24         All right.  So now we're going to have the attorneys

25   exercise their peremptory challenges.  As I said before, we

1    will play a little bit of music, and you can stand up and

2    stretch.  Just try not to switch places with the people next

3    to you so we don't get confused.

4        (Pause at 4:19 p.m., until 5:17 p.m.)

5        **THE COURT:**  All right.  So this is the portion for

6    the individual peremptory challenges.  So you each get one.  I

7    don't care which order you want to go in, if you have an order

8    you've already established.  It really doesn't matter because

9    it's a one-time veto.  So it's just one person at a time.

10   Mr. Tanasi or Mr. Tomsheck, do you want to go first?

11       **MR. TANASI:**  Sure, Your Honor.  Thank you.

12       (Pause at 5:17 p.m., until 5:19 p.m.)

13       **THE COURT:**  Mr. Brown, this is just Mr. Gaffney's.

14   It's his veto peremptory, not shared.

15       I'm sorry.  Did they use or waive?

16       **MR. BROWN:**  Waive.

17       **COURTROOM ADMINISTRATOR:**  Okay.  They'll waive.

18       **THE COURT:**  Thank you.

19       Okay.  While Nick is doing that, I'm going to ask the

20   jurors that are seated in the box up here to go ahead and take

21   your things and find an empty spot in the benches.  So we'll

22   start calling up the jurors one by one to fill up those seats.

23   So you might be returning, you might not.  So check around,

24   make sure you have everything that you brought.

25       All right.  I'm going to... all right.  I'm going to

*REDACTED*
2:19-cr-00295-GMN-NJK - March 20, 2023

1    call up the jurors one by one to sit in the seats.  After I do

2    that, then I will excuse the rest of you.  Before you run

3    outside, please make sure, if you're not on the jury, that you

4    take off your lanyard and give it to John who's the man in

5    blue who's standing there and hopefully able to stop you

6    before you run away.

7            All right.  I'll try to do this as quick as we can,

8    and I'm sorry to keep you so late.

9            So Juror Number 1 will be also the person who was

10   Juror Number 1.  So you come back.  You're going to get your

11   steps in today.

12           The second chair will be Juror Number 6.  Come on up.

13           The third chair will be Juror Number 12.

14           The fourth chair will be Juror Number 15.

15           The fifth chair is Juror Number 28.

16           The sixth chair is Juror Number 35.

17           The seventh chair is Juror Number 37.

18           And the eighth chair is Juror Number 41.

19           Now we'll start back on the bottom here.  Juror --

20   the ninth chair will be Juror Number 45.

21           The tenth chair is Juror Number 49.

22           The eleventh chair is Juror Number 50.

23           The twelfth juror is Number 52.

24           The thirteenth juror is Number 53.

25           Fourteenth seat is Number 58.

1          The fifteenth chair is Number 60.

2          And the last chair is for Number 61.  That will be

3     our jury for the trial.

4          Everyone else, go ahead and take off your lanyards

5     and be ready to give them to John.  Thank you very much for

6     coming in today.  We appreciate your service.  This does

7     conclude your jury service, and you can go home.  Thank you

8     for your patience.

9          The rest of you who are here, the 16, Nick, if you'll

10    please administer the oath to them before we leave.

11         **COURTROOM ADMINISTRATOR:**  Yes, Your Honor.  Please

12    stand and raise your right hand.

13      *(Jury panel sworn.)*

14         **COURTROOM ADMINISTRATOR:**  Thank you.  Please be

15    seated.

16         **THE COURT:**  All right.  So Nick's going to take you

17    into the jury room to show you where you meet tomorrow

18    morning.  We'll have breakfast for you in the morning.  We

19    need you here at 9:00 a.m.  We'll have a bathroom break in the

20    middle of the day, usually around 10:00, 10:30.  We have a

21    lunch hour from 12:00 to 1:00.  There is a big fridge,

22    normal-sized fridge in there.  Microwaves, coffee, soda,

23    things like that.  So feel free to bring whatever you want for

24    lunch, if you'd like.  And then we'll have you here until

25    4:00 o'clock tomorrow.  We will not make you stay past

1    4:00 o'clock.

