**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> MARIO CASTRO *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:19-cr-00295-GMN-NJK <br><br> **ORDER** |

Pending before the Court is the Motion for Acquittal, (ECF No. 769), filed by Defendant Mario Castro. The Government filed a Response, (ECF No. 780), to which Defendant Mario Castro filed a Reply, (ECF No. 781).

Further pending before the Court is the Motion for Acquittal or Alternatively, for a New Trial, (ECF No. 771), filed by Defendant Miguel Castro. The Government filed a Response, (ECF No. 780), to which Defendant Miguel Castro did not file a Reply.

Further pending before the Court is the Motion for Acquittal or Alternatively, for a New Trial, (ECF No. 770), filed by Defendant Jose Luis Mendez ("Defendant Mendez"). The Government filed a Response, (ECF No. 780), to which Defendant Mendez did not file a Reply.

For the reasons discussed below, the Court **DENIES** Defendant Mario Castro's Motion for Acquittal, Defendant Miguel Castro's Motion for Acquittal or Alternatively, for a New Trial, and Defendant Jose Luis Mendez's Motion for Acquittal or Alternatively, for a New Trial.

///

///

///

## I. BACKGROUND

Defendant Mario Castro, Defendant Miguel Castro, and Defendant Mendez (collectively, "Defendants") were respectively charged with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, and twelve counts of mail fraud in violation of 18 U.S.C. § 1341. (*See generally* Indictment, ECF No. 1). The Indictment alleged Defendants engaged in a prize notice scam that lured victims into sending in "fees" to claim large cash prizes that did not exist. (Resp. 2:11–13, ECF No. 780).

Defendants owned or worked at a series of lettershops that produced prize notices. (03/27/2023 AM Trial Transcript 41:20–44:9, 100:22–101:13, ECF No. 663); (03/30/2023 PM Trial Transcript 80:16–25, 83:2–84:7, ECF No. 681); (04/03/2023 PM Trial Transcript 11:3–19, ECF No. 688); (04/03/2023 AM Trial Transcript 126:8–127:11, 128:12–21, ECF No. 687). In starting the lettershops, which included opening bank accounts and renting mailboxes, Defendants used their own names, as well as those of family and friends. (04/12/2023 AM Trial Transcript 23:7–24:7, 24:10–13, 24:17–25:11, ECF No. 718); (04/11/2023 PM Trial Transcript 74:3–6, ECF No. 714); (03/28/2023 AM Trial Transcript 18:25–19:6, 20:8–11, ECF No. 669). Defendant Miguel Castro completed the accounting for Defendants various lettershops, which included reviewing and maintaining bank accounts. (03/27/2023 AM Trial Transcript 54:12–19); (03/29/2023 PM Trial Transcript 60:12–20, ECF No. 676).

Digital Express was the final iteration of Defendants lettershop. Digital Express produced large quantities of prize notices, which were plainly visible in the store. (04/03/2023 PM Trial Transcript 179:2–5); (03/21/2023 PM Trial Transcript 34:12–14, ECF No. 644); (*see* Resp. 6:2–3) (citing exhibits containing photos of prize notices at the lettershop). United States Postal Service ("USPS") inspector Kevin Towers ("Inspector Towers") testified that approximately eighty-one (81) percent of Digital Express' revenue came from money sent by fraud victims responding to these notices. (04/05/2023 PM Trial Transcript 12:10–24, ECF No.

697).  That eighty-one percent came from mailing companies that were part of the charged scheme. (*Id.*).  In contrast, Janet McHard ("Ms. McHard"), Defendant Mario Castro's expert witness,[1] testified that sixty-five (65) percent of Digital Express' revenue came from fraudulent entities. (04/06/2023 PM Trial Transcript 58:1–17, 112:3–10, ECF No. 700).