2         So for tonight and for every break that we have,

3    you'll receive what I have called the recess admonition.  This

4    is very important.  In some cases when the jurors don't pay

5    attention to these rules, we have to have a mistrial and do

6    the whole thing over again.  And it's a lot of work, a lot of

7    time away for people, and money and everything.

8         So, first, I remind you that during this recess you

9    are not to discuss this case with anyone or permit anyone to

10   discuss it with you.  You can talk to your fellow jurors about

11   other things, but until this case is submitted to you and you

12   retire to the jury room to deliberate on your verdict, you are

13   not to talk about this case.  Okay?  So that's Number 1.

14        Number 2, you are not to read or listen to or view

15   anything touching upon this case in any way.  If anyone should

16   attempt to talk to you about this case or if you hear other

17   members of the jury doing so, I want you to bring it to the

18   Court's attention right away.

19        Now, no one should be speaking to the attorneys or

20   the parties about anything at all.  So, again, you-all don't

21   know each other yet.  You might see each other coming in or in

22   the bathroom or in the coffee shop.  So you will be given the

23   juror badge.  Whether you're wearing a coat or not, just make

24   sure it's visible when you're anywhere near or around the

25   courthouse so people recognize, oh, that's a juror, shh, we

1    can't talk about the case.  Okay?  Not your fault if they do,

2    but you need to report it to me if you do hear that.

3          The attorneys are warned not to talk to the jurors at

4    all.  So don't be offended if they see you in the elevator and

5    they decide, no, I'm not going to take this elevator, I'll

6    take a different elevator.  They just don't want to be accused

7    of having spoken to you or if you're both walking to the

8    bathroom at the same time, they realize you're a juror, and

9    they leave, they're just doing the right thing.  Don't be

10   offended.  They are -- if you get the feeling they're avoiding

11   you, yeah, they are.  They really are.

12         All right.  Third, do not try to do any research or

13   make any independent investigation concerning this case on

14   your own.  No Googling, no getting on the Maps, no calling up

15   your friend.  Any question at all that you have, you can ask

16   us here in court anonymously by a note, and we'll go into that

17   in more detail tomorrow.  So I don't want you going out on

18   your own to do any kind of investigation.

19         And finally, do not form any opinion regarding the

20   issues in this case until all the evidence has been presented,

21   until you've received the instructions of law, and heard the

22   closing argument.  Then you can begin your deliberation.

23         All right?  So for now we'll go ahead and stand for

24   the jury.  So Nick can show you where you're going to be

25   meeting tomorrow, and then we'll welcome you back at 9:00 a.m.

1    tomorrow morning.  Thank you.

2        *(Jury out at 5:28 p.m.)*

3        **THE COURT:**  Okay.  Counsel, it's already 5:30.  So

4    I'm going to go ahead and call a recess.  Do you need me to

5    come back at 8:30 tomorrow or at 8:00 to discuss anything, or

6    are we ready to begin at 9:00?

7        **MR. ZYTNICK:**  Your Honor, the only thing I can think

8    of is that we would move into evidence some of the stipulated

9    exhibits.  So we just need a few minutes to do that.

10        **THE COURT:**  Okay.  So 8:45?  All right.  So we'll be

11    here 8:45 tomorrow.

12        *(Proceedings adjourned at 5:29 p.m.)*

13                          --o0o--

14              COURT REPORTER'S CERTIFICATE

15

16        I, AMBER M. McCLANE, Official Court Reporter, United

17    States District Court, District of Nevada, Las Vegas, Nevada,

18    do hereby certify that pursuant to 28 U.S.C. § 753 the

19    foregoing is a true, complete, and correct transcript of the

20    proceedings had in connection with the above-entitled matter.

21

22    DATED:  3/21/2023

23

24    /s/___*Amber M. McClane*_____

25          AMBER McCLANE, RPR, CRR, CCR #914