      Defendants each received a share of the profits generated by the lettershops. (03/27/2023 AM Trial Transcript 10:23–11:4, 27:24–28:4, 30:8–25, 46:23–47:25); (*see* Resp. 5:21–22) (citing exhibits).  Patti Kern ("Ms. Kern"), a cooperating Government witness who testified she participated in the prize notice scheme with Defendants, explained she delivered envelopes filled with cash to Defendants. (03/27/2023 AM Trial Transcript 28:5–29:6, 31:1–23, 56:5–57:5); (03/30/2023 AM Trial Transcript 54:1–24, ECF No. 680).  Consistent with that testimony, USPS inspectors found envelopes filled with cash and bearing the Defendants' names at Ms. Kern's home. (03/23/2023 AM Trial Transcript 52:16–54:13, ECF No. 657).  Ms. Kern further testified Defendant Mario Castro partnered with her on the fraudulent prize notice scheme. (03/27/2023 AM Trial Transcript 10:23–11:4, 15:24–17:14, 27:20–29:10).

      Digital Express, as well as Defendants' previous lettershops, printed prize notices for clients.  Several of Defendants' clients received cease-and desist orders from the USPS and were subsequently shut down.  This included a prize-notification operation run by Glen Burke ("Mr. Burke"). (03/28/2023 PM Trial Transcript 4:17–9:11, ECF No. 673); (04/03/2023 AM Trial Transcript 71:18–20); (04/03/2023 PM Trial Transcript 112:2–114:11).  As part of the Government's investigation and prosecution of Mr. Burke, USPS inspectors spoke with Defendant Miguel Castro and Defendant Mario Castro. (04/04/2023 AM Trial Transcript 5:19–12:13, ECF No. 699).

///

---

[1] Ms. McHard is a certified public accountant and fraud examiner. (04/06/2023 PM Trial Transcript 11:2–22, ECF No. 700).

Sean O'Connor ("Mr. O'Connor"), a cooperating Government witness who testified he participated in the prize notice scheme with Defendants, explained that when Defendants became aware of these cease-and-orders, they would trash printed prize notes and claw back outgoing postage payments. (04/23/2023 PM Trial Transcript 17:2–19:20, ECF No. 688).  In addition to these general tasks, Mr. O'Connor testified each of the Defendants carried out a specific assignment.  Defendant Miguel Castro canceled checks and handled other financial aspects, Defendant Mendez stopped-in progress print jobs and returned the stock to be trashed, and Defendant Mario Castro approved the trashing of large amounts of paper. (*Id.*).

At trial, several witnesses testified they believed the prize notices were fraudulent. (03/21/2023 AM Trial Transcript 68:17–18, ECF No. 643); (*Id.* 95:3–8); (03/27/2023 AM Trial Transcript 68:1–23); (03/29/2023 PM Trial Transcript 17:18–25); (03/30/2023 AM Trial Transcript 54:1–24, ECF No. 680).  Additionally, Juan Villasenor ("Mr. Villasenor"), Defendants former business partner, testified that upon seeing the prize notices, he told Defendant Mario Castro that the operation looked illegal. (03/20/2023 AM Trial Transcript 84:5–19, ECF No. 680).  Mr. Villasenor elaborated "[t]here's no way I'm going to believe they're going to give you money if I send it out." (*Id.* 85:13–18).  When Mr. Villasenor informed Defendant Mario Castro elderly people were responding to the prize notices, Defendant Mario Castro countered by stating they were "not putting a gun" to their heads. (*Id.* 99:7–16).

Defendant Mendez testified at trial he does not read English, and only speaks very basic English. (04/12/2023 AM Trial Transcript 41:1–5, ECF No. 718).  Defendant Mendez demonstrated and explained to the jury how he used Google Translate to translate text messages he received in English to Spanish, so he could then write a reply in Spanish which he could subsequently translate back into English to respond. (*Id.* 41:20–43:20).  Defendant Mendez further testified he never intended to scam anyone. (*Id.* 39:16–22).

During the jury's deliberation, they submitted several questions in the form of jury notes. The parties dispute the significance of two of these jury notes. First, on April 24, 2023, the jury submitted Jury Note number 185 ("Jury Note 185"), which stated, "We find the defendant (guilty/not) of the offense of conspiracy to commit mail fraud. Clarification that defendants <u>knew</u> they were committing fraud." (Jury Note 185 at 2, Ex. B to Defendant Miguel Castro Mot. Acquittal, ECF No. 771-3) (underline in the original). The Court responded "[p]lease phrase in the form of a question. Thank you." (*Id.*, Ex. B to Defendant Miguel Castro Mot. Acquittal). That same day, the jury submitted Jury Note number 186 ("Jury Note 186"), which stated "We cannot come to an agreement." (Jury Note 186 at 2, Ex. C to Defendant Miguel Castro Mot. Acquittal, ECF No. 771-4). The Court advised the jury to refer to several specific jury instructions but reminded the jury to "remember they are all important." (*Id.*, Ex. C to Defendant Miguel Castro Mot. Acquittal).

The jury subsequently found the Defendants guilty of the conspiracy charge and multiple counts of mail fraud.[2] Defendants then filed their present Motions seeking acquittal, or, in the case of Defendant Miguel Castro and Defendant Mendez, seeking a new trial. (*See generally* Defendant Mario Castro Mot. Acquittal); (Defendant Miguel Castro Mot. Acquittal, ECF No. 771); (Defendant Mendez Mot. Acquittal 6:10–7:17, ECF No. 770).

## II.  LEGAL STANDARD

### A. Motion for Acquittal, Rule 29(c)

Rule 29 provides that, after a jury returns a guilty verdict, a "court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). Courts reviewing a motion for judgment of acquittal under Rule 29(c) apply the same test as they do in evaluating a challenge to the sufficiency of the evidence. *United States v. Ladum*, 141 F.3d 1328, 1337 (9th Cir. 1998). When considering a motion for judgment of acquittal, courts must determine whether "any

---

[2] The jury acquitted a fourth defendant, Salvador Castro, of all charges. (J., ECF No. 764).

1  rational trier of fact could have found the essential elements of the crime beyond a reasonable
2  doubt." *United States v. Hursh*, 217 F.3d. 761, 767 (9th Cir. 2000).
3       This is a two-step process: "First, a reviewing court must consider the evidence
4  presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598
5  F.3d 1158, 1164 (9th Cir. 2010). "Second, . . . the reviewing court must determine whether
6  this evidence, so viewed, is adequate to allow 'any rational trier of fact [to find] the essential
7  elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S.
8  307, 319 (1979)) (emphasis in original). "The hurdle to overturn a jury's conviction based on a
9  sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153
10 (9th Cir. 2010). "[A]ny conflicts in the evidence are to be resolved in favor of the jury's
11 verdict." *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201–02 (9th Cir. 2000).
12     **B. Motions for New Trial, Rule 33**
13     Federal Rule of Criminal Procedure Rule 33(a) allows a court, on defendant's motion, to
14 "vacate any judgment and grant a new trial if the interest of justice so requires." Unlike a Rule
15 29 motion, "[t]he district court need not view the evidence in the light most favorable to the
16 verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the
17 witnesses." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir.
18 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). That said, a
19 motion for a new trial is to be granted "only in exceptional cases in which the evidence
20 preponderates heavily against the verdict." *United States v. Pimental*, 654 F.2d 538, 545 (9th
21 Cir. 1981). Moreover, a trial court may grant a motion for new trial where, in its judgment, "a
22 serious miscarriage of justice may have occurred." *Alston*, 974 F.2d at 1211-12.
23 ///
24 ///
25 ///

## III. DISCUSSION

### A. Motions for Acquittal, Rule 29(c)

Defendants Rule 29(c) challenge is collectively premised on their assertion there is no direct evidence of their knowledge and intent. (Defendant Mario Castro Mot. Acquittal 3:14–4:4); (Defendant Miguel Castro Mot. Acquittal 5:9–6:19); (Defendant Mendez Mot. Acquittal 6:10–7:17). Moreover, Defendants Mario Castro and Miguel Castro also argue Jury Notes 185 and 186 demonstrate the insufficiency of evidence demonstrating Defendants knowledge the "sweepstakes in this case were fraudulent." (Defendant Mario Castro Mot. Acquittal 3:14–16); (Defendant Miguel Castro Mot. Acquittal 6:1–3). Furthermore, Defendant Mendez contends his uncontested testimony that "he never intended to scam or cheat anyone" and that he "does not read English and only speaks very basic English" creates reasonable doubt warranting acquittal. (Defendant Mendez Mot. Acquittal 8:1–17). The Court addresses each argument in turn.

#### 1. Evidence Showing Knowledge & Intent

Defendants' Motions hinge on whether the evidence was sufficient to find they, in fact, knowingly participated in a conspiracy to commit mail fraud, and pursuant to the mail fraud scheme, intended to defraud or deceive. (Defendant Mario Castro Mot. Acquittal 3:14–4:4); (Defendant Miguel Castro Mot. Acquittal 5:9–6:19); (Defendant Mendez Mot. Acquittal 6:10–7:17). The jury concluded the evidence was sufficient. Defendants contend it was not.

The Government need not provide direct evidence of all elements of the crime; circumstantial evidence and reasonable inferences drawn therefrom can be sufficient to sustain a conviction. *See United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004); *United States v. Reyes-Alvarado*, 963 F.3d 1184, 1188 (9th Cir. 1992) ("[C]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but

whether the jury could reasonably arrive at its verdict." *United States v. Dinkane*, 17 F.3d 1192, 1996 (9th Cir. 1994) (quotation omitted). And as stated, in determining whether to grant a Rule 29 motion, the Court "must bear in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts.'" *United States v. Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978) (quotation omitted).

At its core, Defendants' argument is "tantamount to saying that evidence does not support a finding of [knowledge] and intent unless the Government has an admission from [them]." *United States v. Bitao*, No. 06-cr-00004, 2007 WL 9770624, at *3 (D. Haw. Jan. 12, 2007). But "[i]ssues of mental intent . . . are rarely susceptible to direct proof. They must usually be proven through circumstantial evidence." *United States v. Serrano*, No. 07-cr-0212, 2007 WL 2990474, at *5 (N.D. Cal. Oct. 11, 2007). And as the Government sets forth, (Resp. 4:16–12:17), there was ample circumstantial evidence in this case supporting the jury's ultimate determination. Viewing the circumstantial evidence as a whole rather than in isolation, the jury could reasonably have found the knowledge and intent elements were proven beyond a reasonable doubt.[3]

///

---

[3] Moreover, to the extent Defendant Mario Castro asserts the Government's partnership theory fails because it relies "on the words of [Ms.] Kern – an admitted liar," (Reply 4:3–4, ECF No. 781), this argument improperly requests the Court make a credibility determination. The Court "cannot second guess jurors' credibility determinations at this stage." *United States v. Wilson*, No. 10-cr-00726, 2011 WL 3876949, at *8 (C.D. Cal. Aug. 29, 2011); *see United States v. Alarcon–Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) ("Notably, it is not the district court's function to determine witness credibility when ruling on a Rule 29 motion"). This argument also ignores the fact ""the uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible or insubstantial on its face." *United States v. Ramirez-Robles*, 386 F.3d 1234, 1241 (9th Cir. 2004) (quoting *United States v. Lopez*, 803 F.2d 969, 973 (9th Cir. 1986). Ms. Kern was "subjected to rigorous cross-examination by" Defendants "able and experienced" attorneys. *United States v. Arkinson*, No. 18-cr-10, 2019 WL 287293, at *2 (D. Mont. Jan. 22, 2019). Even considering inconsistencies in her testimony, the Court finds the substance of Ms. Kern's testimony was neither incredible nor insubstantial on its face. It was exclusively within the jury's purview to decide the weight afforded to Ms. Kern's credibility. The same reasoning applies to Mr. O'Connor's testimony.

### 2. Jury Notes 185 & 186

Defendant Mario Castro and Defendant Miguel Castro also argue Jury Notes 185 and 186 "highlight[] the insufficiency of [] evidence in this case" showing the Defendants knowledge of the "sweepstakes in this case were fraudulent." (Defendant Mario Castro Mot. Acquittal 3:14–16); (Defendant Miguel Castro Mot. Acquittal 6:1–3).  In response, the Government argues Jury Notes 185 and 186 fail to demonstrate any insufficiency of evidence showing knowledge. (Resp. 13:16–22).

At the outset, the Court notes that Jury Notes 185 and 186 were submitted on April 24, 2023. (Jury Note 185 at 2, Ex. B to Defendant Miguel Castro Mot. Acquittal); (Jury Note 186 at 2, Ex. C to Defendant Miguel Castro Mot. Acquittal).  However, Defendant Mario Castro's verdict form was completed on April 19, 2023. (Defendant Mario Castro Verdict Form at 3:5, ECF No. 749).  Thus, it does not appear Jury Notes 185 and 186 concerned the jury's deliberation regarding Defendant Mario Castro because the verdict form was completed and dated prior to the date of the jury note questions.  Nevertheless, for the reasons set forth below, the Court finds Jury Notes 185 and 186 do not show any insufficiency of evidence.

As stated previously, Jury Note 185 contained the statement, "We find the defendant (guilty/not) of the offense of conspiracy to commit mail fraud.  Clarification that defendants <u>knew</u> they were committing fraud." (Jury Note 185 at 2, Ex. B to Defendant Miguel Castro Mot. Acquittal) (underline in the original).  The Court responded, "[p]lease phrase in the form of a question.  Thank you." (*Id.*, Ex. B to Defendant Miguel Castro Mot. Acquittal).  Jury Note 186 stated, "We cannot come to an agreement." (Jury Note 186 at 2, Ex. C to Defendant Miguel Castro Mot. Acquittal, ECF No. 771-4).  With the cooperation and consent of all parties, the Court advised the jury to refer to several specific jury instructions but reminded the jury to "remember they are all important." (*Id.*, Ex. C to Defendant Miguel Castro Mot. Acquittal).

///

Jury Notes 185 and 186 do not demonstrate an insufficiency of evidence. Isolated statements during the deliberative process should not be used to undermine the jury's ultimate determination regarding the sufficiency of evidence. *See United States v. Laffite*, No. 9:22-cr-00658, 2023 WL 2384144, at *10 (D.S.C. Mar. 6, 2023) ("The difficulty for Defendant is that there is no minimum time required for jury deliberations, and any inquiry into the details of jury deliberations is strictly prohibited."). Indeed, it is difficult to reconcile Defendant Mario Castro and Defendant Miguel Castro's argument with the realities of reaching a unanimous verdict. Under their view, every deadlocked jury would show an insufficiency of evidence. *See United States v. Lovelien*, No. 2:16-cr-26, 2017 WL 2540573, at *2 n.2 (D. Nev. June 10, 2017) (observing in the context of a deadlocked jury, that a "deadlocked jury does not conclusively establish a finding of guilty or not guilty, and Rule 29(c) does not provide a different standard for the numerated situation of a jury failing to return a verdict"). The fact remains that in certain cases, reaching unanimity requires reexamination of views, reevaluation of evidence, and drawn-out discussion(s). *See Wilburn v. Eastman Kodak Co.*, 180 F.3d 475, 476 (2d Cir. 1999) ("A jury is not required to deliberate for any set length of time."); *Guaranty Serv. Corp. v. Am. Employers' Ins. Co.*, 893 F.2d 725, 729 (5th Cir. 1990) ("If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial."). When this occurs, it in no way warrants an inference there was an insufficiency of evidence.

It is well-established "jurors are presumed to follow the court's instructions." *United States v. Reyes*, 660 F.3d 454, 468 (9th Cir. 2011). Here, Defendant Mario Castro and Defendant Miguel Castro do not contend the jury instructions were defective; "accordingly, the [undersigned's] response directing the jury back to the instructions was appropriate and sufficient under the circumstances." *Pina v. Cate*, No. 09-cv-1729, 2011 WL 3610430, at *7 (S.D. Cal. Aug. 17, 2011) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Accordingly,

the Court finds Jury Notes 185 and 186 do not demonstrate an insufficiency of evidence justifying overturning the jury's ultimate verdict.

### 3. Defendant Mendez's "Uncontested" Testimony

Defendant Mendez, in further support of his argument there is no direct evidence of his intent, cites his "uncontested testimony" that "he never intended to scam or cheat anyone" and that he "does not read English and only speaks very basic English." (Defendant Mendez Mot. Acquittal 8:1–17). Defendant Mendez further relies on his testimony that "he trusted [Ms.] Kern, and had no reason to distrust her." (*Id.* 9:1–2).

The problem with Defendant Mendez's argument is that it assumes the jury was required to believe him. Ninth Circuit precedent makes clear "the jury was free to disbelieve [Defendant Mendez] and infer the opposite [of his] testimony to supports its verdict." *Cordova Barajas*, 360 F.3d at 1041; *see United States v. Selby*, 557 F.2d 968, 975–76 (9th Cir. 2009) ("Disbelief of a defendant's own testimony may provide at least a partial basis for a jury's conclusion that the opposite of the testimony is the truth.") (internal quotation marks and citation omitted). And the Ninth Circuit has warned that "[w]hen the defendant elects to testify, he runs the risk that, if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth." *United States v. Kenny*, 645 F.2d 1323, 1346 (9th Cir. 1981). "Making credibility calls was the jury's right and obligation." *United States v. Farmer*, No. 1:11-cr-0026, 2014 WL 3401204, at *4 (E.D. Cal. July 11, 2014).

The foregoing makes clear that a defendant's decision to testify is a calculated gamble. Defendant Mendez ran the risk of being disbelieved; there was no miscarriage of justice simply because the jury made an adverse credibility decision. *See United States v. Scholl*, 166 F.3d 964, 979 (9th Cir. 1999) (holding that the jury's disbelief of the defendant's testimony furnished a partial basis for supporting its guilty verdict). The Court "[will] not usurp the role of the

finder of fact by considering how it would have . . . considered the evidence at trial."[4] *Nevils*, 598 F.3d at 1164.  Based on the evidence noted above and other evidence, the jury rejected Defendant Mendez's testimony and his argument he was unaware of the mail fraud scheme and could not have participated in it.

### B. Motions for New Trial, Rule 33

Defendant Miguel Castro and Defendant Mendez alternatively move for a new trial. (Defendant Miguel Castro Mot. Acquittal 7:3–25); (Defendant Mendez Mot. Acquittal 9:20–13:13).  Here, the Court "finds no miscarriage of justice, and no need for a new trial[.]" *United States v. Hansen*, No. 18-cr-092, 2022 WL 1186456, at *5 (W.D. Wash. Apr. 21, 2022).  As explained, there was ample evidence supporting Defendants' convictions.  "Even evaluating the evidence on its own, and not in the [G]overnment's favor, the Court still concludes that the evidence weighs [] in favor of conviction and that the jury conviction was greatly supported." *Hansen*, 2022 WL 1186456, at *5; *see United States v. Cantu-Madril*, No. 18-cr-01309-001, 2020 WL 919465, at *4 (D. Ariz. Feb. 26, 2020) (same).  Accordingly, Defendant Miguel Castro and Defendant Mendez's request for a new trial is DENIED.

---

[4] Separately, the Court notes Defendant Mendez cited the undersigned's observation during Defendant Mendez's Rule 29(a) motion that "if anyone is acquitted in this case, I wouldn't be surprised if it wasn't [Defendant Mendez].  It just depends on what the jury remembers collectively because all of them might be paying better attention at one time than another and then refresh each other's recollection as a group." (Defendant Mendez Mot. Acquittal 3:14–23) (citing the trial transcript).  First, for the reasons set forth above, the undersigned's observation is of no consequence in determining Defendant Mendez's Rule 29(c) Motion. *See Nevils*, 598 F.3d at 1164 (writing the court "may not ask itself whether it believes that the evidence at the trial established guilty beyond a reasonable doubt . . . only whether any rational trier of fact could have made that finding").  It is ultimately the responsibility of the jury to evaluate the evidence and to choose between competing inferences. *See United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977) ("In ruling on a Rule 29(c) motion, a district court must bear in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts.'") (quotation omitted).  Viewing the evidence in the light most favorable to the jury's verdict, the Court finds the evidence adequately supported that verdict.  Second, Defendant Mendez overstates the undersigned's observation.  The undersigned specifically acknowledged there was sufficient evidence to support a guilty verdict, the caveat being it depended on the jury's collective memory. (Defendant Mendez Mot. Acquittal 3:14–23) (citing the trial transcript).  Again, the Court will not usurp the jury's determination because they construed circumstantial evidence and drew reasonable inferences in favor of the Government.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Mario Castro's Motion for Acquittal, (ECF No. 769), is **DENIED**.

**IT IS FURTHER ORDERED** Defendant Jose Luis Mendez's Motion for Acquittal or Alternatively, for a New Trial, (ECF No. 770), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Miguel Castro's Motion for Acquittal or Alternatively, for a New Trial, (ECF No. 771), is **DENIED**.

**DATED** this __15__ day of June, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court